1  BENBROOK LAW GROUP, PC
   BRADLEY A. BENBROOK (SBN 177786)
2  STEPHEN M. DUVERNAY (SBN 250957)
   400 Capitol Mall, Suite 1610
3  Sacramento, CA  95814
   Telephone: (916) 447-4900
4  Facsimile:  (916) 447-4904

5

6  EUGENE VOLOKH (SBN 194464)*
   UCLA School of Law
7  405 Hilgard Ave.
   Los Angeles, CA  90095
8  Telephone: (310) 206-3926
   Facsimile: (310) 206-7010
9  volokh@law.ucla.edu
   *Application for admission submitted

10 Attorneys for Plaintiffs

11                    UNITED STATES DISTRICT COURT

12                    EASTERN DISTRICT OF CALIFORNIA

13

14

15 TRACY RIFLE AND PISTOL LLC;          Case No.:  2:14-cv-02626-TLN-DAD
   MICHAEL BARYLA; TEN PERCENT
16 FIREARMS; WESLEY MORRIS;
   SACRAMENTO BLACK RIFLE, INC.;        **PLAINTIFFS' MEMORANDUM OF
17 ROBERT ADAMS; PRK ARMS, INC.; and    POINTS AND AUTHORITIES IN
   JEFFREY MULLEN,                      SUPPORT OF MOTION FOR
18                                       PRELIMINARY INJUNCTION**
                        Plaintiffs,
19                                       Hearing Date:  January 29, 2015
            v.                           Hearing Time: 2:00 p.m.
20                                       Judge:   Hon. Troy L. Nunley
   KAMALA D. HARRIS, in her official capacity   Courtroom 2, 15th Floor
21 as Attorney General of California; and   Action Filed: Nov. 10, 2014
   STEPHEN J. LINDLEY, in his official capacity
22 as Chief of the California Department of Justice
   Bureau of Firearms,
23
                        Defendants.
24

25

26

27

28

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................... 1

II. STATEMENT OF FACTS ........................................................................................ 3

III. ARGUMENT ........................................................................................................... 4

    A.    Plaintiffs Are Likely To Establish That Section 26820 Violates The First Amendment. ............................................................................................... 5

        1.    Section 26820 Is Presumptively Invalid Because It Imposes A Content- And Speaker-Based Burden On Protected Expression. ..................................... 6

        2.    Plaintiffs Are Likely To Prevail Because Section 26820 Fails The *Central Hudson* Test. .............................................................................................. 8

            a.    Section 26820 Bans Protected First Amendment Activity. ..................... 9

            b.    Whether Section 26820 Is Supported By A "Substantial State Interest" Remains Unclear. ................................................................................... 9

            c.    The State Cannot Establish That Section 26820 Directly Advances A Legitimate Government Interest. ........................................................... 10

            d.    The State Cannot Demonstrate That Section 26820's Ban Is Not More Extensive Than Necessary. .................................................................. 12

    B.    Plaintiffs Will Be Irreparably Harmed In The Absence Of A Preliminary Injunction. .......................................................................................... 14

    C.    The Balance Of Equities Tips In Plaintiffs' Favor. .............................................. 15

    D.    An Injunction Is In The Public Interest. ............................................................... 16

IV. CONCLUSION ...................................................................................................... 17

TABLE OF AUTHORITES

1

2 **Cases**

3 *44 Liquormart, Inc. v Rhode Island,*
    517 U.S. 484 (1996) ..................................................................................*passim*
4

5 *ABCDE Operating, LLC v. Snyder,*
    2011 WL 3113797 (E.D. Mich. 2011) ................................................................. 13
6

7 *Abilene Retail # 30, Inc. v. Six,*
    641 F. Supp. 2d 1185 (D. Kan. 2009) ................................................................. 13
8 *ACLU v. Alvarez,*
    679 F.3d 583 (7th Cir. 2012) ............................................................................... 16
9

10 *Alliance for the Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011) ............................................................................... 5
11 *Am. Civil Liberties Union v. Ashcroft,*
    322 F.3d 240 (3d Cir. 2003) ................................................................................. 16
12

13 *Am. Trucking Ass'ns, Inc. v. City of Los Angeles,*
    559 F.3d 1046 (9th Cir. 2009) ............................................................................... 4
14 *Bates v. State Bar of Ariz.,*
    433 U.S. 350 (1977) ............................................................................................. 16
15

16 *Bigelow v. Virginia,*
    421 U.S. 809 (1975) ........................................................................................... 1, 5
17 *Bolger v. Youngs Drug Prods.,*
    463 U.S. 60 (1983) ..................................................................................... 1, 2, 5, 9
18

19 *Carey v. Population Servs. Int'l,*
    431 U.S. 678 (1977) ................................................................................... 1, 2, 5, 9
20 *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,*
    447 U.S. 557 (1980) ..................................................................................... 5, 6, 8
21 *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,*
    657 F.3d 936 (9th Cir. 2011) ............................................................................... 13
22

23 *District of Columbia v. Heller,*
    554 U.S. 570 (2008) ..................................................................................... 1, 5, 6
24 *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,*
    425 U.S. 748 (1976) ............................................................................................. 16
25

26 *Edenfield v. Fane,* 507 U.S. 761 (1993) ........................................................... 6, 7, 9, 11

27 *Elrod v. Burns,*
    427 U.S. 347 (1976) ............................................................................................. 14

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Giovani Carandola, Ltd. v. Bason,*
    303 F.3d 507 (4th Cir. 2002) ................................................................. 15

*Goldie's Bookstore, Inc. v. Super. Ct.,*
    739 F.2d 466 (9th Cir. 1984) ................................................................. 15

*Gordon v. Holder,*
    721 F.3d 638 (D.C. Cir. 2013) .............................................................. 16

