1  BENBROOK LAW GROUP, PC
   BRADLEY A. BENBROOK (SBN 177786)
2  STEPHEN M. DUVERNAY (SBN 250957)
   400 Capitol Mall, Suite 1610
3  Sacramento, CA  95814
   Telephone: (916) 447-4900
4  Facsimile:  (916) 447-4904
   brad@benbrooklawgroup.com
5  steve@benbrooklawgroup.com

6
   EUGENE VOLOKH (SBN 194464)
7  UCLA School of Law
   405 Hilgard Ave.
8  Los Angeles, CA  90095
   Telephone: (310) 206-3926
9  Facsimile: (310) 206-7010
   volokh@law.ucla.edu
10

11  Attorneys for Plaintiffs

12                    **UNITED STATES DISTRICT COURT**

13                   **EASTERN DISTRICT OF CALIFORNIA**

14

15

16  TRACY RIFLE AND PISTOL LLC;          Case No.:  2:14-cv-02626-TLN-DB
    MICHAEL BARYLA; TEN PERCENT
17  FIREARMS; WESLEY MORRIS;             **COMPENDIUM OF EVIDENTIARY**
    SACRAMENTO BLACK RIFLE, INC.;        **DOCUMENTS IN SUPPORT OF**
18  ROBERT ADAMS; PRK ARMS, INC.;        **PLAINTIFFS' MOTION FOR SUMMARY**
    JEFFREY MULLEN; IMBERT & SMITHERS,   **JUDGMENT**
19  INC.; and ALEX ROLSKY,
                                         Hearing Date: January 12, 2017
20                Plaintiffs,            Time: 2:00 p.m.
                                         Courtroom: 2
21        v.                             Judge: Troy L. Nunley

22  KAMALA D. HARRIS, in her official capacity    Action filed Nov. 10, 2014
    as Attorney General of California; and
23  STEPHEN J. LINDLEY, in his official capacity
    as Chief of the California Department of Justice
24  Bureau of Firearms,

25                Defendants.

26

27

28

Pursuant to Local Rule 260(a), Plaintiffs Tracy Rifle and Pistol LLC, Michael Baryla, Ten Percent Firearms, Wesley Morris, Sacramento Black Rifle, Inc., Robert Adams, PRK Arms, Inc., Jeffrey Mullen, Imbert & Smithers, Inc., and Alex Rolsky submit the following compendium of evidentiary documents in support of their Motion for Summary Judgment.

1.      ECF No. 9, Declaration of Michael Baryla in support of Motion for Preliminary Injunction.  A true and correct copy of this document, as electronically filed with the Court on November 17, 2014, is attached as Exhibit A.

2.      ECF No. 6, Declaration of Wesley Morris in support of Motion for Preliminary Injunction.  A true and correct copy of this document, as electronically filed with the Court on November 17, 2014, is attached as Exhibit B.

3.      ECF No. 10, Declaration of Robert Adams in support of Motion for Preliminary Injunction.  A true and correct copy of this document, as electronically filed with the Court on November 17, 2014, is attached as Exhibit C.

4.      ECF No. 8, Declaration of Dean Rowden in support of Motion for Preliminary Injunction.  A true and correct copy of this document, as electronically filed with the Court on November 17, 2014, is attached as Exhibit D.

5.      ECF No. 7, Declaration of Jeffrey Mullen in support of Motion for Preliminary Injunction.  A true and correct copy of this document, as electronically filed with the Court on November 17, 2014, is attached as Exhibit E.

6.      Declaration of Alex Rolsky in support of Motion for Summary Judgment.  A true and correct copy of this document, as concurrently filed with the Court on December 5, 2016, is attached as Exhibit F.

7.      ECF No. 43-1, Expert Witness Report of Professor Gregory T. Gundlach.  A true and correct copy of excerpts from this document, as electronically filed with the Court on July 26, 2016, is attached as Exhibit G.

8.      Deposition of Gregory T. Gundlach, J.D., Ph.D.  A true and correct copy of excerpts from the transcript of Professor Gundlach, taken on October 28, 2016, is attached as Exhibit H.

9.      ECF No. 43-2, Expert Witness Report of Professor J. John Mann.  A true and correct copy of excerpts from this document, as electronically filed with the Court on July 26, 2016, is attached as Exhibit I.

10.     Deposition of J. John Mann, M.D.  A true and correct copy of excerpts from the transcript of Professor Gundlach, taken on October 31, 2016, is attached as Exhibit J.


Dated:  December 5, 2016                    BENBROOK LAW GROUP, PC


                                           By s/Stephen M. Duvernay
                                              STEPHEN M. DUVERNAY
                                              Attorneys for Plaintiffs

**COMPENDIUM OF EVIDENTIARY DOCUMENTS
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**Exhibit A**

BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
400 Capitol Mall, Suite 1610
Sacramento, CA 95814
Telephone: (916) 447-4900
Facsimile: (916) 447-4904

EUGENE VOLOKH (SBN 194464)
UCLA School of Law
405 Hilgard Ave.
Los Angeles, CA 90095
Telephone: (310) 206-3926
Facsimile: (310) 206-7010
volokh@law.ucla.edu

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY RIFLE AND PISTOL LLC; MICHAEL BARYLA; TEN PERCENT FIREARMS; WESLEY MORRIS; SACRAMENTO BLACK RIFLE, INC.; ROBERT ADAMS; PRK ARMS, INC.; and JEFFREY MULLEN,<br><br>     Plaintiffs,<br><br>  v.<br><br>KAMALA D. HARRIS, in her official capacity as Attorney General of California; and STEPHEN J. LINDLEY, in his official capacity as Chief of the California Department of Justice Bureau of Firearms,<br><br>     Defendants. | Case No.: 2:14-cv-02626-TLN-DAD<br><br>**DECLARATION OF MICHAEL BARYLA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: January 29, 2015<br>Hearing Time: 2:00 p.m.<br>Judge: Hon. Troy L. Nunley<br>Courtroom 2, 15th Floor<br>Action Filed: Nov. 10, 2014 |

I, Michael Baryla, declare:

1.      I have personal knowledge of the matters set forth in this declaration, and would be able to testify competently to these facts if called as a witness.

2.      I am the proprietor of Tracy Rifle and Pistol ("Tracy Rifle"), a firearms dealership in Tracy, California. Tracy Rifle is listed as a firearms dealer in the California Department of Justice's Centralized List of Firearms Dealers, and I am the individual licensee associated with the dealership.

3.      I started Tracy Rifle with the goal of becoming the preeminent firearms dealer in the Central Valley. I am proud of the products and services Tracy Rifle provides. Access to firearms, specifically handguns, is a constitutionally protected right, and advertising is a key element to any successful business, including mine. The ban on handgun advertising not only hinders licensed firearms dealers from conducting legal business, but also infringes our First Amendment rights. I believe this law is a clear violation of two principles enumerated in the Bill of Rights and should be struck down immediately.

4.      On September 12, 2014, the DOJ Bureau of Firearms inspected Tracy Rifle. At the time of the inspection, the building's exterior windows were covered with large vinyl decals depicting four firearms—three handguns and a rifle. The handguns depicted are a Nighthawk Customs GRP Recon .45 ACP, a Smith and Wesson 642 .38 Special, and a Glock 42 .380 ACP. The rifle is a Larue Tactical PredatOBR 5.56. As of the date of the inspection, each of these firearms could be lawfully purchased in California, and Tracy Rifle regularly carries each of the four guns depicted in the windows. A picture depicting the exterior of the store as it appeared on the date of the inspection is attached as Exhibit 1.

5.      The Bureau of Firearms issued a "Notification of Inspection Findings" citing the dealership and me for violating Section 26820 because of the handgun decals, and requiring us to remove the handgun decals by February 11, 2015. A copy of the Notification is attached as Exhibit 2.

6.      If Section 26820 is not enjoined, I am forced to choose between sacrificing my First Amendment rights or losing my property and livelihood, since the DOJ may revoke Tracy Rifle's

dealer's license for unremedied violations of the Penal Code. By demanding Tracy Rifle to remove the sign, our First Amendment rights have been directly infringed by the enforcement of the handgun advertising ban, and our speech continues to be chilled by the statute. But for Section 26820, I would continue to display the decals and would display additional truthful, nonmisleading material advertising the sale of handguns at the dealership.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed November 13, 2014 in California.

MICHAEL BARYLA

**PROOF OF SERVICE**
**Case No.** 2:14-cv-02626-TLN-DAD

The undersigned hereby certifies as follows:

I am an employee of the law firm of Benbrook Law Group, PC, 400 Capitol Mall, Suite 1610, Sacramento, California. I am over 18 years of age and am not a party to the within action.

On November 17, 2014 I served a true copy of the following document:

**DECLARATION OF MICHAEL BARYLA IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

on the party(ies) in this action by placing a true copy thereof in a sealed envelope(s), addressed as follows:

| | |
|---|---|
| Kamala D. Harris<br>Attorney General of California<br>1300 I Street<br>Sacramento, CA 95814 | Stephen J. Lindley<br>California Department of Justice<br>Bureau of Firearms<br>1300 I Street<br>Sacramento, CA 95814 |

_____(BY OVERNIGHT DELIVERY) I placed each such sealed envelope, with delivery fees provided for, for collection and overnight delivery at Benbrook Law Group, PC, Sacramento, California following ordinary business practices. I am readily familiar with the practice of Benbrook Law Group, PC for collection and processing of correspondence for overnight delivery, said practice being that in the ordinary course of business, correspondence is deposited in the facility regularly maintained by the express services carrier the same day as it is placed for collection.