*Greater New Orleans Broad. Ass'n, Inc. v. United States,*
    527 U.S. 173 (1999) ............................................................ 5, 8, 10, 11, 12

*Joelner v. Vill. of Wash. Park,*
    378 F.3d 613 (7th Cir. 2004) ................................................................. 15

*Klein v. City of San Clemente,*
    584 F.3d 1196 (9th Cir. 2009) ......................................................... 14, 16

*Legend Night Club v. Miller,*
    637 F.3d 291 (4th Cir. 2011) ................................................................. 15

*Linmark Assocs., Inc. v. Willingboro Twp.,*
    431 U.S. 85 (1977) .................................................................... 1, 11, 14

*Lorillard Tobacco Co. v. Reilly,*
    533 U.S. 525 (2001) .................................................................... *passim*

*New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff,*
    669 F.3d 374 (3d Cir. 2012) .................................................................. 15

*Passions Video v. Nixon,*
    458 F.3d 837 (8th Cir. 2006) ................................................................. 13

*Pitt News v. Pappert,*
    379 F.3d 96 (3d Cir. 2004) ................................................................... 12

*Project 80's, Inc. v. City of Pocatello,*
    942 F.2d 635 (9th Cir. 1991) ................................................................. 13

*R.A.V. v. St. Paul,*
    505 U.S. 377 (1992) ........................................................................ 6, 7

*Roe v. Wade,*
    410 U.S. 113 (1973) .......................................................................... 1

*Rubin v. Coors Brewing Co.,*
    514 U.S. 476 (1995) ................................................................... 5, 11, 12

*Sammartano v. First Judicial Dist. Ct.,*
    303 F.3d 959 (9th Cir. 2002) ................................................................. 16

*Scott v. Roberts,*
    612 F.3d 1279 (11th Cir. 2010) .............................................................. 16

*Sorrell v. IMS Health Inc.*,
   564 U.S. ___, 131 S. Ct. 2653, 2670-71 (2011) .................................................*passim*

*Stormans, Inc. v. Stelecky*,
   586 F.3d 1109 (9th Cir. 2009) ....................................................................... 15

*Thompson v. Western States Medical Center*,
   535 U.S. 357 (2002) .......................................................................................*passim*

*Valle Del Sol Inc. v. Whiting*,
   709 F.3d 808 (9th Cir. 2013) ................................................................ 13, 14, 15

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989)). .......................................................................................6

*Winter v. Natural Res. Defense Council, Inc.*,
   555 U.S. 7 (2008) ...............................................................................................4

**Statutes**

Cal. Admin. Code tit. 11, § 4024 ...........................................................................3

Cal. Penal Code § 26800 .......................................................................................3

Cal. Penal Code § 26715(b) ..................................................................................3

Cal. Penal Code § 26820 ...............................................................................*passim*

Cal. Penal Code §  12071(b)(4) .............................................................................4

San Joaquin Cnty. Code of Ordinances § 7-1251(d) ............................................3

# I.

## INTRODUCTION

The sale of handguns is not only legal—it is constitutionally protected.  The First Amendment protects truthful, nonmisleading commercial speech promoting lawful products or services, but especially when the products or services are themselves protected by other constitutional rights, such as the right to abortion or the right to buy contraceptives.[1]  What is true for unenumerated constitutional rights must be at least as true for the enumerated right to bear arms, which includes the right to possess and acquire handguns.[2]

Plaintiff firearms dealers are therefore constitutionally entitled to convey truthful commercial information about handguns to the public, and the public has a corresponding interest in receiving that information.  This includes plaintiffs' right to advertise their products on-site—an especially useful form of advertising for sellers and consumers alike.[3]  Yet California Penal Code § 26820 ("Section 26820") prevents a firearms dealer from displaying any "handgun or imitation handgun, or [a] placard advertising the sale or other transfer thereof" anywhere that can be seen outside the four corners of its store.  Section 26820 thus unconstitutionally prevents firearms dealers from advertising even the most basic commercial information—"Handguns for Sale"—at their places of business.

The government's defense of Section 26820 would presumably rest on one of two theories.

---

[1]    *See Bigelow v. Virginia*, 421 U.S. 809, 822 (1975) (striking down ban on abortion advertisements, partly because "the activity advertised pertained to constitutional interests," citing *Roe v. Wade*, 410 U.S. 113 (1973)); *Carey v. Population Servs. Int'l*, 431 U.S. 678, 700-01 (1977) (striking down ban on contraceptive advertisements, partly because "the information suppressed by this statute 'related to activity with which, at least in some respects, the State could not interfere'" (citation omitted)); *Bolger v. Youngs Drug Prods.*, 463 U.S. 60, 69 (1983) (striking down ban on mailing contraceptive advertisements, partly because "advertising for contraceptives . . . relates to activity which is protected from unwarranted state interference").

[2]    The ability to obtain a handgun is central to a citizen's ability to exercise the core guarantee secured by the Second Amendment: "the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008); *see id.* at 628 (handguns are the "class of 'arms'" "overwhelmingly chosen by American society for [the] lawful purpose [of self-defense]"); *id.* at 628-29 (handguns are "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family.").

[3]    *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 566-67 (2001); *Linmark Assocs., Inc. v. Willingboro Twp.*, 431 U.S. 85, 93 (1977).

1  First, the government might argue that some people find handgun advertising offensive, and do not

2  wish to see it in public places.  But that "advertisements" might be "offensive . . . to those exposed

3  to them" is "classically not [a] justification[] validating the suppression of expression protected by

4  the First Amendment," including advertising.  *Carey*, 431 U.S. at 701.  And the Court has

5  "specifically declined to recognize a distinction between commercial and noncommercial speech

6  that would render [the] interest [in preventing offense to viewers] a sufficient justification for a

7  prohibition of commercial speech."  *Bolger*, 463 U.S. at 71-72.