XX____(BY MAIL) I placed such sealed envelope, with postage fully prepaid for first-class mail, for collection and mailing at Benbrook Law Group, PC, Sacramento, California following ordinary business practices. I am readily familiar with the practice of Benbrook Law Group, PC for collection and processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for collection.

_____(PERSONAL SERVICE) by sending a true copy thereof in an envelope addressed as indicated above, and by then sealing said envelope(s) and giving the same to a messenger for personal delivery.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Dated: November 17, 2014           /s/ *Kelly McConnen*_____
                                                     Kelly McConnen

EXHIBIT 1





EXHIBIT 2



State of California
Case 2:14-cv-02626-TLN-DB Department of Justice Filed 11/17/14 9166 2209 Page 2 of 2
Bureau of Firearms
P.O. Box 160487 • Sacramento, CA • 95816-0487
Telephone: (916) 227-7527 • Fax (916) 227-7480

## FIREARMS DEALER NOTIFICATION OF INSPECTION FINDINGS

| Business Name: Tracy Rifle & Pistol, LLC. | City: Tracy | County Code: 39 | Field Representative: B. Berthold / R. Lewis | Date: 9/18/14 |
| Licensee(s): Michael Baryla | CFD No: 214647 | Inspection No: 1 | Contact Person(s): Michael Baryla | Follow up Recommended: 7/11/15 |

☐ NO VIOLATIONS WERE REVEALED AT INSPECTION - NO FURTHER ACTION IS NECESSARY BY THE FIREARMS DEALERSHIP

☒ YOU ARE HEREBY NOTIFIED OF THE FOLLOWING VIOLATION(S) AND ACTION NECESSARY TO COMPLY WITH STATE LAW(S)
THIS IS A WARNING. Violation(s) of California Penal Code sections are summarized below. This notification is issued to you in an effort to secure your cooperation in future compliance and to ensure public safety. The Department of Justice Bureau of Firearms believes that a firearms dealer will comply with these laws when notified of the importance of strict compliance. FUTURE FAILURE OF COMPLIANCE MAY RESULT IN ADMINISTRATIVE AND/OR CRIMINAL ACTION.

| VIOLATION Penal Code Section | SUMMARY OF VIOLATION | CORRECTIVE ACTION TO BE TAKEN | DATE TO BE COMPLETED |
|---|---|---|---|
| Redacted | | | / / |
| 26820 | Pistol advertisements on windows | Remove | 7/11/15 |
| | | | / / |
| Redacted | | | |

COMMENTS: _____

ALL VIOLATIONS NOTED ABOVE WERE DISCUSSED. I HAVE RECEIVED A COPY OF THIS REPORT AND WILL TAKE STEPS TO COMPLY WITH THE ABOVE PENAL CODE SECTIONS WITHIN 30 DAYS UNLESS OTHERWISE INDICATED.

LICENSEE/MGR/EMPLOYEE: _____ (SIGNATURE) _____ (DATE) 9/18/14

INSPECTED BY: Rene Fews (DEPARTMENT OF JUSTICE FIELD REPRESENTATIVE) _____ (DATE) 9/18/14

DISTRIBUTION: ORIGINAL - Department of Justice    YELLOW - Firearms Dealership
BOF 08-022 (Rev. 04/2012)



**COMPENDIUM OF EVIDENTIARY DOCUMENTS
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**Exhibit B**

BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
400 Capitol Mall, Suite 1610
Sacramento, CA 95814
Telephone: (916) 447-4900
Facsimile: (916) 447-4904

EUGENE VOLOKH (SBN 194464)
UCLA School of Law
405 Hilgard Ave.
Los Angeles, CA 90095
Telephone: (310) 206-3926
Facsimile: (310) 206-7010
volokh@law.ucla.edu

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRACY RIFLE AND PISTOL LLC; MICHAEL BARYLA; TEN PERCENT FIREARMS; WESLEY MORRIS; SACRAMENTO BLACK RIFLE, INC.; ROBERT ADAMS; PRK ARMS, INC.; and JEFFREY MULLEN,<br><br>    Plaintiffs,<br><br>  v.<br><br>KAMALA D. HARRIS, in her official capacity as Attorney General of California; and STEPHEN J. LINDLEY, in his official capacity as Chief of the California Department of Justice Bureau of Firearms,<br><br>    Defendants. | Case No.: 2:14-cv-02626-TLN-DAD<br><br>**DECLARATION OF WESLEY MORRIS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: January 29, 2015<br>Hearing Time: 2:00 p.m.<br>Judge: Hon. Troy L. Nunley<br>Courtroom 2, 15th Floor<br>Action Filed: Nov. 10, 2014 |

I, Wesley Morris, declare:

1.     I have personal knowledge of the matters set forth in this declaration, and would be able to testify competently to these facts if called as a witness.

2.     I am an owner of Ten Percent Firearms, a firearms dealership in Taft, California. Ten Percent Firearms is listed as a firearms dealer in the California Department of Justice's Centralized List of Firearms Dealers, and I am an individual licensee associated with the dealership.

3.     Dean Rowden and I founded Ten Percent Firearms in 2005 in a town that needed a firearms store. The store is a family business that takes pride in providing excellent customer service to the citizens of Taft, and through our website, all of California. Ten Percent Firearms has always sought to provide the customer what they want and we fight to be on the cutting edge of product lines and availability.

4.     On or about February 23, 2010, the DOJ Bureau of Firearms inspected Ten Percent Firearms. Displayed in the dealership's parking lot was a metal sign shaped like a revolver. The DOJ inspector informed the dealership that the sign violated the handgun advertising restriction, and that Ten Percent Firearms could be "shut down" for it. One of our employees immediately removed the sign while the inspector was still on the premises. Nevertheless, the Bureau of Firearms issued a "Notification of Inspection Findings" citing me and the dealership for violating the handgun advertising ban. A picture of the sign is attached as Exhibit 1 and a copy of the Notification is attached as Exhibit 2.

5.     By requiring Ten Percent Firearms to remove the sign, our First Amendment rights have been directly infringed by the enforcement of the handgun advertising ban, and our speech continues to be chilled by the statute. But for Section 26820, we would display additional truthful, nonmisleading material advertising the sale of handguns at the dealership.

6.     The essence of providing this service to our community is we must be able to advertise and advertise effectively. We cannot openly advertise our diverse line of handguns along one of the busiest traffic corridors in the west side of the county because of the restrictive prohibition of openly advertising handguns found in the California Penal Code. This obviously

1 | harms our ability to attract customers.

2 | I declare under penalty of perjury under the laws of the State of California that the

3 | foregoing is true and correct. Executed November 11, 2014 in California.

5 | WESLEY MORRIS

**PROOF OF SERVICE**
**Case No.** 2:14-cv-02626-TLN-DAD

The undersigned hereby certifies as follows:

I am an employee of the law firm of Benbrook Law Group, PC, 400 Capitol Mall, Suite 1610, Sacramento, California. I am over 18 years of age and am not a party to the within action.

On November 17, 2014 I served a true copy of the following document:

**DECLARATION OF WESLEY MORRIS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

on the party(ies) in this action by placing a true copy thereof in a sealed envelope(s), addressed as follows:

| | |
|---|---|
| Kamala D. Harris<br>Attorney General of California<br>1300 I Street<br>Sacramento, CA 95814 | Stephen J. Lindley<br>California Department of Justice<br>Bureau of Firearms<br>1300 I Street<br>Sacramento, CA 95814 |

_____(BY OVERNIGHT DELIVERY) I placed each such sealed envelope, with delivery fees provided for, for collection and overnight delivery at Benbrook Law Group, PC, Sacramento, California following ordinary business practices. I am readily familiar with the practice of Benbrook Law Group, PC for collection and processing of correspondence for overnight delivery, said practice being that in the ordinary course of business, correspondence is deposited in the facility regularly maintained by the express services carrier the same day as it is placed for collection.

XX_____(BY MAIL) I placed such sealed envelope, with postage fully prepaid for first-class mail, for collection and mailing at Benbrook Law Group, PC, Sacramento, California following ordinary business practices. I am readily familiar with the practice of Benbrook Law Group, PC for collection and processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for collection.