8         Second, the government might argue that it wants to decrease handgun ownership,

9  presumably on the theory that this will decrease violence or injury.  But even if decreasing

10  handgun ownership is a permissible justification for government regulations following *Heller*, it

11  cannot justify this speech restriction.  Even if California believes that buying a handgun is a bad

12  decision, "the 'fear that people would make bad decisions if given truthful information' cannot

13  justify content-based burdens on speech."  *Sorrell v. IMS Health Inc.*, 564 U.S. ___, 131 S. Ct.

14  2653, 2670-71 (2011) (citation omitted).  The Supreme Court has "rejected the notion that the

15  Government has an interest in preventing the dissemination of truthful commercial information in

16  order to prevent members of the public from making bad decisions with the information."

17  *Thompson v. Western States Medical Center*, 535 U.S. 357, 374 (2002).

18         "The choice 'between the dangers of suppressing information, and the dangers of its misuse

19  if it is freely available' is one that 'the First Amendment makes for us.'"  *Sorrell*, 131 S. Ct. at

20  2671 (citation omitted).  So long as responsible, law-abiding adults may purchase handguns in

21  California, the First Amendment prevents the State from enforcing Section 26820's ban on on-site

22  handgun advertising.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## II.

## STATEMENT OF FACTS

California Penal Code section 26820, enacted in 1923, prohibits firearms dealers from displaying a "handgun or imitation handgun, or [a] placard advertising the sale or other transfer thereof" "in any part of the premises where it can readily be seen from the outside."[4]  As such, it not only bans any onsite advertisement *outside* a firearms dealer's premises informing potential customers that it sells handguns, it bans any *in-store* advertisement (or firearms display) that can be seen through a glass door or window.  As shown below, the California Department of Justice ("DOJ"), which enforces Section 26820, applies the law to ban the display of any picture or physical depiction of a handgun.

Plaintiffs are retail firearms dealers who wish to display truthful, nonmisleading material advertising the sale of handguns at their places of business.  Section 26820 prevents them from doing so, and a dealer's license is subject to forfeiture for violating the handgun advertising restriction.  Cal. Penal Code §§ 26800, 26715(b); Cal. Admin. Code tit. 11, § 4024.  The DOJ's enforcement of the advertising ban has infringed Plaintiffs' First Amendment rights, and the threat of further enforcement chills the protected speech of firearms dealers throughout the State.  The DOJ has restricted each of the plaintiffs' efforts to engage in truthful advertising:

*Tracy Rifle*.  On September 12, 2014, the DOJ Bureau of Firearms inspected Plaintiff Tracy Rifle and Pistol LLC.  (Declaration of Michael Baryla ISO Mot. for Preliminary Injunction ("Baryla Decl."), ¶ 4.)  At the time of the inspection, four of Tracy Rifle's exterior windows were covered with large vinyl decals depicting firearms—three handguns and a rifle.[5]  (*Id.*)  As of the date of the inspection, each of these firearms could be lawfully purchased in California, and Tracy Rifle regularly carries each of the four guns depicted in the windows.  (*Id.*)  The Bureau of

---

[4]      In addition to Section 26820, many localities, which key their firearm licensing regulations to the State's, also impose similar on-site handgun advertising prohibitions.  *E.g.*, San Joaquin Cnty. Code of Ordinances § 7-1251(d) ("No pistol or revolver, or imitation thereof, or placard advertising the sale or other transfer thereof, shall be readily seen from the outside.").

[5]      The handguns depicted are a Nighthawk Customs GRP Recon .45 ACP, a Smith and Wesson 642 .38 Special, and a Glock 42 .380 ACP.  The rifle is a Larue Tactical PredatOBR 5.56.

Firearms issued a "Notification of Inspection Findings" citing Plaintiffs Tracy Rifle and Michael Baryla for violating Section 26820 because of the handgun decals, and requiring Plaintiffs to take corrective action by February 11, 2015.  (*Id.*, ¶ 5.)

*Ten Percent Firearms*.  On or about February 23, 2010, the DOJ Bureau of Firearms inspected Plaintiff Ten Percent Firearms in Taft, California.  (Declaration of Wesley Morris ISO Mot. for Preliminary Injunction ("Morris Decl."), ¶ 4; Declaration of Dean Rowden ISO Mot. for Preliminary Injunction ("Rowden Decl."), ¶ 3.)  Displayed on a post in Ten Percent's parking lot was a 3-foot by 2-foot three-dimensional metal sign shaped like a revolver, hung approximately 9 feet off the ground.  (Morris Decl., ¶ 4; Rowden Decl., ¶ 3.)  The DOJ inspector informed Plaintiff Morris that the sign violated the handgun advertising restriction, and Ten Percent Firearms immediately took it down.  (Morris Decl., ¶ 4; Rowden Decl., ¶ 4.)  The Bureau of Firearms issued a "Notification of Inspection Findings" citing Plaintiffs Ten Percent Firearms and Morris for violating the handgun advertising ban.[6]  (Morris Decl., ¶ 4; Rowden Decl., ¶ 4.)

Each Plaintiff desires to display truthful, nonmisleading on-site handgun advertising that is visible from the outside of their dealerships, and would do so, but for Section 26820 and the threat of forfeiting their dealer's licenses.  (Baryla Decl., ¶ 6; Morris Decl., ¶ 5; Declaration of Robert Adams ISO Mot. for Preliminary Injunction, ¶ 3; Declaration of Jeffrey Mullen ISO Mot. for Preliminary Injunction, ¶¶ 3-4.)