_____(PERSONAL SERVICE) by sending a true copy thereof in an envelope addressed as indicated above, and by then sealing said envelope(s) and giving the same to a messenger for personal delivery.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Dated: November 17, 2014          _/s/ Kelly McConnen_____
                                                    Kelly McConnen

EXHIBIT 1



EXHIBIT 2

ps 192

**Department of Justice**
**Bureau of Firearms**
P.O. Box 160487  Sacramento, CA  95816-0487
Telephone: (916) 263-4887  Fax: (916) 274-5992

## FIREARMS DEALER NOTIFICATION OF INSPECTION FINDINGS

| Business Name: TEN PERCENT FIREARMS | City: TAFT | CC: 15 | Field Representative: BOB BERTHOLD | Date: FEB 23, 2010 |
|---|---|---|---|---|
| Licensee(s): WESLEY MORRIS | CFD#: 2.064 | Inspection# 2 Follow-up: | Contact Person(s): WESLEY MORRIS/BECKY SHARP | Follow-up Required: YES |

☐ NO VIOLATIONS WERE REVEALED AT INSPECTION - NO FURTHER ACTION IS NECESSARY BY THE FIREARMS DEALERSHIP

☑ YOU ARE HEREBY NOTIFIED OF THE FOLLOWING VIOLATION(S) AND ACTION NECESSARY TO COMPLY WITH STATE LAW(S):

THIS IS A WARNING. *Violation(s) of California Penal Code sections have been revealed. This notification is issued to you in an effort to secure your cooperation in future compliance and to ensure public safety. The Department of Justice Bureau of Firearms believes that a firearms dealer will comply with these laws when notified of the importance of strict compliance.*

FUTURE FAILURE OF COMPLIANCE MAY RESULT IN ADMINISTRATIVE AND/OR CRIMINAL ACTION.

| VIOLATION (PC Section) | SUMMARY OF VIOLATION | CORRECTIVE ACTION TO BE TAKEN | DATE TO BE COMPLETED |
|---|---|---|---|
| | F91 PLACING OF REVOLVER WAS DISPLAYED WHEN INSPECTION | | |
| | BEGAN, TAKEN DOWN DURING INSPECTION. PER 12071 (1)(14) | | |
| | HANDGUN OR AD CANNOT BE DISPLAYED WHEN FROM OUTSIDE. | | |
| Redacted | | | |

**COMMENTS:**

ALL VIOLATIONS NOTED ABOVE WERE DISCUSSED. I HAVE RECEIVED A COPY OF THIS REPORT AND WILL TAKE STEPS TO COMPLY WITH THE ABOVE PENAL CODE SECTIONS WITHIN 30 DAYS UNLESS OTHERWISE INDICATED.

LICENSEE/MGR/EMPLOYEE: _____ (SIGNATURE)  2-23-10 (DATE)   INSPECTED BY: _____ (DEPARTMENT OF JUSTICE FIELD REPRESENTATIVE)  02/23/10 (DATE)

DISTRIBUTION: ORIGINAL–Department of Justice   YELLOW–Firearms Dealership
BOF 08-022 (Rev 5/2008)

OSP  08  108368




**COMPENDIUM OF EVIDENTIARY DOCUMENTS
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**Exhibit C**

1  BENBROOK LAW GROUP, PC
   BRADLEY A. BENBROOK (SBN 177786)
2  STEPHEN M. DUVERNAY (SBN 250957)
   400 Capitol Mall, Suite 1610
3  Sacramento, CA 95814
   Telephone: (916) 447-4900
4  Facsimile: (916) 447-4904

5

6  EUGENE VOLOKH (SBN 194464)
   UCLA School of Law
7  405 Hilgard Ave.
   Los Angeles, CA 90095
   Telephone: (310) 206-3926
8  Facsimile: (310) 206-7010
   volokh@law.ucla.edu
9

10  Attorneys for Plaintiffs

11                  **UNITED STATES DISTRICT COURT**

12                  **EASTERN DISTRICT OF CALIFORNIA**

13

14

15  TRACY RIFLE AND PISTOL LLC;          Case No.: 2:14-cv-02626-TLN-DAD
    MICHAEL BARYLA; TEN PERCENT
16  FIREARMS; WESLEY MORRIS;
    SACRAMENTO BLACK RIFLE, INC.;        **DECLARATION OF ROBERT ADAMS IN**
17  ROBERT ADAMS; PRK ARMS, INC.; and    **SUPPORT OF MOTION FOR**
    JEFFREY MULLEN,                      **PRELIMINARY INJUNCTION**

18              Plaintiffs,              Hearing Date: January 29, 2015
                                         Hearing Time: 2:00 p.m.
19         v.                            Judge: Hon. Troy L. Nunley
                                         Courtroom 2, 15th Floor
20  KAMALA D. HARRIS, in her official capacity   Action Filed: Nov. 10, 2014
    as Attorney General of California; and
21  STEPHEN J. LINDLEY, in his official capacity
    as Chief of the California Department of Justice
22  Bureau of Firearms,

23              Defendants.

24

25

26

27

28

I, Robert Adams, declare:

1.  I have personal knowledge of the matters set forth in this declaration, and would be able to testify competently to these facts if called as a witness.

2.  I am the owner of Sacramento Black Rifle, a firearms dealership in Rocklin, California. Sacramento Black Rifle is listed as a firearms dealer in the California Department of Justice's Centralized List of Firearms Dealers, and I am an individual licensee associated with the dealership.

3.  Penal Code section 26820 hinders my business because we cannot advertise what the dealership offers for sale on my windows or on banners or signage visible from outside on our premises. Advertising is one of my largest monthly expenditures; as a firearms dealer that may lawfully sell handguns, not being able to effectively communicate, on-site, the products we sell is detrimental to my business. But for Section 26820, we would display truthful, nonmisleading material advertising the sale of handguns at the dealership.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed November 13, 2014 in California.



ROBERT ADAMS

**PROOF OF SERVICE**
Case No. 2:14-cv-02626-TLN-DAD

The undersigned hereby certifies as follows:

I am an employee of the law firm of Benbrook Law Group, PC, 400 Capitol Mall, Suite 1610, Sacramento, California. I am over 18 years of age and am not a party to the within action.

On November 17, 2014 I served a true copy of the following document:

**DECLARATION OF ROBERT ADAMS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

on the party(ies) in this action by placing a true copy thereof in a sealed envelope(s), addressed as follows:

| | |
|---|---|
| Kamala D. Harris<br>Attorney General of California<br>1300 I Street<br>Sacramento, CA 95814 | Stephen J. Lindley<br>California Department of Justice<br>Bureau of Firearms<br>1300 I Street<br>Sacramento, CA 95814 |

_____(BY OVERNIGHT DELIVERY) I placed each such sealed envelope, with delivery fees provided for, for collection and overnight delivery at Benbrook Law Group, PC, Sacramento, California following ordinary business practices. I am readily familiar with the practice of Benbrook Law Group, PC for collection and processing of correspondence for overnight delivery, said practice being that in the ordinary course of business, correspondence is deposited in the facility regularly maintained by the express services carrier the same day as it is placed for collection.

XX_____(BY MAIL) I placed such sealed envelope, with postage fully prepaid for first-class mail, for collection and mailing at Benbrook Law Group, PC, Sacramento, California following ordinary business practices. I am readily familiar with the practice of Benbrook Law Group, PC for collection and processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for collection.

_____(PERSONAL SERVICE) by sending a true copy thereof in an envelope addressed as indicated above, and by then sealing said envelope(s) and giving the same to a messenger for personal delivery.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Dated: November 17, 2014          _/s/ Kelly McConnen_____
                                  Kelly McConnen

**COMPENDIUM OF EVIDENTIARY DOCUMENTS**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**Exhibit D**

1  BENBROOK LAW GROUP, PC
   BRADLEY A. BENBROOK (SBN 177786)
2  STEPHEN M. DUVERNAY (SBN 250957)
   400 Capitol Mall, Suite 1610
3  Sacramento, CA  95814
   Telephone: (916) 447-4900
4  Facsimile:  (916) 447-4904

5

6  EUGENE VOLOKH (SBN 194464)
   UCLA School of Law
7  405 Hilgard Ave.
   Los Angeles, CA  90095
8  Telephone: (310) 206-3926
   Facsimile: (310) 206-7010
9  volokh@law.ucla.edu

10 Attorneys for Plaintiffs

11                  **UNITED STATES DISTRICT COURT**

12                  **EASTERN DISTRICT OF CALIFORNIA**

13

14

15 TRACY RIFLE AND PISTOL LLC;        Case No.:  2:14-cv-02626-TLN-DAD
   MICHAEL BARYLA; TEN PERCENT
16 FIREARMS; WESLEY MORRIS;           **DECLARATION OF DEAN ROWDEN IN**
   SACRAMENTO BLACK RIFLE, INC.;      **SUPPORT OF MOTION FOR**
17 ROBERT ADAMS; PRK ARMS, INC.; and  **PRELIMINARY INJUNCTION**
   JEFFREY MULLEN,
18                                     Hearing Date:  January 29, 2015
                Plaintiffs,            Hearing Time: 2:00 p.m.
19                                     Judge:   Hon. Troy L. Nunley
        v.                             Courtroom 2, 15th Floor
20                                     Action Filed: Nov. 10, 2014
   KAMALA D. HARRIS, in her official capacity
21 as Attorney General of California; and
   STEPHEN J. LINDLEY, in his official capacity
22 as Chief of the California Department of Justice
   Bureau of Firearms,
23
                Defendants.
24

25

26

27

28

1    I, Dean Rowden, declare:

2    1.    I have personal knowledge of the matters set forth in this declaration, and would be

3    able to testify competently to these facts if called as a witness.

4    2.    I am the Chief Financial Officer of Ten Percent Firearms.

5    3.    I was working at the dealership when the DOJ Bureau of Firearms inspected Ten

6    Percent Firearms in February 2010. At the time of the inspection, there was a 3-foot by 2-foot

7    three-dimensional metal sign shaped like a revolver, hung approximately 9 feet off the ground on a

8    post in the dealership's parking lot.