### III.

### ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008)).  Alternatively, "a preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits [are] raised

---

[6]     Ten Percent Firearms and Morris were cited for violating former Penal Code section 12071(b)(4), which has since been renumbered as Section 26820.

and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).  An injunction is warranted under either formulation.

A.      **Plaintiffs Are Likely To Establish That Section 26820 Violates The First Amendment.**

Section 26820 is unconstitutional because it prohibits firearms dealers from disseminating truthful, nonmisleading commercial information about a lawful, constitutionally protected product. The Supreme Court has struck down bans on advertising of abortion and contraceptives, partly because "the activity advertised pertained to constitutional interests" and "the information suppressed by this statute 'related to activity with which, at least in some respects, the State could not interfere.'" *Bigelow*, 421 U.S. at 822 (abortion); *Carey*, 431 U.S. at 700-01 (1977) (citation omitted) (contraceptives).  The Supreme Court has struck down even a more limited ban on advertising contraceptives in mailings, partly because "advertising for contraceptives . . . relates to activity which is protected from unwarranted state interference." *Bolger*, 463 U.S. at 69.  The same heightened constitutional protection extends to handguns, which are constitutionally protected against unwarranted interference by the Second Amendment.  *Heller*, 554 U.S. at 628-29, 635.

Of course the First Amendment protects even commercial speech about products and activities that are not themselves constitutionally protected, such as alcohol, tobacco, and gambling.  *Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995) (disclosure of alcohol content on beer labels); *44 Liquormart, Inc. v Rhode Island*, 517 U.S. 484 (1996) (advertising of alcohol prices); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001) (outdoor and point-of-sale tobacco advertising); *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173 (1999) (gambling advertising).  But the First Amendment even more clearly protects advertising of constitutionally protected products and activities.

The Supreme Court has articulated two different tests for commercial speech restrictions, but in this case both tests point in the same direction.  First, Section 26820 fails the heightened scrutiny for content- and speaker-based commercial speech restrictions set forth by *Sorrell* and *Thompson*.  Second, Section 26820 fails the commercial speech test articulated in *Central Hudson*

*Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980), even assuming that this test survives *Sorrell* and *Thompson*.  Under either test, the state bears the burden of proving the constitutionality of a commercial speech restriction.  *Thompson*, 535 U.S. at 373; *Edenfield v. Fane*, 507 U.S. 761, 770 (1993).

### 1. Section 26820 Is Presumptively Invalid Because It Imposes A Content- And Speaker-Based Burden On Protected Expression.

The Supreme Court recently reaffirmed in *Sorrell* that "heightened judicial scrutiny is warranted" when a statute "is designed to impose a specific, content-based burden on protected expression."  131 S. Ct. at 2664.  Even in the commercial speech context, "[t]he First Amendment requires heightened scrutiny whenever the government creates 'a regulation of speech because of disagreement with the message it conveys.'"  *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).  Indeed, "it is all but dispositive to conclude that a law is content-based and, in practice, viewpoint-discriminatory," because such laws are "'presumptively invalid.'"  *Id.* at 2668 (quoting *R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992)).

In *Sorrell*, the Supreme Court struck down a Vermont law that restricted pharmaceutical companies from using certain industry information to market drugs to doctors.[7]  131 S. Ct. at 2659-60.  The Court explained that laws that impose special burdens on disfavored speech and single out disfavored speakers are constitutionally suspect.  *Id.* at 2663-65.  To that end, states are not permitted to advance their policy goals "through the indirect means of restraining certain speech by certain speakers," *id.* at 2670, and "may not burden the speech of others in order to tilt public debate in a preferred direction."[8]  *Id.* at 2671.  Instead, the Constitution requires that information be made freely available to the public, who are responsible for assessing its value:

---

[7]    Specifically, the law banned pharmacies and insurers from selling, and pharmaceutical manufacturers and marketers from relying on, data about a doctor's prescription practices (so-called "prescriber-identifying information") for marketing purposes, without first having the doctor's consent.  *Sorrell*, 131 S. Ct. at 2559-60.

[8]    The Court also emphasized the importance of the free flow of commercial information "in the fields of medicine and public health, where information can save lives."  *Sorrell*, 131 S. Ct. at 2664.  This observation is equally applicable here.  Indeed, the very essence of the Second Amendment right recognized in *Heller*—the right to use handguns for self-defense in the home—is that handguns "can save lives" as well.

1
2

> The commercial marketplace, like other spheres of our social and cultural life, provides a forum where ideas and information flourish. Some of the ideas and information are vital, some of slight worth. But the general rule is that the speaker and the audience, not the government, assess the value of the information presented.

3   *Id.* at 2671-72 (quoting *Edenfield*, 507 U.S. at 767).

4         Section 26820 suffers from the same constitutional infirmities confronted in *Sorrell*. The

5   advertising restriction is content-based. The law applies only to handguns and does not apply to

6   other firearms such as rifles or shotguns. No separate statute imposes a similar restriction on

7   advertising the sale of rifles or shotguns,[9] and Plaintiffs are unaware of any other California law

8   that imposes an outright ban on a retailer advertising a product that may lawfully be purchased

9   from its store.

10         And Section 26820 engages in speaker-based discrimination by singling out firearms

11   dealers. Thus, for example, a dealer is prevented from displaying advertisements that feature

12   handguns in a campaign to promote public safety through the responsible use of handguns for self-

13   defense. But an anti-gun group would remain free under Section 26820 to use similar imagery to

14   picket in front of that same dealer, encouraging people not to purchase handguns or warning of the

15   dangers of gun violence (indeed, the First Amendment protects such speech as well). So too, the

16   statute operates in a way that is viewpoint-discriminatory, *i.e.*, anti-handgun. *Cf. Sorrell*, 131 S.