9    4.    Bob Berthold, the DOJ inspector, informed me that the sign was a violation of the

10   penal code and that the business could be shut down because of it. Mr. Berthold also said that he

11   would not cite the dealership for the violation if we removed the sign before he completed the

12   inspection, so I directed one of our employees to remove the sign. Even though we promptly

13   removed the sign, the Mr. Berthold cited us for violating the handgun advertising ban.

14   I declare under penalty of perjury under the laws of the State of California that the

15   foregoing is true and correct. Executed November 11, 2014 in California.

_____
DEAN ROWDEN

**PROOF OF SERVICE**
**Case No.** 2:14-cv-02626-TLN-DAD

The undersigned hereby certifies as follows:

I am an employee of the law firm of Benbrook Law Group, PC, 400 Capitol Mall, Suite 1610, Sacramento, California.  I am over 18 years of age and am not a party to the within action.

On November 17, 2014 I served a true copy of the following document:

**DECLARATION OF DEAN ROWDEN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

on the party(ies) in this action by placing a true copy thereof in a sealed envelope(s), addressed as follows:

| | |
|---|---|
| Kamala D. Harris<br>Attorney General of California<br>1300 I Street<br>Sacramento, CA 95814 | Stephen J. Lindley<br>California Department of Justice<br>Bureau of Firearms<br>1300 I Street<br>Sacramento, CA 95814 |

_____(BY OVERNIGHT DELIVERY) I placed each such sealed envelope, with delivery fees provided for, for collection and overnight delivery at Benbrook Law Group, PC, Sacramento, California following ordinary business practices.  I am readily familiar with the practice of Benbrook Law Group, PC for collection and processing of correspondence for overnight delivery, said practice being that in the ordinary course of business, correspondence is deposited in the facility regularly maintained by the express services carrier the same day as it is placed for collection.

XX____(BY MAIL) I placed such sealed envelope, with postage fully prepaid for first-class mail, for collection and mailing at Benbrook Law Group, PC, Sacramento, California following ordinary business practices.  I am readily familiar with the practice of Benbrook Law Group, PC for collection and processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for collection.

_____(PERSONAL SERVICE)  by sending a true copy thereof in an envelope addressed as indicated above, and by then sealing said envelope(s) and giving the same to a messenger for personal delivery.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Dated: November 17, 2014          /s/ *Kelly McConnen*_____
                                                   Kelly McConnen

**COMPENDIUM OF EVIDENTIARY DOCUMENTS
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**Exhibit E**

1  BENBROOK LAW GROUP, PC
   BRADLEY A. BENBROOK (SBN 177786)
2  STEPHEN M. DUVERNAY (SBN 250957)
   400 Capitol Mall, Suite 1610
3  Sacramento, CA  95814
   Telephone: (916) 447-4900
4  Facsimile:  (916) 447-4904

5  EUGENE VOLOKH (SBN 194464)*
   UCLA School of Law
6  405 Hilgard Ave.
   Los Angeles, CA  90095
7  Telephone: (310) 206-3926
   Facsimile: (310) 206-7010
8  volokh@law.ucla.edu
   *Application for admission submitted
9
   Attorney for Plaintiffs
10

11

12                    UNITED STATES DISTRICT COURT

13                    EASTERN DISTRICT OF CALIFORNIA

14

15

16  TRACY RIFLE AND PISTOL LLC;           Case No.:  2:14-cv-02626-TLN-DAD
    MICHAEL BARYLA; TEN PERCENT
17  FIREARMS; WESLEY MORRIS;
    SACRAMENTO BLACK RIFLE, INC.;         **DECLARATION OF JEFFREY MULLEN**
18  ROBERT ADAMS; PRK ARMS, INC.; and     **IN SUPPORT OF MOTION FOR**
    JEFFREY MULLEN,                       **PRELIMINARY INJUNCTION**
19
                      Plaintiffs,         Hearing Date:  January 29, 2015
20                                         Hearing Time: 2:00 p.m.
             v.                            Judge:   Hon. Troy L. Nunley
21                                         Courtroom 2, 15th Floor
    KAMALA D. HARRIS, in her official capacity  Action Filed: Nov. 10, 2014
22  as Attorney General of California; and
    STEPHEN J. LINDLEY, in his official capacity
23  as Chief of the California Department of Justice
    Bureau of Firearms,
24
                      Defendants.
25

26

27

28

I, Jeffrey Mullen, declare:

1.   I have personal knowledge of the matters set forth in this declaration, and would be able to testify competently to these facts if called as a witness.

2.   I am the President and CEO of PRK Arms, Inc., which operates firearms dealerships in Fresno, Visalia, and Turlock, California.  PRK Arms is listed as a firearms dealer in the California Department of Justice's Centralized List of Firearms Dealers, and I am an individual licensee associated with the dealership.

3.   PRK Arms Inc. specializes in sales of handguns to law abiding citizens as a significant part of our business and we wish to issue truthful, non-misleading advertising to the public and engage in speech about constitutionally protected firearms. We pay thousands in rent between our three stores and are unable to advertise our primary source of business.

4.   But for Section 26820, we would display truthful, non-misleading material advertising the sale of handguns at the dealerships.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed November 11, 2014 in California.

JEFFREY MULLEN

**PROOF OF SERVICE**
Case No. 2:14-cv-02626-TLN-DAD

The undersigned hereby certifies as follows:

     I am an employee of the law firm of Benbrook Law Group, PC, 400 Capitol Mall, Suite 1610, Sacramento, California.  I am over 18 years of age and am not a party to the within action.

On November 17, 2014 I served a true copy of the following document:

**DECLARATION OF JEFFREY MULLEN IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

on the party(ies) in this action by placing a true copy thereof in a sealed envelope(s), addressed as follows:

| | |
|---|---|
| Kamala D. Harris<br>Attorney General of California<br>1300 I Street<br>Sacramento, CA 95814 | Stephen J. Lindley<br>California Department of Justice<br>Bureau of Firearms<br>1300 I Street<br>Sacramento, CA 95814 |

_____(BY OVERNIGHT DELIVERY) I placed each such sealed envelope, with delivery fees provided for, for collection and overnight delivery at Benbrook Law Group, PC, Sacramento, California following ordinary business practices.  I am readily familiar with the practice of Benbrook Law Group, PC for collection and processing of correspondence for overnight delivery, said practice being that in the ordinary course of business, correspondence is deposited in the facility regularly maintained by the express services carrier the same day as it is placed for collection.

XX___(BY MAIL) I placed such sealed envelope, with postage fully prepaid for first-class mail, for collection and mailing at Benbrook Law Group, PC, Sacramento, California following ordinary business practices.  I am readily familiar with the practice of Benbrook Law Group, PC for collection and processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for collection.

_____(PERSONAL SERVICE)  by sending a true copy thereof in an envelope addressed as indicated above, and by then sealing said envelope(s) and giving the same to a messenger for personal delivery.

     I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Dated: November 17, 2014          _/s/ Kelly McConnen_____
                          Kelly McConnen

**COMPENDIUM OF EVIDENTIARY DOCUMENTS
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**Exhibit F**

1  BENBROOK LAW GROUP, PC
   BRADLEY A. BENBROOK (SBN 177786)
2  STEPHEN M. DUVERNAY (SBN 250957)
   400 Capitol Mall, Suite 1610
3  Sacramento, CA  95814
   Telephone: (916) 447-4900
4  Facsimile:  (916) 447-4904
   brad@benbrooklawgroup.com
5  steve@benbrooklawgroup.com

6

7  EUGENE VOLOKH (SBN 194464)
   UCLA School of Law
8  405 Hilgard Ave.
   Los Angeles, CA  90095
9  Telephone: (310) 206-3926
   Facsimile: (310) 206-7010
   volokh@law.ucla.edu
10

11  Attorneys for Plaintiffs

12                  UNITED STATES DISTRICT COURT

13                  EASTERN DISTRICT OF CALIFORNIA

14

15

16  TRACY RIFLE AND PISTOL LLC;          Case No.:  2:14-cv-02626-TLN-DB
    MICHAEL BARYLA; TEN PERCENT
17  FIREARMS; WESLEY MORRIS;
    SACRAMENTO BLACK RIFLE, INC.;        DECLARATION OF ALEX ROLSKY IN
18  ROBERT ADAMS; PRK ARMS, INC.;        SUPPORT OF PLAINTIFFS' MOTION
    JEFFREY MULLEN; IMBERT & SMITHERS,   FOR SUMMARY JUDGMENT
    INC.; and ALEX ROLSKY,
19                                       Hearing Date: January 12, 2017
                     Plaintiffs,         Time: 2:00 p.m.
20                                       Courtroom: 2
                                         Judge: Troy L. Nunley
21           v.

22  KAMALA D. HARRIS, in her official capacity    Action filed Nov. 10, 2014
    as Attorney General of California; and
23  STEPHEN J. LINDLEY, in his official capacity
    as Chief of the California Department of Justice
24  Bureau of Firearms,

25                   Defendants.

26

27

28

                      DECL. OF ALEX ROLSKY ISO MOTION FOR SUMMARY JUDGMENT

I, Alex Rolsky, declare:

1.      I have personal knowledge of the matters set forth in this declaration, and would be able to testify competently to these facts if called as a witness.

2.      I am the proprietor of Imbert & Smithers, a firearms dealership in San Carlos, California. Imbert & Smithers is listed as a firearms dealer in the California Department of Justice's Centralized List of Firearms Dealers, and I am the individual licensee associated with the dealership.