17   Ct. at 2663 (noting that the law "burden[ed] disfavored speech by disfavored speakers" because it

18   allowed the state to "supply academic organizations with prescriber-identifying information to use

19   in countering the messages of brand-name pharmaceutical manufacturers and in promoting the

20   prescription of generic drugs," but denied manufacturers' sales representatives the right to use the

21   same "prescriber-identifying information" "for marketing"). Because Section 26820 imposes a

22   content- and speaker-based burden on protected expression that is, in practice, viewpoint-

23   discriminatory, it is "'presumptively invalid.'" *Id.* at 2667 (quoting *R.A.V.*, 505 U.S. at 382, and

24   concluding that "[a]s in previous cases, . . . the outcome is the same whether a special commercial

25   speech inquiry or a stricter form of judicial scrutiny is applied").

26   ///

27

28        [9]    Of course, banning rifle or shotgun advertisements would also be unconstitutional.

1

      2.       **Plaintiffs Are Likely To Prevail Because Section 26820 Fails The *Central***

2                      ***Hudson* Test.**

3         The Court's analysis in *Sorrell* reflects the fact that the Court has cast doubt on whether

4 *Central Hudson* should remain the controlling test for commercial speech restrictions. *Thompson*,

5 535 U.S. at 367-68 (collecting cases)*; Lorillard Tobacco*, 533 U.S. at 554 (same); *Greater New*

6 *Orleans Broad. Ass'n,* 527 U.S. at 197 (Thomas, J., concurring in judgment); *44 Liquormart*, 517

7 U.S. at 510-14 (plurality opinion); *id.* at 517 (Scalia, J., concurring in part and concurring in

8 judgment); *see also Sorrell*, 131 S. Ct. at 2653 (citing *Central Hudson* only once in the majority

9 opinion, to support the proposition that "the State must show *at least*" the elements set forth by

10 *Central Hudson* (emphasis added)).  The Supreme Court has further stressed that "a blanket

11 prohibition against truthful, nonmisleading speech about a lawful product"—such as the fact that

12 handguns are available for purchase—is reviewed "with 'special care,' mindful that speech

13 prohibitions of [that] type rarely survive constitutional review."  *44 Liquormart, Inc.*, 517 U.S. at

14 504 (plurality opinion) (citing *Central Hudson*, 447 U.S. at 566 n.9).  But in any event, Section

15 26820 fails even the scrutiny set forth under *Central Hudson*.[10]

16         Under *Central Hudson*, the reviewing court first inquires "whether the expression [being

17 restricted] is protected by the First Amendment," which means that "it at least must concern lawful

18 activity and not be misleading."  *Central Hudson*, 447 U.S. at 566.  Second, the state must show

19 that the "asserted governmental interest is substantial."  *Id.*  Then, "[i]f both inquiries yield

20 positive answers," a court "must determine whether the regulation directly advances the

21 governmental interest asserted, and whether it is not more extensive than is necessary to serve that

22 interest."  *Id.*

23         The direct advancement prong, in particular, requires that the government advance its goals

24 "in a permissible way," specifically by *not* operating based on "the 'fear that people would make

25

---

26 [10]     As noted above, several Justices have expressed concern that *Central Hudson* is not a
stringent enough a test, but the Court has declined to "break new ground" because each of the

27 challenged restrictions failed whether the Court applied *Central Hudson* or a more restrictive
standard.  *Greater New Orleans Broad. Ass'n*, 527 U.S. at 184; *Lorillard Tobacco*, 533 U.S. at

28 554-55; *Thompson*, 535 U.S. at 368.

1    bad decisions if given truthful information.'"  *Sorrell*, 131 S. Ct. at 2670 (quoting *Thompson*, 535

2    U.S. at 374).  And the "not more extensive than is necessary" prong reflects the view that, "[i]f the

3    First Amendment means anything, it means that regulating speech must be a last—not first—

4    resort."  *Thompson*, 535 U.S. at 373.

5                    **a.    Section 26820 Bans Protected First Amendment Activity.**

6           The first step of *Central Hudson* is satisfied: Section 26820 imposes a blanket ban against

7    truthful and nonmisleading speech (onsite advertising) about a lawful activity (the purchase of

8    handguns).  *44 Liquormart*, 517 U.S. at 504.  And though Section 26820 imposes a blanket ban

9    that targets all handgun advertisements—not just deceptive ones—it is worth noting that the

10   advertisements for which Plaintiffs have been cited (pictures of handguns and a sign shaped like a

11   revolver) were not misleading.

12
13               **b.    Whether Section 26820 Is Supported By A "Substantial State Interest"
                         Remains Unclear.**

14          Plaintiffs can only guess what governmental interest Section 26820 is intended to advance,

15   though presumably the Defendants will identify the interest in its opposition to this motion, since

16   the government bears the burden of justifying its speech ban.  *Thompson*, 535 U.S. at 373;

17   *Edenfield*, 507 U.S. at 770.

18          One possible government interest is preventing offense to those people who disapprove of

19   handguns, and who do not wish to see handgun advertising in public places.  But that

20   "advertisements" might be "offensive . . . to those exposed to them" is "classically not [a]

21   justification[] validating the suppression of expression protected by the First Amendment,"

22   including advertising.  *Carey*, 431 U.S. at 701.  The Court has "specifically declined to recognize a

23   distinction between commercial and noncommercial speech that would render [the] interest [in

24   preventing offense to viewers] a sufficient justification for a prohibition of commercial speech."

25   *Bolger*, 463 U.S. at 71-72.

26          Another possible interest, which the remainder of this memorandum will address, is the

27   government's desire to decrease handgun ownership, presumably on the theory that this will

28   decrease violence or other injury.  Plaintiffs do not agree that decreasing handgun ownership will

indeed reduce violence or injury, or that the desire to decrease handgun ownership is a permissible justification for government regulations following *Heller*. Nonetheless, even assuming the interest is substantial, Section 26820 fails the *Central Hudson* test.