3.      On January 28, 2015, the DOJ Bureau of Firearms inspected Imbert & Smithers. At the time of the inspection, the building's exterior displayed a sign featuring the dealership's logo, which incorporates the outline of a single-action revolver. A picture depicting the dealership's logo as it appeared on the date of the inspection is attached as Exhibit 1.

4.      The Bureau of Firearms issued a "Notification of Inspection Findings" citing Imbert & Smithers and Rolsky for violating Section 26820, and requiring them to take corrective action by July 28, 2015.

5.      By demanding that Imbert & Smithers remove or modify the sign, our First Amendment rights have been directly infringed by the enforcement of the handgun advertising ban, and our speech continues to be chilled by the statute. But for Section 26820, I would continue to display the dealership's logo, and would display additional truthful, nonmisleading material advertising the sale of handguns at the dealership.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed November 29, 2016 in California.

ALEX ROLSKY



**Rolsky Declaration Exhibit 1**

**COMPENDIUM OF EVIDENTIARY DOCUMENTS
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**Exhibit G**

1   KAMALA D. HARRIS, State Bar No. 146672
    Attorney General of California
2   TAMAR PACHTER, State Bar No. 146083
    Supervising Deputy Attorney General
3   NELSON R. RICHARDS, State Bar No. 246996
    Deputy Attorney General
4     2550 Mariposa Mall, Room 5090
      Fresno, CA  93721
5     Telephone:  (559) 477-1688
      Fax:  (559) 445-5106
6     E-mail:  Nelson.Richards@doj.ca.gov
    *Attorneys for Defendants*

7

8                   IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

13   **TRACY RIFLE AND PISTOL LLC et al.,**        2:14-cv-02626-TLN-KJN (TEMP)

                              Plaintiffs,
14

15            v.                                    **EXPERT WITNESS REPORT OF**
                                                    **PROFESSOR GREGORY T.**
16   **KAMALA D. HARRIS, in her official**         **GUNDLACH**
     **capacity as Attorney General of California,**
17   **et al.,**

18                            Defendants.

19

20

21

22

23

24

25

26

27

28

1  conclude that the display of a handgun or imitation handgun or placard advertising the sale or

2  other transfer thereof, in any part of the premises of a California licensed handgun seller, that can

3  be readily seen from the outside, contributes in a positive way to the impulsive purchase of

4  handguns. To the extent I find the above reasonable, I also have been asked to opine if it is

5  reasonable to conclude that precluding such materials contributes in a negative way to the

6  impulsive purchase of handguns.

7  **SUMMARY OF OPINIONS**

8      10.    Based on accepted knowledge of marketing practice and review of relevant research

9  in the field, it is my opinion that it is reasonable to conclude that the display of a handgun or

10  imitation handgun or placard advertising the sale or other transfer thereof, in any part of the

11  premises of a California licensed handgun seller, that can be readily seen from the outside,

12  contributes in a positive way to the impulsive purchase of handguns. Moreover, it is my opinion

13  that it is reasonable to conclude that the preclusion of such marketing materials, as is called for

14  and are described in Section 26820, contributes in a negative way to the impulsive purchase of

15  handguns.

16      11.    Consequently, it is my further opinion that should Section 26820 be invalidated, and

17  as a result, should marketing materials that are subject Section 26820, including the types of

18  graphic decals displayed by Tracy Rifle & Pistol LLC[6] and the types of metal signage posted by

19  Ten Percent Firearms,[7] become more commonplace in the sale of handguns, it is reasonable to

20  conclude that the consequence will be a positive impact on the impulsive purchase of handguns.

21  **ANALYSIS**

22      12.    As is explained in this report, to induce consumers to purchase their goods and

23  services, marketers including retailers engage in marketing. As a business practice, marketing

24

---

25       [6] Declaration of Michael Baryla in Support of Motion for Preliminary Injunction, *Tracy Rifle & Pistol LLC v. Harris* (E.D. Cal. Case No. 2:14-cv-02626-TLN-KJN (TEMP)) (November

26  17, 2014) (Exhibit 1).

27       [7] Declaration of Wesley Morris in Support of Motion for Preliminary Injunction, *Tracy Rifle & Pistol LLC v. Harris* (E.D. Cal. Case No. 2:14-cv-02626-TLN-KJN (TEMP)) (November 17, 2014) (Exhibit 1).

28

4

organization has conducted research on the impulse purchase of firearms for range and retailer members,[72] commissioned profiles related to questions surrounding the impulse purchase of firearms by certain consumers,[73] and strategized to help those who wish to market to those who would (and would not) purchase a firearm on impulse.[74] The reports of these studies and their results have been published in the retail trade organization's official publication for members of the trade.[75] Consumers themselves discuss purchasing firearms on impulse.[76]

### D. Form of the Impulse Buying Temptation

34. Impulse buying is distinguished from other forms of buying based on the fact that it is primarily driven by strong hedonic temptations of immediate satisfaction and improved mood with little or no regard for consequences.[77] Elaborating on this distinction, researchers have

---

(…continued)

describing the impulse purchase of their firearms: "One of the major reasons is that we try to build thousands of units of a new product before launching it. That's really important because so much of firearms purchases is an impulse buy. And when that brand new firearm shows up on the cover of a major magazine, people run to the stores to go hold it and play with it and then buy it. And if it's not there and it's six months or two years later before it shows up at their local retailer. By then they've lost interest or they're resentful that they had to wait, and they don't buy it.").

[72] National Shooting Sports Foundation, *Changing Faces of the Shooting Sports, Meeting the Needs of an Increasingly Diverse Customer Base, Special Report for NSSF Range & Retailer Members 2015*, NATIONAL SHOOTING SPORTS FOUNDATION, 6 (2015), http://nssfretailers.s3.amazonaws.com/DiversityReport.pdf (summarizing findings from their study "Women's Responses: Women's first gun purchase is not typically an impulse buy.").

[73] Barbara Baird, *A League of Their Own,* SHOT BUSINESS, 4 (July 2015). Also cited in White (2015), p. 4 ("To help you better understand this emerging market, we commissioned contributing editor Barbara Baird to profile a trio of women's shooting groups.")).

[74] Slaton L. White, *Open Arms: It's Time to Welcome New Shooters,* SHOT BUSINESS (July 2015) (comparing differences in the impulse purchase of firearms by men and woman and describing "And that nugget confirms that you'll need to adjust your selling techniques to match this new customer" and "...their sales triggers differ from men's, and you need to be keenly aware of these differences.").

[75] Slaton L. White, *Open Arms: It's Time to Welcome New Shooters*, SHOT BUSINESS, 4 (July 2015) (describing the "recent report by NSSF ['The Changing Face of the Shooting Sports'] that reports "findings related to impulse firearms purchases.").

[76] Firearm's blogs contain discussions of firearms purchased on impulse. See *Upland Journal* (August 9, 2007), http://uplandjournal.ipbhost.com/index.php?/topic/4399-impulse-purchase/ (e.g., "I'm not one for fancy shotguns really, but I did it this time. Talk about impulse buying. I saw it and just had to have it."). See *The Highroad.org (October 24, 2014),* http://www.thehighroad.org/archive/index.php/t-764480.html (e.g., "Pretty much every gun I buy is an impulse buy.").

[77] Impulse buying is also distinct from compulsive buying. Amos, Holmes, and Keneson (2014), p. 87. ("A lengthy stream of literature in psychiatry is dedicated to compulsive buying and defines it as excessive, repetitive uncontrollable preoccupations, urges, or behaviors

(continued…)

16

1   distinguished impulse buying using three criteria. First, the act is spontaneous and is usually

2   accompanied by a positive emotional charge.[78] Second, the individual making the impulse buy

3   shows a diminished regard for any costs or consequences.[79] Third, the act usually involves a

4   hedonic temptation for immediate self-fulfillment through consumption.[80]

5       35.    The strong hedonic temptation that drives impulse buying is considered extremely

6   powerful and difficult to resist. According to research in marketing, this temptation stems from

7   both the emotional attraction to the object of desire and from the desire for immediate

8   gratification. In often cited research interviews of consumers asked to describe the event of

9   impulse buying, consumers report that the experience involves a spontaneous urge to buy, that is

10  both intense and forceful, involves personal excitement and stimulation, engenders feelings of

11  synchronicity, incorporates quasi-mystical properties, includes hedonic elements of good and bad,

12  arouses emotional conflict and ambivalence, and is accompanied by a disregard for consequences.

13  This consumer-based research provides a rich description from which to understand the nature of

14  the temptation that likely accompanies impulse buying, including impulse buying of handguns.

15      36.    According to research in marketing, this temptation stems from both the emotional

16  attraction to the object of desire and from the desire for immediate gratification. In often cited

17  research interviews of consumers who were asked to describe the event of impulse buying,

18  consumers report that the experience involves a spontaneous urge to buy, that is both intense and

19  forceful, involves personal excitement and stimulation, engenders feelings of synchronicity,

20  incorporates quasi-mystical properties, includes hedonic elements of good and bad, arouses

---

(…continued)

pertaining to shopping that lead to subjective distress and impaired functioning .... research has empirically demonstrated the distinctness of the two constructs and that compulsive buying is a conspicuously different phenomenon.").