> **c.**     **The State Cannot Establish That Section 26820 Directly Advances A Legitimate Government Interest.**

The third *Central Hudson* prong "requires that the speech restriction directly and materially advance the asserted governmental interest." *Greater New Orleans Broad. Ass'n*, 527 U.S. at 188. In particular, a state's "seek[ing] to achieve its policy objectives through the indirect means of restraining certain speech by certain speakers—that is, by diminishing [speakers'] ability to influence [listeners'] decisions," *Sorrell*, 131 S. Ct. at 2670, is unacceptable. "[T]he 'fear that people would make bad decisions if given truthful information' cannot justify content-based burdens on speech." *Id.* at 2670-71. The Supreme Court has "rejected the notion that the Government has an interest in preventing the dissemination of truthful commercial information in order to prevent members of the public from making bad decisions with the information." *Thompson*, 535 U.S. at 374. "The choice 'between the dangers of suppressing information, and the dangers of its misuse if it is freely available' is one that 'the First Amendment makes for us.'" *Sorrell*, 131 S. Ct. at 2671 (citation omitted).

To the extent that Section 26820 aims to reduce handgun ownership by reducing handgun advertising, it does what the Supreme Court has condemned: it tries to prevent consumers' supposedly "bad" but perfectly lawful "decisions" (the decisions to buy handguns), by denying them "truthful commercial information" about the availability of handguns. A state "may not seek to remove a popular but disfavored product from the marketplace by prohibiting truthful, nonmisleading advertisements." *Sorrell*, 131 S. Ct. at 2671; *see also id.* at 2670 (noting that the state did not "advance its [stated policy goals] in a permissible way" because it "[sought] to achieve its policy objectives through the indirect means of restraining certain speech by certain speakers"). "That the State finds expression too persuasive does not permit it to quiet the speech or to burden its messengers." *Id.* at 2671. What is true of speech about pharmaceuticals is at least as true of speech about constitutionally protected products such as handguns. As a result, section

1   26820 would fail the *Central Hudson* based on this reason alone.

2          But beyond this, the government's burden to show direct advancement of its interest "is not

3   satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a

4   restriction on commercial speech must demonstrate that the harms it recites are real and that its

5   restriction will in fact alleviate them to a material degree.'" *Lorillard Tobacco Co. v. Reilly*, 533

6   U.S. 525, 555 (2001) (citation and internal brackets omitted); *see also 44 Liquormart*, 517 U.S. at

7   505 (state bears the burden of demonstrating that restriction will "significantly advance" the

8   asserted governmental interest).  "A regulation cannot be sustained if it 'provides only ineffective

9   or remote support for the government's purpose,' or if there is 'little chance' that the restriction

10  will advance the State's goal." *Lorillard Tobacco*, 533 U.S. at 566 (quoting *Edenfield*, 507 U.S. at

11  770, and *Greater New Orleans Broad. Ass'n*, 527 U.S. at 193).  *See also 44 Liquormart*, 517 U.S.

12  at 507-08 (the government's speculation concerning effectiveness of regulation "does not suffice

13  when the State takes aim at accurate commercial information for paternalistic ends.").

14         And "this requirement [is] critical; otherwise, a State could with ease restrict commercial

15  speech in the service of other objectives that could not themselves justify a burden on commercial

16  expression." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995) (citation and internal

17  quotation marks omitted).  The desire to prevent offense to those who disapprove of handguns, or

18  to make a symbolic statement against handgun ownership, would be possible examples of such

19  inadequate objectives that may lurk behind a supposed public safety rationale.

20         It is hard to see how section 26820 "will in fact alleviate them to a material degree" any

21  public safety harms that the government can identify.  Indeed, plaintiffs remain free to post on-site

22  advertisements for rifles and shotguns, and firearms dealers can advertise handguns online and in

23  broadcast and print media.[11]  The statute would even allow a dealer to hire someone to dress up as

24  a revolver and stand on the public sidewalk or a major intersection, directing consumers to the

25  store, since that would not be speech "in any part of the premises."  Yet the DOJ has required to

---

[11]        That firearms dealers have alternate avenues to advertise handguns does not save the
constitutionality of Section 26820.  Retailers have a particular interest in on-site advertising that
communicates to passersby the products and services they offer.  *See Lorillard Tobacco*, 533 U.S.
at 565-67; *Linmark Assocs.*, 431 U.S. at 93.

1    Plaintiff Ten Percent Firearms to take down a sign shaped like a revolver, and has ordered Plaintiff

2    Tracy Rifle to remove pictures of handguns—though the picture of a rifle can stay.  The Supreme

3    Court has cast a skeptical eye at commercial speech restrictions that impose irrational distinctions

4    that "permit[] a variety of speech that poses the same risks the Government purports to fear, while

5    banning messages unlikely to cause any harm at all."  *Greater New Orleans Broad. Ass'n,* 527

6    U.S. at 195.

7          The Third Circuit reached a similar conclusion in *Pitt News v. Pappert*, where it struck

8    down a law restricting alcohol advertising in publications directly targeted to college students.  379

9    F.3d 96, 107-09 (3d Cir. 2004).  Then-Judge Alito explained that Pennsylvania's law "applie[d]

10   only to advertising in a very narrow sector of the media," and the commonwealth failed to show

11   that "eliminating ads in [a] narrow sector [of the media] will do any good" because students "will

12   still be exposed to a torrent of beer ads on television and the radio, and they will still see alcoholic

13   beverage ads in other publications" including other publications displayed on campus.  *Id.* at 107.