    [78] Amos, Holmes and Keneson (2014), p. 87. Although the act of impulse buying is spontaneous, as described in this report, the temptation to engage in impulse buying involves a cognitive process with associated stages.  Moreover, as Amos, Holmes and Keneson (2014), p. 87 it is the case that the consumption impulse associated with impulse buying is a "powerful and persistent urge" and the "consumption impulse can still exist if the decision time lapse is extended."

    [79] Amos, Holmes and Keneson (2014), p. 87.

    [80] Amos, Holmes and Keneson (2014), p. 87.

emotional conflict and ambivalence, and is accompanied by a disregard for consequences. This consumer-based research provides a rich description from which to understand the nature of the temptation that accompanies impulse buying, including impulse buying of handguns.

37.     In the aforementioned research interviews of consumers asked to describe the event of impulse buying, consumers express that the impulse buying experience involves spontaneous urges to buy something. Consumers describe feelings of "all of a sudden" being hit with urges to buy something and with feelings of having to possess or to buy something instantly.[81] The buying impulse reportedly makes consumers feel compelled to purchase something.[82] Summarizing reports by consumers, researchers have concluded that, "The buying impulse is unexpected; it arises spontaneously and urges the consumer to ‚BUY NOW!'"[83]

38.     The intensity and force that accompanies impulse buying is also both powerful and compelling. Consumers report that the buying impulses occupy "center stage" quickly and become intensely preoccupying.[84] Consumers describe the force behind their buying impulses as being "like a hunger," even "animal-like."[85] When experiencing an impulse buying event, consumers also speak forcefully about their "needs" and "wants" together with a sudden determination to gratify them.[86] Some report feeling compelled, obsessed, and desperate.[87]

39.     Consumers also report that impulse buying is often accompanied by personal excitement and stimulation. Consumers vary in the degree to which they portray the buying impulse as a source of personal excitement with more describing it as being very stimulating. Descriptions offered by consumers include that the experience is "exciting," "thrilling," and "wild"[88] and that the experience can induce feelings of being out-of-control.[89] According to

---

[81] Rook (1987), p. 193.
[82] Rook (1987), p. 193.
[83] Rook (1987), p. 193 (emphasis in original).
[84] Rook (1987), p. 193.
[85] Rook (1987), p. 194.
[86] Rook (1987), p. 194
[87] Rook (1987), p. 194.
[88] Rook (1987), p. 194.
[89] Rook (1987), p. 194.

18

1  researchers, the variety and high levels of excitement attributed to impulse buying distinguish it

2  from more calm and rational consumer decision making.[90]

3       40.     Some consumers report a sense of synchronicity associated with impulse buying.

4  Individuals who describe such an experience reportedly express feelings that they were in the

5  right place at the right time, the beneficiaries of a unique and fortuitous convergence of events.[91]

6  The objects of the impulse purchase were interpreted as meant personally, or even preordained,

7  for them.[92] According to the researchers, such feelings likely involve some displacement of blame

8  upon the object with an implicate abdication of personal responsibility and reflective of a

9  rationalized decision-process element that may be latent in larger numbers of consumers.[93]

10      41.     Quasi-mystical properties are also reported to be a part of the impulse buying

11 experience by some consumers.[94] Some consumers who report these properties say they felt

12 "hypnotized" or "mesmerized" by the experience and found themselves mindlessly moving

13 toward a cashier, as if in a dream.[95] Others reportedly animate the objects of their desires with

14 stories of products that are not inert, but are empowered with motility and a will.[96] According to

15 the researchers, such expressions probably involve some transference of guilt about buying, or

16 even about having the impulse, on to the product itself.[97]

17      42.     Impulse buying experiences are further reported to include intense feelings that

18 include hedonic elements of feeling good and bad. Many consumers report hedonic elements are

19 associated with their impulse buying experiences.[98]  Consumers indicate that the impulse to buy

20 makes them feel "good," "happy," "satisfied," "light," "wonderful," or "high."[99] Consumers also

---

[90] Rook (1987), p. 194
[91] Rook (1987), p. 194.
[92] Rook (1987), p. 194.
[93] Rook (1987), p. 194.
[94] Rook (1987), p. 194.
[95] Rook (1987), p. 194.
[96] Rook (1987), p. 194.
[97] Rook (1987), p. 194.
[98] Rook (1987), p. 195.
[99] Rook (1987), p. 195.

19

1   indicate painful elements accompany the impulse to buy something including expressions of

2   feeling strange or "blank."[100] Others describe themselves as becoming "restless" and "nervous"

3   with some recalling feeling "distressed," "out-of-control," or "helpless."[101]

4      43.   The impulse buying experience is also reported to arouse emotional conflict and

5   ambivalence on the part of consumers. Consumers describe how the impulse to buy arouses both

6   pleasure and guilt.[102] Consumers report having difficulty getting control over their buying

7   impulses with some indicating that only way to relieve the tension to give in and buy.[103]

8   According to the researchers, more than a few consumers reported feeling utterly helpless against

9   the dictates of their impulses, with several confessing they simply couldn"t resist certain buying

10  impulse and felt quite "out of control."[104]

11     44.   The impulse buying experience is also reported by consumers to be accompanied by a

12  disregard for consequences. According to the aforementioned researchers, the buying impulse"s

13  urge toward immediate action discourages consideration of the behavior"s potential

14  consequences. A powerful urge to buy may prove irresistible.[105] As described by the researchers,

15  some consumers report having succumbed to their buying impulse despite an awareness of

16  potentially negative consequences.[106]

17     45.   The aforementioned often-cited research that describes consumer interviews wherein

18  consumers were asked to describe the event of impulse buying offers a rich description of the

19  nature of the temptation that accompanies impulse buying of goods and services. Given firearms,

20  including handguns, are known to be purchased on impulse, it is reasonable to conclude that,

21  similar to these reports for other goods and services, the experience of buying a handgun on

22  impulse involves a spontaneous urge to buy, that is both intense and forceful, involves personal

---

[100] Rook (1987), p. 195.
[101] Rook (1987), p. 195.
[102] Rook (1987), p. 195.
[103] Rook (1987), p. 195.
[104] Rook (1987), p. 195.
[105] Rook (1987), p. 195.
[106] Rook (1987), p. 195.

20

1   excitement and stimulation, engenders feelings of synchronicity, potentially incorporates quasi-

2   mystical properties, includes hedonic elements of good and bad, arouses emotional conflict and

3   ambivalence, and is accompanied by a disregard for consequences.

4       **E.    Cognitive Process of Impulse Buying**

5       46.    When a consumer experiences the impulse buying temptation, mental processes are

6   automatically enabled to evaluate the presence of possible constraints to enactment of the impulse

7   purchase.[107] If no constraining factors are identified during this period, the impulse buying

8   temptation may be viewed by the consumer as harmonious with his or her goals, resources, and

9   situation resulting in the enactment of an impulse purchase.[108] The presence of constraining

10  factors paves the way for consumers to adopt resistance strategies that can cause the consumption

11  impulse to dissipate.[109] Consumers who do not face constraints to their consumption impulse or

12  that do not successfully implement resistance strategies fall prey to the temptation resulting from

13  the excitement and stimulation of an impulse buy and tend to place an emphasis on emotions and

14  feeling during this experience.[110] Hence, when people make an impulse buy they are often said to

15  be "yielding to temptation."[111] As with the nature of the impulse buying temptation, it is

16  reasonable to conclude that these processes and the constraining factors and resistance strategies

17  are applicable to the impulse purchase of firearms, including handguns.

18      47.    Different categories of constraining factors have been identified in the literature.[112]

19  Three categories of constraints identified through research include: current impediments,

20

---

21      [107] Uptal M. Dholakia, *Temptation and Resistance: An Integrated Model of Consumption Impulse*, 17 PSYCHOLOGY & MARKETING 955, 962 (2000).

22      [108] Dholakia (2000), p. 962.

23      [109] Amos, Holmes, and Kenson (2014), p. 87.  Dholakia (2000), p. 982. (Strategies of resistance involve self-regulation of mental states and processes by an individual that operate
24  through different mechanisms.  These strategies have been termed tactical mental control and can be thought of as volitional mechanisms used by the consumer to effortlessly fight back the impulse
25  buying temptation because the consumer uses some specific scheme to suppress his or her natural state of mine (the impulse), and promote the volitionally chosen state (resistance).).

26      [110] Amos, Holmes, Keneson (2014), p. 87.

27      [111] Amos, Holmes, Keneson (2014), p. 87.

        [112] Dholakia (2000), p. 962.

28

**CONCLUSION**

76.    Based on the foregoing knowledge and research I find that it is reasonable to conclude that the display of a handgun or imitation handgun or placard advertising the sale or other transfer thereof, in any part of the premises of a California licensed handgun seller, that can be readily seen from the outside, contributes in a positive way to the impulsive purchase of handguns and that it is reasonable to conclude that precluding such materials contributes in a negative way to the impulsive purchase of handguns.

Dated:  July 26, 2016

GREGORY T. GUNDLACH, PH.D., J.D.
Distinguished Professor of Marketing
Department of Marketing and Logistics
Coggin School of Business
University of North Florida

**COMPENDIUM OF EVIDENTIARY DOCUMENTS
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**Exhibit H**

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TRACY RIFLE LLC, et al.,

      Plaintiffs,

-vs-                                No. 2:14-CV-02626-TLN-KJN
                                        (TEMP)
KAMALA D. HARRIS, in her
official capacity as Attorney
General of California, et al.,

      Defendants.
_____/

Deposition of

GREGORY T. GUNDLACH, J.D., Ph.D.