14   The same is true of Section 26820.

15          d.      **The State Cannot Demonstrate That Section 26820's Ban Is Not More**
16                  **Extensive Than Necessary.**

17          Section 26820 also fails the fourth and final step of the *Central Hudson* analysis, which

18   asks "whether the speech restriction is not more extensive than necessary to serve the interests that

19   support it."  *Lorillard Tobacco*, 533 U.S. at 556 (citation and quotation marks omitted).  This step

20   reflects the view that, "[i]f the First Amendment means anything, it means that regulating speech

21   must be a last—not first—resort."  *Thompson*, 535 U.S. at 373.  "[I]f the Government could

22   achieve its interests in a manner that does not restrict speech, or that restricts less speech, the

23   Government must do so."  *Id.* at 371-72 (striking down a restriction on drug advertising; collecting

24   cases); *44 Liquormart*, 517 U.S. at 507 (plurality opinion) (striking down restriction on advertising

25   the price of alcoholic beverages partly because "[i]t is perfectly obvious that alternative forms of

26   regulation that would not involve any restriction on speech would be more likely to achieve the

27   State's goal"); *Greater New Orleans Broad. Ass'n*, 527 U.S. at 192 ("There surely are practical

28   and nonspeech-related forms of regulation . . . that could more directly and effectively alleviate

1   some of the social costs of casino gambling."); *Rubin*, 514 U.S. at 491 (striking down restriction

2   on displaying the alcohol content on beer labels partly based on the available alternatives "which

3   could advance the Government's asserted interest in a manner less intrusive to respondent's First

4   Amendment rights," because those alternatives "indicate[] that [the law] is more extensive than

5   necessary").

6        Consistent with Supreme Court precedent, the Ninth Circuit has invalidated commercial

7   speech regulations as overinclusive where enforcement of preexisting laws would serve its interest

8   without burdening speech. *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 826-27 (9th Cir. 2013);

9   *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 950 (9th Cir.

10  2011) (applying time, place or manner test, but relying on commercial speech precedent); *Project

11  80's, Inc. v. City of Pocatello*, 942 F.2d 635, 638 (9th Cir. 1991) ("restrictions which disregard far

12  less restrictive and more precise means are not narrowly tailored").

13       In *Valle Del Sol*, plaintiffs challenged an Arizona law barring in-street solicitation of day

14  laborers, which the state claimed was justified by its interest in traffic safety.  The Ninth Circuit

15  held that the solicitation ban failed the fourth step of the *Central Hudson* test because Arizona

16  could serve its interest without burdening speech by enforcing its existing traffic safety regulations

17  and by enacting additional speech-neutral regulations.  709 F.3d at 826-27.

18       In reaching this conclusion, the appellate court quoted with approval its decision striking

19  down a similar ordinance in *Comite de Journaleros* because "[t]he City has various other laws at

20  its disposal that would allow it to achieve its stated interests while burdening little or no speech."

21  *Id.* at 826 (quoting *Comite de Journaleros*, 657 F.3d at 949).  The Court explained that "[*Comite

22  de Journaleros*] was based on the longstanding rule that, because restricting speech should be the

23  government's tool of last resort, the availability of obvious less-restrictive alternatives renders a

24  speech restriction overinclusive."  709 F.3d at 826.  Other courts have likewise struck down onsite

25  advertising limitations under *Central Hudson*, even when the advertisements were for sexually

26  themed businesses, often citing the fourth prong as the decisive one.  *See, e.g.*, *Passions Video v.

27  Nixon*, 458 F.3d 837, 842-44 (8th Cir. 2006) (striking down advertising restriction on adult-

28  oriented businesses); *Abilene Retail # 30, Inc. v. Six*, 641 F. Supp. 2d 1185, 1196-99 (D. Kan.

1    2009) (same; issuing preliminary injunction); *ABCDE Operating, LLC v. Snyder*, 2011 WL

2    3113797, *4 (E.D. Mich. 2011) (same).

3        Section 26820 fails the fourth prong of the *Central Hudson* test for these same reasons.

4    Unlike when this speech restriction was passed 90 years ago, California now comprehensively

5    regulates the purchase and sale of handguns.  It could serve its interest by enforcing these existing

6    laws and regulations, and, if such enforcement efforts prove insufficient, the Legislature can pass

7    additional direct regulations (within constitutionally permissible boundaries).  *See Valle Del Sol*,

8    709 F.3d at 826-27.

9        Or the State could take steps to address the asserted governmental interest that do not

10   involve any restriction on speech.  For example, if California is concerned about the danger of gun

11   violence, it could conduct an educational campaign and promote responsible handgun use.  As the

12   Supreme Court noted in *Lorillard Tobacco*, "if [the government's] concern is that tobacco

13   advertising communicates a message with which it disagrees, it could seek to counteract that

14   message with 'more speech, not enforced silence.'"  533 U.S. at 586 (citation omitted); *see also*

15   *Linmark Assocs.*, 431 U.S. at 97 (highlighting availability of counterspeech); *Sorrell*, 131 S.Ct. at

16   2671 (citing *Linmark*).

17        California thus has ample alternative means to advance its interest without restricting

18   speech.  And because Section 26820 restricts more speech than "necessary" to accomplish its

19   interests, the statute fails the *Central Hudson* test and thus violates the First Amendment.

20   **B.**    **Plaintiffs Will Be Irreparably Harmed In The Absence Of A Preliminary Injunction.**

21        Plaintiffs are irreparably harmed by the enforcement of Section 26820.  "Both [the Ninth

22   Circuit] and the Supreme Court have repeatedly held that '[t]he loss of First Amendment

23   freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'"  *Klein*

24   *v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S.

25   347, 373 (1976)); *Valle Del Sol*, 709 F.3d at 828 (quoting *Elrod*, and upholding preliminary

26   injunction in the commercial speech context).  Furthermore, "'constitutional violations cannot be

27   adequately remedied through damages and therefore generally constitute irreparable harm.'"