Friday, October 28, 2016

Reported by:
KACY PARKER BARAJAS, RMR, CSR No. 10915
Certified Realtime Reporter
Job No. 45971LR

Gregory Gundlach, J.D., Ph.D.                          10/28/2016

1    Q.      BY MR. DUVERNAY:  And the second piece of that

2    is, to the extent that you find the first portion

3    reasonable, you have also been asked to opine if it is

4    reasonable to conclude that precluding such materials

5    contributes in a negative way to the impulsive purchase

6    of handguns; is that correct?

7    A.      Yes.

8    Q.      Have you been asked to provide an opinion on

9    anything else in this case?

10   A.      No.

11   Q.      Are you prepared to offer an opinion on the

12   magnitude of the positive impact that Section 26820 has

13   on the impulsive purchase of handguns?

14           MR. RICHARDS:  Objection.  Vague.

15           THE WITNESS:  If you mean by "magnitude" a

16   correlation coefficient or some degree of measurement as

17   to the specific relationship, no.

18   Q.      BY MR. DUVERNAY:  And is it correct that you are

19   not offering an opinion on whether limiting impulse

20   purchases of handguns leads to less handgun crime and

21   violence?

22   A.      No.  I'm not offering any opinions of that

23   nature.

24   Q.      Okay.  Let's have you summarize your opinions on

25   the two questions you've been asked to opine.  On the

                                                        12

1    Q.      Okay.  I mean, the thing we're sort of dancing

2    around here is even if we accept as true your opinion

3    that the statute -- and I want to get the words right

4    here -- has a positive impact on the impulsive purchase

5    of handguns, the broader legal question is whether it has

6    a material impact.  And you can make your objections all

7    you want.  Ultimately, that's up to the state to prove.

8    So again I want to confirm that you are not offering an

9    opinion on the magnitude of the impact Section 26820 has

10   on the impulsive purchase of handguns; is that correct?

11         MR. RICHARDS:  I'm going to go ahead and make

12   the objections that Mr. Duvernay suggested.  Contains a

13   legal conclusion and also object on vagueness.

14   Q.      BY MR. DUVERNAY:  And I'll clean up the question

15   because that started with an unnecessary colloquy.  You

16   have not been asked to provide an opinion on the

17   magnitude of the positive impact that the statute,

18   Section 26820, has on the impulsive purchase of handguns;

19   is that correct?

20   A.      If you mean by magnitude an explicit correlation

21   coefficient or some numerical equivalent, I have not.

22   Q.      Okay.  And I mean it like anything beyond --

23   you've not been asked to answer anything beyond it has a

24   positive impact; that is the scope of your -- that is the

25   full extent of your conclusion?

                                                              60

Gregory Gundlach, J.D., Ph.D.                                    10/28/2016

1    A.       The full extent of my conclusion is that it's

2    reasonable to infer given the science that it does have a

3    positive impact on reducing impulse purchases of

4    handguns.

5            MR. DUVERNAY:  Okay.  Go off the record.

6            MR. RICHARDS:  Yeah.

7            (Recess taken.)

8            MR. DUVERNAY:  Let's go back on the record.

9            MR. RICHARDS:  Yes.

10   Q.       BY MR. DUVERNAY:  All right.  I'm going to move

11   to your expertise for a few minutes.  May be shorter than

12   that.  You've referenced your publications in paragraph

13   8, and they're included in Exhibit 3.  It appears the

14   principal focus of your scholarship is antitrust; is that

15   correct?

16   A.       I would characterize it a little more broadly

17   than that as vertical distribution, issues of marketing

18   and public policy associated with retailing and

19   distribution practices of which would include competition

20   policy as well as the matters that we're describing here

21   today.

22   Q.       Sure.  And I'm not trying to knock you out right

23   now.  I'm just honing in on -- the next question is any

24   of your research focused on impulse purchasing in

25   particular?

61

Gregory Gundlach, J.D., Ph.D.

10/28/2016

```
 1              REPORTER'S CERTIFICATE

 2         I, KACY PARKER BARAJAS, a duly licensed

 3    Certified Shorthand Reporter of the State of California,

 4    hereby certify that the witness in the foregoing

 5    deposition was by me duly sworn;

 6         That said testimony was taken down in

 7    stenographic shorthand by me, a disinterested person, at

 8    the time and place therein stated and was thereafter

 9    reduced to typewriting and that the testimony as

10    transcribed is a true record of the testimony given by

11    the witness.

12         That before completion of the deposition, review

13    of the transcript was requested.  If requested, any

14    changes made by the deponent (and provided to the

15    reporter) during the period allowed are appended hereto.

16         I further certify that I am not of counsel or

17    attorney for either or any of the parties to said

18    deposition, nor in any way interested in the outcome of

19    the cause named in said deposition.

20         Dated this 10th day of November, 2016.

21

22    _____

23    KACY PARKER BARAJAS
      Registered Merit Reporter
      Certified Realtime Reporter
24    State of California
      Certificate No. 10915

25
```

73

**COMPENDIUM OF EVIDENTIARY DOCUMENTS
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**Exhibit I**

1   KAMALA D. HARRIS, State Bar No. 146672
    Attorney General of California
2   TAMAR PACHTER, State Bar No. 146083
    Supervising Deputy Attorney General
3   NELSON R. RICHARDS, State Bar No. 246996
    Deputy Attorney General
4     2550 Mariposa Mall, Room 5090
      Fresno, CA  93721
5     Telephone:  (559) 477-1688
      Fax:  (559) 445-5106
6     E-mail:  Nelson.Richards@doj.ca.gov
    *Attorneys for Defendants*

7

8                 IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12
    ┌─────────────────────────────────────────
    │ **TRACY RIFLE AND PISTOL LLC et al.,**          2:14-cv-02626-TLN-KJN (TEMP)
13  │
    │                              Plaintiffs,
14  │
    │                v.                               **EXPERT WITNESS REPORT OF**
15  │                                                 **PROFESSOR J. JOHN MANN**
    │
16  │ **KAMALA D. HARRIS, in her official**
    │ **capacity as Attorney General of California,**
17  │ **et al.,**
    │
18  │                              Defendants.
    └─────────────────────────────────────────
19

20

21

22

23

24

25

26

27

28

those at risk for suicide from the risk of a gun in the house. We need to come up with more creative solutions to prevent people from gaining access to firearms. Many solutions may have a beneficial effect and no one solution is enough.

## V. TOPIC FIVE: IF CALIFORNIA PENAL CODE SECTION 26820 WERE INVALIDATED, IT WOULD RESULT IN MORE HANDGUN SUICIDES IN DIRECT PROPORTION TO THE INCREASE IN HANDGUN PURCHASES

33.    The basis for my opinion on topic five is as follows:  Counsel has asked me to assume that, in the event that California Penal Code section 26820 is invalidated, there will be an increase in handgun purchases by people with impulsive personality traits.  Given that assumption, in the event section 26820 is invalidated, I would predict that there would be an increase in the number of handgun suicides in proportion to the increase in handgun purchases. This opinion is based on the strong relationship between gun availability and risk of firearm suicide.[33] The more handguns that are purchased the more handgun suicides will happen. This effect will be particularly seen in a subgroup of young people, who suffer from a psychiatric illness like major depression and also tend to be more impulsive as a group, and in those adults who suffer from a psychiatric illness like major depression and who have more pronounced impulsive personality traits than other adults. Published studies suggest the increase in firearm suicides will be twice as great in young people, which makes sense since impulsiveness is a more prominent risk factor in young people than in adults.[34] I would therefore predict an increase in suicides in those who impulsively purchase firearms if California Penal Code section 26820 is repealed.

Dated:  July 26, 2016

_____
J. JOHN MANN, M.D.
Paul Janssen Professor of Translational Neuroscience
Director, Molecular Imaging and Neuropathology Division
Department of Psychiatry
Columbia University/New York State Psychiatric Institute

---

[33] Mann and Michel. Prevention of firearm Suicide in the United States: what works and what is possible. *American Journal of Psychiatry*, in press 2016.

[34] Miller M, Lippmann SJ, Azrael D, et al: Household firearm ownership and rates of suicide across the 50 United States. *J Trauma* 2007; 62:1029–1034.

11

**COMPENDIUM OF EVIDENTIARY DOCUMENTS
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**Exhibit J**

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TRACY RIFLE LLC, et al.,

      Plaintiffs,

-vs-                                No. 2:14-CV-02626-TLN-KJN
                                    (TEMP)

KAMALA D. HARRIS, in her
official capacity as Attorney
General of California, et al.,

      Defendants.
_____/

Deposition of

J. JOHN MANN, M.D.

Monday, October 31, 2016

Reported by:
KACY PARKER BARAJAS, RMR, CSR No. 10915
Certified Realtime Reporter
Job No. 45972LR

J. John Mann, M.D.

1    that, as we just mentioned, in the event the law is,

2    invalidated there will be an increase in handgun

3    purchases by people with impulsive personality traits.

4    A.       If the facts were different or the scenario was

5    different or the impact of invalidating that law was

6    different, then the prediction would need to be adjusted

7    accordingly.  That's why the sentence states "in

8    proportion to the increase in handgun purchases."