28

*Stormans, Inc. v. Stelecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (citation omitted).[12]  "[P]urposeful unconstitutional suppression of speech constitutes irreparable harm for preliminary injunction purposes."  *Goldie's Bookstore, Inc. v. Super. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984).

In addition, Plaintiffs Tracy Rifle and Baryla face the direct threat of forfeiting the dealership's license if they do not take corrective action and remove the handgun advertisements before February 11.  The loss of a business license as a direct consequence of exercising First Amendment rights constitutes irreparable injury.  *Legend Night Club v. Miller*, 637 F.3d 291, 303 (4th Cir. 2011); *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 520-21 (4th Cir. 2002) (suspension of license and lost business opportunities constitute irreparable injury).

## C.      The Balance Of Equities Tips In Plaintiffs' Favor.

The balance of equities tips in Plaintiffs' favor "because they have a significant First Amendment and economic interest in engaging in [the prohibited] speech," and California "need not impede that speech in order to pursue its" interests.  *Valle Del Sol*, 709 F.3d at 828-29.  If Section 26820 is not enjoined, Defendants will continue to enforce this unconstitutional law against Plaintiffs, who will be forced to choose between sacrificing their First Amendment rights and losing their property and livelihood (forfeiting their dealer's license for noncompliance).

Conversely, an injunction would impose no burden on the Defendants.  The administrative burden of compliance would be minimal (likely limited to communicating the fact that Section 26820 has been enjoined), and an injunction would pose no threat to public safety since California's direct restrictions on the purchase and sale of handguns would remain unaffected. Finally, California is not harmed by an injunction preventing it from enforcing an unconstitutional statute.  *See, e.g.*, *Legend Night Club*, 637 F.3d at 302-03; *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004); *New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 388-89 (3d Cir. 2012).

---

[12]      The State will presumably argue in favor of Section 26820's ban based on the theory that onsite advertising of handgun sales will result in marginally more sales of handguns.  While plaintiffs need not show financial harm in order to show irreparable harm when their First Amendment rights are being infringed, *supra*, the State's very rationale for the law, if true, establishes such financial harm.

**D.      An Injunction Is In The Public Interest.**

The Ninth Circuit has "consistently recognized the 'significant public interest' in upholding free speech principles, as the 'ongoing enforcement of the potentially unconstitutional regulations . . . would infringe not only the free expression interests of plaintiffs, but also the interests of other people' subjected to the same restrictions."  *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (quoting *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002)).  Conversely, enforcement of an unconstitutional law is against the public interest.  *E.g.*, *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010) ("[T]he public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law."); *ACLU v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012) ("[T]he public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional."); *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[E]nforcement of an unconstitutional law is always contrary to the public interest."); *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003) ("[N]either the Government nor the public generally can claim an interest in the enforcement of an unconstitutional law.") (citation and international quotation marks omitted).

In fact, a preliminary injunction would promote the public interest by allowing for the free flow of commercial information, the value of which has been repeatedly recognized by the Supreme Court.  *E.g.*, *Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 765 (1976) ("It is a matter of public interest that [consumer] decisions, in the aggregate, be intelligent and well informed."); *Bates v. State Bar of Ariz.*, 433 U.S. 350, 364 (1977) ("[A] consumer's concern for the free flow of commercial speech often may be far keener than his concern for urgent political dialogue."); *44 Liquormart*, 517 U.S. at 503 (plurality opinion) ("[C]ommercial speech bans not only hinder consumer choice, but also impede debate over central issues of public policy.").

///

///

///

///

**IV.**

**CONCLUSION**

For the reasons set forth above, the Court should issue a preliminary injunction that prevents Defendants from enforcing California Penal Code section 26820.


Dated:  November 17, 2014                    BENBROOK LAW GROUP, PC


                                             By /s/ *Bradley A. Benbrook*
                                                BRADLEY A. BENBROOK
                                                Attorneys for Plaintiffs

**PROOF OF SERVICE**
**Case No.** 2:14-cv-02626-TLN-DAD

The undersigned hereby certifies as follows:

I am an employee of the law firm of Benbrook Law Group, PC, 400 Capitol Mall, Suite 1610, Sacramento, California.  I am over 18 years of age and am not a party to the within action.

On November 17, 2014 I served a true copy of the following document:

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

on the party(ies) in this action by placing a true copy thereof in a sealed envelope(s), addressed as follows:

| | |
|---|---|
| Kamala D. Harris<br>Attorney General of California<br>1300 I Street<br>Sacramento, CA 95814 | Stephen J. Lindley<br>California Department of Justice<br>Bureau of Firearms<br>1300 I Street<br>Sacramento, CA 95814 |

_____(BY OVERNIGHT DELIVERY) I placed each such sealed envelope, with delivery fees provided for, for collection and overnight delivery at Benbrook Law Group, PC, Sacramento, California following ordinary business practices.  I am readily familiar with the practice of Benbrook Law Group, PC for collection and processing of correspondence for overnight delivery, said practice being that in the ordinary course of business, correspondence is deposited in the facility regularly maintained by the express services carrier the same day as it is placed for collection.

XX____(BY MAIL) I placed such sealed envelope, with postage fully prepaid for first-class mail, for collection and mailing at Benbrook Law Group, PC, Sacramento, California following ordinary business practices.  I am readily familiar with the practice of Benbrook Law Group, PC for collection and processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for collection.

_____(PERSONAL SERVICE)  by sending a true copy thereof in an envelope addressed as indicated above, and by then sealing said envelope(s) and giving the same to a messenger for personal delivery.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Dated: November 17, 2014                 /s/ *Kelly McConnen*_____
                                                           Kelly McConnen