9    Q.       Okay.  Well, let's focus on that link.  Why do

10   you make the link between the words "in proportion to"

11   and the assumption?

12   A.       What that states is that the bigger the increase

13   in handgun purchases, the bigger the increase in handgun

14   suicides.  The smaller the increase in handgun purchases,

15   the smaller the increase in handgun suicides.

16   Q.       You say in the next sentence, "This opinion is

17   based on the strong relationship between the gun

18   availability and risk of firearm suicide."  Is that

19   really the core of your conclusion and the core of why

20   you made the assumption or the association you just

21   mentioned?

22   A.       Yes.

23   Q.       That assumption, in other words, being -- or the

24   association being, as you just stated, the more handguns

25   that are purchased, you believe the more suicides will

35

1    result?

2    A.       Yes.

3    Q.       And that relates back to opinion 2, correct,

4    topic 2 on page 6?

5    A.       Correct.

6    Q.       Would you be able to reach your opinion number 5

7    without the assumption that counsel gave you?

8    A.       That opinion holds regardless of what the

9    details of the assumption are actually.

10   Q.       Can you elaborate on that for me?

11   A.       If you believe that -- if you made the

12   assumption that repealing that law will reduce the number

13   of handgun purchases, then that will reduce the number of

14   handgun suicides.

15   Q.       Can you read that answer back.

16           (The record was read back by the reporter as

17   follows:  "Answer:  If you believe that -- if you made

18   the assumption that repealing that law will reduce the

19   number of handgun purchases, then that will reduce the

20   number of handgun suicides.")

21   Q.       BY MR. BENBROOK:  The assumption you made though

22   was the reverse, that repealing the law will increase the

23   number of handgun purchases.

24   A.       Because I was given -- I was responding to the

25   assumption that repealing the law will increase the

36

1    number of handgun purchases.

2    Q.      So let's go back then to page 9.

3    A.      9?  6?

4    Q.      Excuse me.  Page 11, lines 11 and 12 you state,

5    "The more handguns that are purchased, the more handgun

6    suicides will happen."  Is that really the core of what

7    you're just talking about?

8    A.      That's not the core.  That's not related

9    directly to what I just said now that you asked the court

10   reporter to read back to you.

11   Q.      Well, is this the core of your opinion in number

12   5, the more --

13   A.      The core of my opinion is this opinion is based

14   on the strong relationship between gun availability and

15   the risk of firearm suicide.

16   Q.      Generally, generally in the literature,

17   generally in the world, correct?

18   A.      Yes.  I believe this applies in the

19   United States, in California, and in other parts of the

20   world.

21   Q.      And that's regardless of the personality type of

22   the possessor of the firearm?

23   A.      Personality type, by which you mean what?

24   Q.      Well, I'm referring to other parts of your

25   opinion as examples where you identify impulsive

37

J. John Mann, M.D.

10/31/2016

1    invalidated, there would be more purchases of handguns.

2    And again, you understand -- can you describe the law as

3    you understand it?

4    A.        I didn't express an opinion about the

5    assumption.  I expressed an opinion about the

6    consequences of such an assumption.

7    Q.        I understand that.  And we're here at a

8    deposition where I get to ask you a bunch of questions

9    about the case and your assumptions and your findings.

10   So my question is can you please describe for me the law

11   at issue here, as you understand it?

12   A.        I don't know the details of the law.

13   Q.        Have you read the statute?

14   A.        No.

15   Q.        What's your general understanding of the

16   statute?

17   A.        I understand it refers to advertising by gun

18   stores about the -- regarding the sale of handguns,

19   visible advertising.

20   Q.        And what about the visible advertising?  What

21   does the law restrict to your understanding?

22   A.        It restricts such visible advertising of handgun

23   sales.

24   Q.        Do you know in what manner?

25   A.        I don't know, posters, billboards, displays

41

J. John Mann, M.D.

10/31/2016

1          MR. RICHARDS:   Okay.

2          (The luncheon recess was taken 12:07 p.m. to

3     12:53 p.m.)

4          MR. BENBROOK:   Back on the record.

5     Q.       Dr. Mann, do you have an opinion as to whether

6     the law that's at issue in this case is effective in

7     curbing suicides?

8     A.       To the extent that this law may reduce the

9     number of firearms purchases, handgun purchases, it is

10    effective.

11    Q.       And do you have an understanding as to whether

12    it does reduce handgun purchases?

13    A.       I don't know.

14    Q.       If this law were effective in curbing suicides,

15    would you expect California's suicide rates to be lower

16    than rates in states without similar law?

17    A.       This law is one part of a complex mosaic effect

18    as it affects suicide rates and firearm suicide rates,

19    and so comparing such comparisons are difficult.

20    Q.       Okay.  Understanding that such comparisons are

21    difficult, is it possible to isolate the impact of this

22    law on determining suicide?

23    A.       Theoretically, yes.

24    Q.       Okay.  Explain the theoretical possibility, if

25    you would, please.

63

J. John Mann, M.D.

1    A.       There's evidence that those states in the union

2    that have the most stringent controls on gun purchases

3    and gun safety and so on have lower firearm suicide rates

4    than other states.  In fact, the differences in suicide

5    rates between such, if you like, more stringent law

6    states versus less stringent law states is entirely

7    explicable quantitatively by the difference in firearm

8    suicides.  So on that basis, one would expect that if

9    California has additional legal measures in place that

10   impact firearm purchases, that that will translate

11   directly into an impact on firearm suicide rates and to a

12   secondary degree on overall suicide rates, and that

13   impact will be greater for younger people than older

14   people.

15   Q.       And that's based -- is that based on an

16   assumption that a restriction makes it -- reduces the

17   overall supply of handguns?

18   A.       Yes.  The more restriction, the fewer handguns,

19   the lower the firearm suicide rate, and therefore,

20   potentially the lower overall suicide rate.

21   Q.       So I just want to get back -- I'm not sure your

22   question explained the theoretical possibility of

23   measuring the effect of just this one law on suicide

24   rates.  Can you explain whether it's possible in your

25   view to measure the effect of just this one law?

64

1    Amendment claim, do you not?

2    A.       That's being weighed up against the lives of

3    these people who die by firearm suicides, yes.

4    Q.       And you have not conducted a state-by-state

5    comparison to see how California's suicide rate -- strike

6    that.  Have you conducted any sort of analysis that would

7    allow you to make an opinion about the effectiveness of

8    this one law compared to other states?

9    A.       Laws come in many different forms with sometimes

10   subtle but very important differences.  It's -- studies

11   have been carried out looking at the types of laws and

12   how extensive they are and how multifaceted they are and

13   how broad their reach is across the states of the

14   United States.  And one has to come up with some broader

15   categories in order to try and derive some more robust

16   conclusions which is why there have been some studies

17   that have looked at the comparison of those states that

18   have the more comprehensive and broad reaching laws

19   versus those that have little or no such legislation, and

20   the difference between those states in suicides is

21   accounted for by the firearm suicides.

22           So one can conclude from this with a fair degree

23   of confidence that these kinds of laws make a difference.

24   The more stringent, the more detailed, the more

25   comprehensive they are, the better.  So taking one of

J. John Mann, M.D.

10/31/2016

1    these laws off the books, there's no evidence at all that

2    that is harmless, and there is a good deal of evidence

3    that that could be harmful.  How harmful, how many lives

4    are going to be lost, I find it hard to come up with an

5    exact number, but you can be pretty confident that there

6    are going to be deaths.

7    Q.       Any idea how many?

8    A.       I just responded to that.  I'm not sure how

9    many.  There are going to be people dying by suicide

10   using handguns.  If a single extra handgun is sold, from

11   then on upwards you're going to be increasing the risk of

12   somebody dying by firearm suicide.

13   Q.       Do you know how many suicides occur each year in

14   California?

15   A.       Several thousand.

16   Q.       Are you able to state with any more precision

17   than that?

18   A.       We only have data going back -- the most recent

19   data are 2014, and it's -- I'm not sure the exact number,

20   but it's several thousands.

21   Q.       Which data are you referring to?

22   A.       The CDC web site, Centers for Disease Control.

23   WISQARS it's called.

24   Q.       Can you spell that?

25   A.       W-I-S-Q-A-R-S.

67

```
 1                    REPORTER'S CERTIFICATE

 2            I, KACY PARKER BARAJAS, a duly licensed

 3     Certified Shorthand Reporter of the State of California,

 4     hereby certify that the witness in the foregoing

 5     deposition was by me duly sworn;

 6            That said testimony was taken down in

 7     stenographic shorthand by me, a disinterested person, at

 8     the time and place therein stated and was thereafter

 9     reduced to typewriting and that the testimony as

10     transcribed is a true record of the testimony given by

11     the witness.

12            That before completion of the deposition, review

13     of the transcript was requested.  If requested, any

14     changes made by the deponent (and provided to the

15     reporter) during the period allowed are appended hereto.

16            I further certify that I am not of counsel or

17     attorney for either or any of the parties to said

18     deposition, nor in any way interested in the outcome of

19     the cause named in said deposition.

20            Dated this 10th day of November, 2016.

21

22     _____
       KACY PARKER BARAJAS
23     Registered Merit Reporter
       Certified Realtime Reporter
24     State of California
       Certificate No. 10915
25
```

121