# EXHIBIT 2

# HEINONLINE

Citation: 47 Annu. Rep. A.B.A. 522 1924



Content downloaded/printed from
HeinOnline (http://heinonline.org)
Wed Jan 28 16:46:00 2015

-- Your use of this HeinOnline PDF indicates your acceptance
   of HeinOnline's Terms and Conditions of the license
   agreement available at http://heinonline.org/HOL/License

-- The search text of this PDF is generated from
   uncorrected OCR text.

PROCEEDINGS·

OF THE

THIRTY-FOURTH ANNUAL MEETING

OF

# The National Conference of Commissioners on Uniform State Laws

HELD AT

PHILADELPHIA, PENNSYLVANIA

*July 1–8, 1924,*

AND

## INFORMATION CONCERNING THE CONFERENCE AND ITS WORK.

### ORIGIN, NATURE AND SCOPE OF THE NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS.

The National Conference of Commissioners on Uniform State Laws is composed of Commissioners from each of the states, the District of Columbia, Alaska, Hawaii, Porto Rico and the Philippine Islands. In thirty-three of these jurisdictions the Commissioners are appointed by the chief executive acting under express legislative authority. In the other jurisdictions the appointments are made by general executive authority. There are usually three representatives from each jurisdiction. The term of appointment varies, but three years is the usual period. The Commissioners are chosen from the legal profession, being lawyers and judges of standing and experience, and teachers of law in some of the leading law schools. They serve without compensation, and in most instances pay their own expenses. They are united in a permanent organization, under a constitution and by-laws, and annually elect a president, a vice-president, a secretary, and a treasurer. The Commissioners meet in Annual Conference at the same place as the American Bar Association, usually for four or five days immediately preceding the meeting

(522)

of that Association. The funds necessary for carrying on the work of the Conference are derived from contributions from some of the states, from appropriations made by the American Bar Association, and contributions from various state bar associations. The record of the activities of the Conference, the reports of its committees, and its approved acts are printed in the annual Proceedings. The approved acts, sometimes with annotations, are also printed in separate pamphlet form.

The origin of the Conference is, briefly, this: In 1889 the American Bar Association appointed a special committee on Uniform State Laws. In 1890 the Legislature of the State of New York adopted an act authorizing the appointment of " commissioners for the promotion of uniformity of legislation in the United States," whose duty it was to examine certain subjects of national importance that seem to show conflict among the laws of the several commonwealths, to ascertain the best means to effect an assimilation and uniformity in the laws of the states, and especially whether it would be advisable for the State of New York to invite the other states of the union to send representatives to a convention to draft uniform laws to be submitted for the approval and adoption of the several states. In the same year, a special committee of the American Bar Association, after reciting the action of New York, reported a resolution that the Association recommend the passage by each state and by Congress for the District of Columbia and the territories, of a law providing for the appointment of Commissioners to confer with Commissioners from other states on the subject of uniformity in legislation on certain subjects. As a result of the action of New York, of the recommendation of the American Bar Association, and the efforts of various interested persons, the first Conference of Commissioners was held in August, 1892, at Saratoga, New York, for three days immediately preceding the annual meeting of the American Bar Association. Since that time, thirty-three Conferences have been held. While in the first Conference but nine states were represented, since 1912, all the states, territories, the District of Columbia, Porto Rico, and the Philippine Islands have been officially represented.

The object of the Conference, as stated in its Constitution, is " to promote uniformity in state laws on all subjects where

uniformity is deemed desirable and practicable." The Conference works through standing and special committees. In recent years all proposals of subjects for legislation are referred to a standing Committee on Scope and Program. After due investigation, and sometimes a hearing of parties interested, this committee reports whether the subject is one upon which it is desirable and feasible to draft a uniform law. If the Conference decides to take up the subject, it refers the same to a special committee with instructions to report a draft of an act. With respect to some of the more important acts, it has been customary to employ an expert draughtsman. Tentative drafts of acts are submitted from year to year and are discussed section by section. Each uniform act is thus the result of one or more tentative drafts subjected to the criticism, correction, and emendation of the Commissioners, who represent the experience and judgment of a select body of lawyers chosen from every part of the United States. When finally approved by the Conference, the Uniform Acts are recommended for general adoption throughout the jurisdictions of the United States and are submitted to the American Bar Association for its approval.

The Conference has drafted and approved thirty-eight acts. It has also approved seven acts drafted by other organizations. Some of its own acts have been by Conference action declared obsolete and superseded, leaving at present a total of thirty acts being recommended for adoption. A complete list of all acts drafted and approved, of acts drafted by other bodies and approved by the Conference, of obsolete and superseded acts, and the extent to which the acts have been adopted in the various jurisdictions, are shown in appropriate tables on pages 536-543.

The list of present and past officers, of the dates and places of previous meetings, the present personnel of the Conference, and the standing and special committees are set forth on pages 525-531.

As an aid in promoting uniformity of judicial interpretation of the various acts, the Conference has fortunately secured, through the efforts and able editorship of the late Commissioner Charles Thaddeus Terry, of New York, Chairman of the Committee on Uniformity of Judicial Decisions, the publication in a single volume by Baker, Voorhis & Co., of New York City, of the Uniform Acts with full annotations.

# OFFICERS OF THE CONFERENCE.

## RETIRING OFFICERS.

### 1923–1924.

NATHAN WILLIAM MACCHESNEY, 30 N. LaSalle St., Chicago, Ill., *President*.
JOSEPH F. O'CONNELL, 11 Beacon St., Boston, Mass., *Vice-President*.
GEORGE G. BOGERT, Cornell Law School, Ithaca, N. Y., *Secretary*.
W. O. HART, 134 Carondelet St., New Orleans, La., *Treasurer*.
GEORGE B. YOUNG, 131 State St., Montpelier, Vt., *Chairman, Executive Committee*.

## OFFICERS FOR 1924–1925.

NATHAN WILLIAM MACCHESNEY, 30 N. LaSalle St., Chicago, Ill., *President*.
JOSEPH F. O'CONNELL, 11 Beacon St., Boston, Mass., *Vice-President*.
GEORGE G. BOGERT, Cornell Law School, Ithaca, N. Y., *Secretary*.
W. O. HART, 134 Carondelet St., New Orleans, La., *Treasurer*.
JESSE A. MILLER, 1513 Equitable Building, Des Moines, Ia., *Chairman, Executive Committee*.

# COMMITTEES OF THE CONFERENCE 1924-1925.

## STANDING COMMITTEES.

A. **Executive.**—*Appointed Members:* Jesse A. Miller, 1513 Equitable Building, Des Moines, Ia., *Chairman;* George B. Young, 131 State St., Montpelier, Vt.; John H. Voorhees, Bailey-Glidden Building, Sioux Falls, S. D.; Chester I. Long, 830 First National Bank Building, Wichita, Kans.; Henry M. Bates, Law School, Ann Arbor, Mich. *Ex-officio:* Nathan William MacChesney, 30 N. LaSalle St., Chicago, Ill., *President;* Joseph F. O'Connell, 11 Beacon St., Boston, Mass., *Vice-President;* George G. Bogert, Cornell Law School, Ithaca, N. Y., *Secretary;* W. O. Hart, 134 Carondelet St., New Orleans, La., *Treasurer;* William M. Hargest, Harrisburg, Pa., *Chairman of Committee on Scope and Program.*

B. **Scope and Program.**—(Elected) William M. Hargest, Harrisburg, Pa., *Chairman* (term expires 1927) ; Nathan William MacChesney, 30 N. LaSalle St., Chicago, Ill., *President ex-officio;* W. C. Kinkead, Hynds Building, Cheyenne, Wyo. (term expires 1925); Chester I. Long, 830 First National Bank Building, Wichita, Kans. (term expires 1926); C. A. Severance, Merchants' National Bank Building, St. Paul, Minn. (term expires 1925); Samuel Williston, Harvard Law School, Cambridge, Mass. (term expires 1926); Henry U. Sims, 1010-1014 1st Natl. Bank Bldg., Birmingham, Ala. (term expires 1927).

C. **Educational and Publicity.**—Harrison A. Bronson, Bismarck, N. D., *Chairman;* Rome G. Brown, 1008 Metropolitan Life Building, Minneapolis, Minn.; Jefferson B. Chandler, 617 Bartlett Building, 215 West Seventh St., Los Angeles, Cal.; Merrill Moores, Indianapolis, Ind.; Thomas W. Shelton, Norfolk, Va.; Joseph J. Thompson, 917 Ashland Block, Chicago, Ill.; Frederick S. Tyler, Metropolitan Bank Building, Washington, D. C.

(525)

526    COMMISSIONERS ON UNIFORM STATE LAWS.

D. **Legislative.**—John H. Voorhees, Bailey-Glidden Building, Sioux Falls, S. D., *Chairman;* Walter P. Armstrong, Bank of Commerce Building, Memphis, Tenn.; George A. Bourgeois, Law Building, Atlantic City, N. J.; Harry L. Cram, 102 Exchange St., Portland, Me.; T. A. Hammond, Atlanta, Ga.; Frank Pace, Little Rock, Ark.; J. O. Seth, Santa Fe, New Mexico.

E. **On Appointment of and Attendance by Commissioners.**—W. O. Hart, 134 Carondelet St., New Orleans, La., *Chairman;* James R. Caton, Alexandria, Va.; P. H. Gillen, Bangor, Me.; Percy V. Long, San Francisco, Cal.; P. W. Meldrim, Courthouse, Savannah, Ga.; James M. Tunnell, Georgetown, Del.; J. W. Vandervort, Third and Juliana Sts., Parkersburg, W. Va.

## GENERAL COMMITTEES AND SECTIONS.

### GENERAL.

I. **Legislative Drafting.**—Ernst Freund, University of Chicago Law School, Chicago, Ill., *Chairman;* George E. Beers, 42 Church St., New Haven, Conn.; William E. Britton, School of Law, Indiana University, Bloomington, Ind.; Con P. Cronin, State House, Phœnix, Ariz.; Fred 'W. Stow, Fort Collins, Colo.; R. L. Tullis, Louisiana State University, Baton Rouge, La.

II. **Uniformity of Judicial Decisions.**—William M. Hargest, Harrisburg, Pa., *Chairman;* Stephen H. Allen, Topeka, Kans.; Harrison A. Bronson, Bismarck, N. D.; James M. Graham, Springfield, Ill.; George B. Rose, Little Rock, Ark.; Manuel Rodriguez Serra, San Juan, Porto Rico; Charles E. Shepard, 803 Leary Building, Seattle, Wash.

III. **Co-operation with Other Organizations Interested in Uniform State Laws.**—George B. Young, 131 State St., Montpelier, Vt., *Chairman;* Frank E. Curley, Tucson, Ariz.; Charles J. Morrow, Citizens Bank Building, Tampa, Fla.; Gurney E. Newlin, Title Insurance Building, Los Angeles, Cal.; R. E. L. Saner, Magnolia Building, Dallas, Texas; C. A. Severance, Merchants' National Bank Building, St. Paul, Minn.; W. H. Washington, Steger Building, Nashville, Tenn.

IV. **Co-operation with American Law Institute.**—Samuel Williston, Harvard Law School, Cambridge, Mass., *Chairman;* Randolph Barton, Jr., 207 N. Calvert St., Baltimore, Md.; Charles M. Dutcher, Iowa City, Ia.; John H. Fry, Equitable Building, Denver, Colo.; James P. McBaine, Columbia, Mo.; H. S. Richards, University of Wisconsin, Madison, Wis.; George B. Young, 131 State St., Montpelier, Vt.

### SECTIONS AND SPECIAL COMMITTEES ON VARIOUS UNIFORM ACTS.

A. **Uniform Commercial Acts Section.**—John Hinkley, 215 N. Charles St., Baltimore, Md., *Chairman;* W. H. H. Piatt, Kansas City, Mo.; John R. Hardin, Prudential Building, Newark, N. J.; Thomas A. Jenckes, Turks Head Building, Providence, R. I.; Samuel Williston, Harvard Law School, Cambridge, Mass.; Earle W. Evans, Wichita, Kans.; A. T. Stovall, Okolona, Miss.

**Committees on:**
I. Uniform Sale of Securities Act, John Hinkley, *Chairman.*
II. Uniform State Trade-Mark Act, W. H. H. Piatt, *Chairman.*
III. Uniform Trust Receipts Act, John R. Hardin, *Chairman.*

IV. An Act to Validate Certain Written Transactions Without Consideration, and to Make Uniform the Law Relating Thereto, Thomas A. Jenckes, *Chairman.*

V. An Act to Validate Transactions Between a Person Acting On His Own Behalf and the Same Person Acting Jointly with Others, and to Make Uniform the Law Relating Thereto, Earle W. Evans, *Chairman.*

VI. An Act Concerning the Discharge of Obligors Bound for the Same Debt, and to Make Uniform the Law in Regard Thereto, Samuel Williston, *Chairman.*

B. **Uniform Property Acts Section.**—W. F. Bruell, Redfield, S. D., *Chairman;* William Hunter, Tampa, Fla.; Randolph Barton, Jr., 207 N. Calvert St., Baltimore, Md.; W. H. Washington, Steger Building, Nashville, Tenn.; George G. Bogert, Cornell Law School, Ithaca, N. Y.; Harrison A. Bronson, Bismarck, N. D.; Murray M. Shoemaker, Cincinnati, O.

**Committees on:**

I. Uniform Property Acts:
  1. Uniform Acknowledgment of Instruments Act, William Hunter, *Chairman.*
  2. Uniform Real Property Acts, Randolph Barton, Jr., *Chairman.*
  3. Uniform Law Relating to the Filing of Federal Tax Liens, W. H. Washington, *Chairman.*
  4. Uniform Law Relating to Corpus and Income, W. F. Bruell, *Chairman.*

II. Uniform Mortgage Act.—S. R. Child, 1106 Lumber Exchange, Minneapolis, Minn., *Chairman;* Hollis R. Bailey, 84 State St., Boston, Mass.; Henry M. Bates, Law School, Ann Arbor, Mich.; W. F. Bruell, Redfield, S. D.; James M. Graham, Springfield, Ill.; Marion A. Kline, First National Bank Building, Cheyenne, Wyo.; Willard L. Sturdevant, Central National Bank Building, St. Louis, Mo.

III. Uniform Chattel Mortgage Act.—George M. Hogan, St. Albans, Vt., *Chairman;* George G. Bogert, Cornell Law School, Ithaca, N. Y.; William E. Britton, School of Law, Indiana University, Bloomington, Ind.; A. V. Cannon, 1565 Union Trust Building, Cleveland, O.; Henry G. W. Dinkelspiel, 901 De Young Bldg., San Francisco, Cal.; Charles M. Dutcher, Iowa City, Ia.; William C. Kinkead, Hynds Building, Cheyenne, Wyo.

C. **Uniform Social Welfare Acts Section.**—Walter C. Clephane, Wilkins Bldg., Washington, D. C., *Chairman;* Christopher L. Avery, Groton, Conn.; Charles R. Hollingsworth, Ogden, Utah; Ernst Freund, University of Chicago, Chicago, Ill.; Arthur W. Davis, Spokane, Wash.; Nellis E. Corthell, Albany National Bank Building, Laramie, Wyo.; Adolph G. Wolf, San Juan, Porto Rico.

**Committees on:**

I. Uniform Child Labor Act, Walter C. Clephane, *Chairman.*

II. Uniform Drug Act, Charles R. Hollingsworth, *Chairman.*

III. Uniform Act for One Day's Rest in Seven, Ernst Freund, *Chairman.*

IV. Uniform Act for Joint Parental Guardianship of Children, Arthur W. Davis, *Chairman.*

V. Uniform Sanitary Bedding Act, Nellis E. Corthell, *Chairman.*

VI. Uniform Marriage and Divorce Acts, Christopher L. Avery, *Chairman.*

D. **Uniform Public Law Section.**—Chester I. Long, 830 First National Bank Building, Wichita, Kans., *Chairman;* Arthur H. Ryall, Escanaba, Mich.; Hazen I. Sawyer, 30 N. Fourth St., Keokuk, Ia.; George E. Beers, 42 Church St., New Haven, Conn.; Gurney E. Newlin, Title Insurance Building, Los Angeles, Cal.; Alexander Armstrong, Maryland Trust Building, Baltimore, Md.; W. H. Folland, 304 City and County Building, Salt Lake City, Utah.

**Committees on:**

  I. Uniform Public Law Acts.

    1. Uniform Act for a Tribunal to Determine Industrial Disputes, Chester I. Long, *Chairman.*

    2. Uniform Primary Act for Federal Officers, Arthur H. Ryall, *Chairman.*

    3. Uniform Public Utilities Act, Hazen I. Sawyer, *Chairman.*

    4. Uniform Act Governing the Use of Highways by Vehicles, Gurney E. Newlin, *Chairman.*

  II. Uniform Act for Compacts and Agreements between States, John H. Wigmore, 31 West Lake St., Chicago, Ill., *Chairman;* Hollis R. Bailey, 84 State St., Boston, Mass.; Merrill Moores, Indianapolis, Ind.; Manuel Rodriguez Serra, San Juan, Porto Rico; Ellison G. Smith, Vermillion, S. D.; Frederick S. Tyler, Metropolitan Bank Building, Washington, D. C.; Adolph G. Wolf, San Juan, Porto Rico.

  III. Uniform Aeronautics Act, George G. Bogert, Cornell Law School, Ithaca, N. Y., *Chairman;* Charles V. Imlay, 1416 F St., N. W., Washington, D. C.; John Hinkley, 215 N. Charles St., Baltimore, Md.; Frank Pace, Little Rock, Ark.; Hazen I. Sawyer, 30 N. Fourth St., Keokuk, Ia.; A. T. Stovall, Okolona, Miss.; George B. Young, 131 State St., Montpelier, Vt.

E. **Uniform Corporation Acts Section.**—Wade Millis, Ford Building, Detroit, Mich., *Chairman;* E. H. Cabaniss, Birmingham, Ala.; William M. Crook, Beaumont, Texas; John R. Hardin, Prudential Building, Newark, N. J.; William Draper Lewis, 3400 Chestnut St., Philadelphia, Pa.; George B. Rose, Little Rock, Ark.; Willard L. Sturdevant, Central National Bank Building, St. Louis, Mo.

**Committee on.**

  I. Uniform Incorporation Act, Wade Millis, *Chairman.*

F. **Uniform Torts and Criminal Law Section.**—Henry U. Sims, 1010-1014 1st Natl. Bank Building, Birmingham, Ala., *Chairman;* Walter E. Coe, Stamford, Conn.; F. M. Clevenger, Wilmington, O.; Charles V. Imlay, 1416 F St., N. W., Washington, D. C.; Bradner W. Lee, H. W. Hellman Building, Los. Angeles, Cal.; Frank H. Norcross, Reno, Nev.; Alexander Armstrong, Md. Trust Building, Baltimore, Md.

**Committees on:**

  I. Uniform Act for Extradition of Persons Charged with Crime, Henry U. Sims, *Chairman.*

  II. Uniform Act to Regulate the Sale and Possession of Firearms, Charles V. Imlay, *Chairman.*

G. **Uniform Civil Procedure Section.**—F. M. Clevenger, Wilmington, O., *Chairman;* Walter E. Coe, Stamford, Conn.; Charles V. Imlay, 1416 F St., N. W., Washington, D. C.; Bradner W. Lee, H. W. Hellman Building, Los Angeles, Cal.; Frank H. Norcross, Reno, Nev.; Henry U Sims, 1010-1014 1st Natl. Bank Building, Birmingham, Ala.; James H. Veazey, Tulsa, Okla.

**Committees on:**

I. Uniform Act for Securing Compulsory Attendance of Non-Resident Witnesses in Civil and Criminal Cases, Frank M. Clevenger, *Chairman.*

II. Uniform Arbitration Act, Joseph F. O'Connell, 11 Beacon St., Boston, Mass., *Chairman;* Jefferson P. Chandler, 617 Bartlett Building, 215 West Seventh St., Los Angeles, Cal.; Jesse A. Miller, 1513 Equitable Building, Des Moines, Ia.; Murray M. Shoemaker, Cincinnati, O.; Henry U. Sims, 1010-1014 1st Natl. Bank Bldg., Birmingham, Ala.; James M. Tunnell, Georgetown, Del.

The President of the Conference, Nathan William MacChesney, 30 N. LaSalle St., Chicago, Ill., is *ex-officio* a member of all of the above committees.

# LIST OF
## COMMISSIONERS ON UNIFORM STATE LAWS.

### 1924-1925.

ALABAMA.—F. D. McArthur, Birmingham; Henry U. Sims, 1010-1014 1st Natl. Bank Building, Birmingham; J. K. Dixon, Talladega; E. H. Cabaniss, The Age-Herald Building, Birmingham.

ALASKA.—John A. Clark, Fairbanks; W. H. Whittlesey, Seward; John C. Murphy, Anchorage.

ARIZONA.—Con P. Cronin, State House, Phœnix; H. B. Wilkinson, Phœnix; Frank E. Curley, Tucson.

ARKANSAS.—W. H. Arnold, Texarkana; George B. Rose, Little Rock; Ashley Cockrill, Little Rock; Frank Pace, Little Rock; J. H. Hamiter, Little Rock.

CALIFORNIA.—Bradner W. Lee, H. W. Hellman Building, Los Angeles; Jefferson P. Chandler, 617 Bartlett Building, 215 West Seventh St., Los Angeles; Gurney E. Newlin, Title Insurance Building, Los Angeles; Percy V. Long, San Francisco; Allen Chickering, Merchants Exchange Building, San Francisco; Henry G. W. Dinkelspiel, 901 De Young Building, San Francisco.

COLORADO.—Fred W. Stow, Fort Collins; Willis L. Strachan, Colorado Springs; John H. Fry, Equitable Building, Denver.

CONNECTICUT.—George E. Beers, 42 Church St., New Haven; Walter E. Coe, Stamford; Christopher L. Avery, Groton.

DELAWARE.—D. O. Hastings, Wilmington; James M. Satterfield, Dover; James M. Tunnell, Georgetown.

DISTRICT OF COLUMBIA.—Walter C. Clephane, Wilkins Building, Washington; Charles V. Imlay, 1416 F St., N. W., Washington; Frederick S. Tyler, Metropolitan Bank Building, Washington.

FLORIDA.—Charles J. Morrow, Citizens Bank Building, Tampa; Louis C. Massey, Orlando; William Hunter, Tampa.

GEORGIA.—P. W. Meldrim, Court House, Savannah; T. A. Hammond, Atlanta; J. Hansell Merrill, Thomasville.

HAWAII.—Charles F. Clemons, 512 Hawaiian Trust Building, Honolulu; Miss Marguerite Ashford, 33 South King St., Honolulu; John Albert Matthewman, Honolulu.

IDAHO.—Miles S. Johnson, Lewiston; John W. Jones, Blackfoot; James F. Ailshie, Coeur D'Alene.

ILLINOIS.—Nathan William MacChesney, 30 N. LaSalle St., Chicago; Ernst Freund, University of Chicago, Chicago; John H. Wigmore, 31 West Lake St., Chicago; James M. Graham, Springfield; Joseph J. Thompson, 917 Ashland Block, Chicago.

INDIANA.—Thomas A. Dailey, 1003 Lemcke Building, Indianapolis; Merrill Moores, Indianapolis; William E. Britton, School of Law, Indiana University, Bloomington; T. M. Talcott, Jr., South Bend; B. F. Heaton, Fort Wayne.

IOWA.—Charles M. Dutcher, Iowa City; Jesse A. Miller, 1513 Equitable Building, Des Moines; Hazen I. Sawyer, 30 N. Fourth St., Keokuk.

KANSAS.—Stephen H. Allen, Crawford Building, Topeka; Charles W. Smith, State House, Topeka; Earle W. Evans, Wichita; Chester I. Long, Wichita; Karl M. Geddes, El Dorado.

KENTUCKY.—Ben F. Washer, Louisville; George B. Martin, Catlettsburg; J. B. Snyder, Williamsburg.

LOUISIANA.—W. O. Hart, 134 Carondelet St., New Orleans; R. S. Thornton, Alexandria; R. L. Tullis, Louisiana State University, Baton Rouge.

MAINE.—Harry L. Cram, 102 Exchange St., Portland; H. H. Murchie, Calais; P. H. Gillen, Bangor.

MARYLAND.—John Hinkley, 215 N. Charles St., Baltimore; Alexander Armstrong, Maryland Trust Building, Baltimore; Randolph Barton, Jr., 207 N. Calvert St., Baltimore.

MASSACHUSETTS.—Hollis R. Bailey, 84 State St., Boston; Samuel Williston, Harvard Law School, Cambridge; Joseph F. O'Connell, 11 Beacon St., Lawyers Building, Boston.

MICHIGAN.—Wade Millis, Ford Building, Detroit; Henry M. Bates, Law School, Ann Arbor; Arthur H. Ryall, Escanaba.

MINNESOTA.—Rome G. Brown, 1008 Metropolitan Life Building, Minneapolis; S. R. Child, 1106 Lumber Exchange, Minneapolis; C. A. Severance, Merchants National Bank Building, St. Paul.

MISSISSIPPI.—A. T. Stovall, Okolona; R. N. Miller, Hazelhurst; Webb W. Venable, Clarksdale; Percy Bell, Greenville; J. S. Sexton, Hazelhurst; W. H. Clifton, Aberdeen.

MISSOURI.—James P. McBaine, Columbia; Willard L. Sturdevant, Central National Bank Building, St. Louis; W. H. H. Piatt, 715 Commerce Building, Kansas City; Joseph Zumbalen, Washington University, St. Louis.

MONTANA.—Charles R. Leonard, Butte; C. A. Spaulding, Helena; W. F. O'Leary, Great Falls; Mrs. Margaret Young, Forsyth.

NEBRASKA.—Clarence A. Davis, Holdredge; Edward F. Leary, First National Bank Building, Omaha; Arthur R. Wells, c/o Stout, Rose, Wells & Martin, Omaha.

NEVADA.—Homer Mooney, Carson City; Frank H. Norcross, Reno.

NEW HAMPSHIRE.—Ira A. Chase, Bristol; John R. McLane, Manchester; Stephen S. Jewett, Laconia.

NEW JERSEY.—John R. Hardin, Prudential Building, Newark; Mark A. Sullivan, 15 Exchange Place, Jersey City; George A. Bourgeois, Law Building, Atlantic City.

NEW MEXICO.—C. M. Botts, Santa Fe; J. O. Seth, Santa Fe; J. W. Armstrong, Carlsbad.

NEW YORK.—Carlos C. Alden, Lafayette Building, Buffalo; G. G. Bogert, Cornell Law School, Ithaca; Edward Ward McMahon, 430 Clinton Ave., Brooklyn.

NORTH CAROLINA.—J. Crawford Biggs, Raleigh; W. P. Bynum, Greensboro.

NORTH DAKOTA.—H. A. Bronson, Bismarck; R. H. Grace, Bismarck.

OHIO.—A. V. Cannon, 1565 Union Trust Building, Cleveland; F. M. Clevenger, Wilmington; Murray M. Shoemaker, Cincinnati.

OKLAHOMA.—James H. Veazey, Tulsa; Phil C. Kates, Tulsa; D. A. McDougal, Sapulpa.

OREGON.—Gus C. Moser, Yeon Building, Portland; W. P. Lord, Jr, Lewis Building, Portland.

PENNSYLVANIA.—W. M. Hargest, Harrisburg; William Draper Lewis, 3400 Chestnut St., Philadelphia; William H. Schnader.

PHILIPPINE ISLANDS.—Charles S. Lobingier, Shanghai, China; Julian A. Wolfson, 65 Juan Luna St., Binando, Manila; Robert E. Manley, Naga, Camarines.

PORTO RICO.—Manuel Rodriguez Serra, San Juan; Adolph G. Wolf, San Juan.

RHODE ISLAND.—Thomas A. Jenckes, Turks Head Building, Providence; William B. Greenough, 15 Westminster St., Providence.

SOUTH CAROLINA.—J. E. McDonald, Winnsboro.

SOUTH DAKOTA.—John H. Voorhees, Bailey-Glidden Building, Sioux Falls; W. F. Bruell, Redfield; Ellison G. Smith, Vermillion.

TENNESSEE.—W. H. Washington, Steger Building, Nashville; Thad A. Cox, Johnson City; Walter P. Armstrong, Bank of Commerce Building, Memphis.

TEXAS.—William M. Crook, Gilbert Building, Beaumont; R. E. L. Saner, Magnolia Building, Dallas; Claude Pollard, Houston.

UTAH.—W. H. Folland, 414 City and County Building, Salt Lake City; Charles R. Hollingsworth, 518 Eccles Bldg., Ogden; William H. Leary, Salt Lake City.

VERMONT.—John G. Sargent, Ludlow; George B. Young, 131 State St., Montpelier; George M. Hogan, St. Albans.

VIRGINIA.—James R. Caton, Alexandria; H. G. Peters, Bristol; Thomas W. Shelton, Norfolk.

WASHINGTON.—Charles E. Shepard, 803 Leary Building, Seattle; Arthur W. Davis, Spokane; D. H. Rowland, Tacoma.

WEST VIRGINIA.—Edgar B. Stewart, Morgantown; F. N. Alderson, Richwood; J. W. Vandervort, Third and Juliana Sts., Parkersburg; Douglas W. Brown, Huntington; E. T. England, Charlestown.

WISCONSIN—H. S. Richards, University of Wisconsin, Madison; M. B. Olbrich, Madison.

WYOMING.—Wm. C. Kinkead, Hynds Building, Cheyenne; Marion A. Kline, First National Bank Building, Cheyenne; Nellis E. Corthell, Albany National Bank Building, Laramie.

## COMMISSIONERS IN ATTENDANCE AT THE THIRTY-FOURTH ANNUAL CONFERENCE.

ALABAMA.—Edward H. Cabaniss, Birmingham; Henry U. Sims, Birmingham.

ARKANSAS.—J. H. Hamiter, Little Rock; George B. Rose, Little Rock; Frank Pace, Little Rock.

CALIFORNIA.—Henry G. W. Dinkelspiel, San Francisco; Gurney E. Newlin, Los Angeles.

COLORADO.—John H. Fry, Denver.

CONNECTICUT.—Christopher L. Avery, Groton; George E. Beers, New Haven; Walter E. Coe, Stamford.

DELAWARE.—James M. Tunnell, Georgetown.

DISTRICT OF COLUMBIA.—Walter C. Clephane, Washington; Charles V. Imlay, Washington; Frederick S. Tyler, Washington.

FLORIDA.—William Hunter, Tampa; Charles J. Morrow, Tampa.

GEORGIA.—T. A. Hammond, Atlanta; P. W. Meldrim, Savannah.

IDAHO.—James F. Ailshie, Coeur d'Alene.

ILLINOIS.—Nathan William MacChesney, 30 N. LaSalle St., Chicago.

INDIANA.—William E. Britton, Bloomington.

IOWA.—Jesse A. Miller, Des Moines; Hazen I. Sawyer, Keokuk.

532 COMMISSIONERS ON UNIFORM STATE LAWS.

KANSAS.—Chester I. Long, Wichita.
KENTUCKY.—George B. Martin, Catlettsburg.
LOUISIANA.—W. O. Hart, New Orleans.
MAINE.—P. H. Gillin, Bangor.
MARYLAND.—Randolph Barton, Jr., Baltimore; John Hinkley, Baltimore; Alexander Armstrong, Hagerstown.
MASSACHUSETTS.—Hollis R. Bailey, Boston; Joseph F. O'Connell, Boston; Samuel Williston, Cambridge.
MICHIGAN.—Henry M. Bates, Ann Arbor; Wade Millis, Detroit; A. H. Ryall, Escanaba.
MINNESOTA.—Rome G. Brown, Minneapolis; S. R. Child, Minneapolis.
MISSISSIPPI.—A. T. Stovall, Okolona.
MISSOURI.—W. H. H. Piatt, Kansas City; W. L. Sturdevant, St. Louis.
NEW JERSEY.—John R. Hardin, Newark.
NEW YORK.—George G. Bogert, New York City.
NORTH DAKOTA.—Harrison A. Bronson, Bismarck.
OHIO.—F. M. Clevenger, Wilmington.
PENNSYLVANIA.—William M. Hargest, Harrisburg; William Draper Lewis, Philadelphia.
PORTO RICO.—Manuel Rodriguez Serra, San Juan; Adolph G. Wolf, San Juan.
RHODE ISLAND.—Thomas A. Jenckes, Providence.
SOUTH DAKOTA.—W. F. Bruell, Redfield; John H. Voorhees, Sioux Falls.
TENNESSEE.—W. H. Washington, Nashville.
TEXAS.—R. E. L. Saner, Dallas; William Crook, Beaumont.
UTAH.—Charles R. Hollingsworth, Ogden.
VERMONT.—George M. Hogan, St. Albans; George B. Young, Montpelier.
VIRGINIA.—Thomas W. Shelton, Norfolk; James R. Caton, Alexandria.
WYOMING.—N. E. Corthell, Laramie; W. C. Kinkead, Cheyenne; M. A. Kline, Cheyenne.

## COMMISSIONERS WHO CEASED TO BE MEMBERS OF THE CONFERENCE BETWEEN THE CLOSE OF THE 1923 CONFERENCE AND THE OPENING OF THE 1924 CONFERENCE.

ALABAMA.—T. C. McClellan, Birmingham.
COLORADO.—T. J. O'Donnell, Denver.
IDAHO.—S. L. Hodgin, Twin Falls.
KANSAS.—F. Dumont Smith, Hutchinson.
MARYLAND.—Henry Stockbridge, Baltimore, deceased; George Weems Williams, Baltimore.
MISSISSIPPI.—O. G. Johnston, Clarksdale; Leroy Percy, Greenville.
MISSOURI.—James H. Harkless, Kansas City.
NORTH CAROLINA.—J. D. Murphy, Asheville.
NORTH DAKOTA.—Edward F. Flynn, Devil's Lake.
OHIO.—George B. Okey, Columbus.
PENNSYLVANIA.—Walter George Smith, Philadelphia, deceased; W. H. Staake, Philadelphia.
RHODE ISLAND.—W. A. Morgan, Providence, deceased.
SOUTH CAROLINA.—H. B. Carlisle, Spartanburg; D. A. G. Ouzts, Greenwood.
VIRGINIA.—Stuart B. Campbell, Wytheville; Eugene C. Massie, Richmond, deceased.
WISCONSIN.—John B. Sanborn, Madison; E. A. Gilmore, Madison; Julius E. Roehr, Milwaukee; J. L. O'Connor, Milwaukee.
WYOMING.—W. E. Mullen, Cheyenne.

# NEW COMMISSIONERS APPOINTED SINCE THE 1923 CONFERENCE.

ALABAMA.—E. H. Cabaniss, Birmingham.
COLORADO.—John H. Fry, Denver.
IDAHO.—James F. Ailshie, Coeur d'Alene.
MARYLAND.—Alexander Armstrong, Baltimore; Randolph Barton, Jr., Baltimore.
MISSISSIPPI.—Webb Venable, Clarksdale; Percy Bell, Greenville.
MISSOURI.—Joseph Zumbalen, St. Louis.
OHIO.—Murray Shoemaker, Cincinnati.
PENNSYLVANIA.—William Draper Lewis, Philadelphia.
VIRGINIA.—H. G. Peters, Bristol; Thomas W. Shelton, Norfolk.
WISCONSIN.—H. S. Richards, Madison.
WYOMING.—Marion A. Kline, Cheyenne.

## SUMMARY OF THE PROCEEDINGS OF THE THIRTY-FOURTH ANNUAL CONFERENCE.

The Thirty-Fourth Annual Conference of Commissioners on Uniform State Laws was held in Philadelphia, Pa., July 1-8, 1924. Thirty-seven jurisdictions were represented. The names of these jurisdictions and of the Commissioners representing them are given on page 531. The Conference was called to order by President MacChesney. The following program with some modifications was completed on Monday, July 7:

### PROGRAM.

#### TUESDAY, JULY 1.

10.00 A. M.  FIRST SESSION.
  Address of Welcome.
  Response of President.
  Roll Call.
  Reading of Minutes of Last Meeting.
  Address by the President.
  Report of the Secretary.
  Report of the Treasurer.
  Report of the Executive Committee.
  Appointment of Committees on Memorials.
  Appointment of Nominating Committee.
  Reports of Standing Committees.
    Publicity Committee.
    Legislative Committee.
    Committee on Appointment of and Attendance by Commissioners.
  Legislative Drafting.
  Interstate Comity.
  Child Labor.
  Scope and Program.
  Compacts and Agreements between States.
  Co-operation with National Association of Insurance Commissioners.
  Co-operation with Other Organizations.
  Uniformity of Judicial Decisions.
  Extradition of Persons Charged with Crime.
  Industrial Disputes.
  Calling roll of all other Committees for Presentation of Reports.

2.15 P. M.  SECOND SESSION.
  Consideration of
    Third Tentative Draft of a Uniform Arbitration Act.

8.00 P. M.  THIRD SESSION.
  Consideration of
    Fourth Tentative Draft of a Uniform Mortgage Act.

#### WEDNESDAY, JULY 2.

9.30 A. M.  FOURTH SESSION.
  Report of Committee on Revision of Constitution and By-Laws.
  Consideration of
    Fourth Tentative Draft of a Uniform Mortgage Act.

(534)

2.15 P. M.  FIFTH SESSION.
   Consideration of
     Fourth Tentative Draft of a Uniform Mortgage Act.

8.00 P. M.  SIXTH SESSION.
   Consideration of
     Ninth Tentative Draft of a Uniform Incorporation Act.

THURSDAY, JULY 3.

9.30 A. M.  SEVENTH SESSION.
   Report of Nominating Committee.
   Election of Officers.
   Consideration of
     Ninth Tentative Draft of a Uniform Incorporation Act.

2.15 P. M.  EIGHTH SESSION.
   Consideration of
     Ninth Tentative Draft of a Uniform Incorporation Act.
     3.30 P. M.  Memorial Service for our deceased colleagues: Eugene C. Massie, of Virginia; W. A. Morgan, of Rhode Island; Walter George Smith, of Pennsylvania; and Henry Stockbridge, of Maryland.

8.00 P. M.  NINTH SESSION.
   Consideration of
     Ninth Tentative Draft of a Uniform Incorporation Act.

FRIDAY, JULY 4.

No Sessions.

SATURDAY, JULY 5.

9.00 A. M.  TENTH SESSION.
   Consideration of
     Report of Committee on Uniform Commercial Acts, including presentation of Second Tentative Draft of Uniform Securities Act.
     Report of Committee on Joint Parental Guardianship of Children.
     Report of Committee on Co-operation with American Law Institute.
     Second Tentative Draft of a Uniform Chattel Mortgage Act.

MONDAY, JULY 7.

9.30 A. M.  ELEVENTH SESSION.
   Announcement of Committees.
   Consideration of
     Second Tentative Draft of a Uniform Chattel Mortgage Act.
     Report of Committee on a Uniform Act Governing Use of Highways by Vehicles.

2.15 P. M.  TWELFTH SESSION.
   Report of Committee on a Uniform Act to Regulate the Sale and Possession of Firearms.
   First Tentative Draft of a Uniform Act for One Day of Rest in Seven.
   Report of Committee on a Uniform Primary Act for Federal Officers.
   Unfinished Business.
   Meetings of All Committees.
   Adjournment.

### SUMMARY OF PROCEEDINGS.

Reports were received from the Secretary, the Treasurer, and the several standing committees.

The report of the Committee on Appointment of and Attendance by Commissioners showed changes in the personnel of the Conference since the last meeting. These changes are indicated on the table on pages 532 and 533.

According to the report of the Legislative Committee, there were four adoptions of Uniform Acts during the year 1924, as follows:

    Louisiana, Fiduciaries Act.
    Massachusetts, Fraudulent Conveyance Act.
    New Jersey, Declaratory Judgments Act.
    Virginia, Stock Transfer Act.

These adoptions have all been incorporated into the table showing the Uniform Acts that have been adopted by the various states, which is contained in this report.

The Uniform Arbitration Act was approved at the 1924 Conference but was referred back again to the Uniform Arbitration Act Committee for further consideration before being recommended to the state legislatures for adoption.

Tentative drafts of the following acts were discussed and were referred to the respective committees for reconsideration:

Uniform Mortgage Act.
Uniform Incorporation Act.
Uniform Commercial Acts, including presentation of Second Tentative
    Draft of a Uniform Securities Act.
Uniform Joint Parental Guardianship Act.
Uniform Chattel Mortgage Act.
Uniform Act Governing Use of Highways by Vehicles.
Uniform Act Regulating Sale and Possession of Firearms.
Uniform Act for One Day of Rest in Seven.
Uniform Primary Act for Federal Officers.
Uniform Act for the Extradition of Persons Charged with Crime.
Uniform Act to Validate Certain Written Transactions Without Con-
    sideration.
Uniform Act to Validate Transactions Between a Person Acting on His
    Own Behalf and the Same Person Acting Jointly with Others.
Uniform Act Concerning the Discharge of Obligors Bound for the Same
    Debt.

### UNIFORM ACTS DRAFTED AND APPROVED BY THE CONFERENCE, THE YEAR OF APPROVAL, AND THE NUMBER OF JURISDICTIONS ADOPTING EACH ACT.

| Name. | Year of approval. | No. of jurisdictions enacting. |
|---|---|---|
| Acknowledgments Act | 1892 | 9 |
| Acknowledgments Act, Foreign | 1914 | 7 |
| Aeronautics Act | 1922 | 8 |
| Bills of Lading Act | 1909 | 26 |
| Child Labor Act | 1911 | 4 |
| Cold Storage Act | 1914 | 6 |
| Conditional Sales Act | 1918 | 8 |
| Declaratory Judgments Act | 1922 | 6 |
| Desertion and Non-Support Act | 1910 | 18 |
| Extradition of Persons of Unsound Mind | 1916 | 8 |
| Fiduciaries Act | 1922 | 6 |
| Flag Act | 1917 | 9 |

| Name. | Year of approval. | No. of jurisdictions enacting. |
|---|---|---|
| Foreign Depositions Act........................ | 1920 | 10 |
| Fraudulent Conveyance Act.................... | 1918 | 12 |
| Illegitimacy Act ............................. | 1922 | 4 |
| Land Registration Act......................... | 1916 | 3 |
| Limited Partnership Act....................... | 1916 | 13 |
| Marriage and Marriage License Act............ | 1911 | 2 |
| Marriage Evasion Act......................... | 1912 | 5 |
| Negotiable Instruments Act.................... | 1896 | 51 |
| Occupational Diseases Act..................... | 1920 | — |
| Partnership Act ............................. | 1914 | 16 |
| Proof of Statutes Act......................... | 1920 | 7 |
| Sales Act .................................... | 1906 | 27 |
| Sales Act Amendments......................... | 1922 | 2 |
| Stock Transfer Act............................ | 1909 | 18 |
| Vital Statistics Act............................ | 1920 | 1 |
| Warehouse Receipts Act....................... | 1906 | 48 |
| Warehouse Receipts Act Amendments.......... | 1922 | 4 |
| Wills Act, Foreign Executed ................. | 1910 | 7 |
| Wills Act, Foreign Probated................... | 1915 | 4 |
| Workmen's Compensation Act.................. | 1914 | 2 |
| Total—30. | | |

An Act Relating to the Execution of Wills; approved 1892 and again in 1895.
> Adopted in Utah, with modifications, in 1907.
> Superseded in 1910 by Uniform Foreign Executed Wills Act which is identical with the old act of 1895.

An Act Relative to the Probate in this State of Foreign Wills; approved 1892 and again in 1895. Adopted in Massachusetts, Michigan, New York, Utah, * Washington, Wisconsin, Alaska.
> Superseded in 1915 by Uniform Foreign Probated Wills Act.

An Act as to Promissory Notes, Checks, Drafts, and Bills of Exchange (Day of Grace); approved 1892. Adopted in Indiana, Iowa, Maine, Philippine Islands.
> Superseded by the Uniform Negotiable Instruments Act.

A Table of Weights and Measures; approved 1892. Obsolete.

An Act to Establish a Law Uniform with the Laws of Other States Relative to Divorce Procedure and Divorce from the Bonds of Matrimony; approved 1900.
> Superseded in 1901 by the two following Acts:
> > An Act to Establish a Law Uniform with the Laws of Other States Relative to Migratory Divorce. Adopted in Wisconsin.
> > An Act to Establish a Law Uniform with the Laws of Other States Relative to Divorce Procedure and Divorce from the Bonds of Matrimony. Adopted in Delaware and Wisconsin.
> > The last two acts are superseded by An Act Regulating Annulment of Marriage and Divorce, approved in 1907.

An Act to Establish a Law Uniform with the Laws of Other States Relative to Insurance Policies; approved 1901. Obsolete.

Compulsory Work Act; approved 1918. Obsolete.

---

* Adopted with modifications.

**538**   COMMISSIONERS ON UNIFORM STATE LAWS.

LIST OF STATES SHOWING THE UNIFORM ACTS
ADOPTED THEREIN.

NOTE.—The star (*) indicates that the Uniform Act has been adopted with modifications.

**Alabama.**—Desertion and Non-Support Act (1915); Negotiable Instruments Act (1909); Warehouse Receipts Act (1915); Amendments to Warehouse Receipts (1923). Total, 4.

**Arizona.**—Bills of Lading Act (1921); Conditional Sales Act (1919); Flag Act (1919); Foreign Depositions Act (1921); Fraudulent Conveyance Act (1919); Negotiable Instruments Act (1913); Proof of Statutes Act (1921); Sales Act (1913); Warehouse Receipts Act (1921). Total, 9.

**Arkansas.**—Negotiable Instruments Act (1913); Stock Transfer Act (1923); Warehouse Receipts Act (1915). Total, 3.

**California.**—Bills of Lading Act (1915); Foreign Depositions Act (1923); Negotiable Instruments Act (1917); Warehouse Receipts Act (1909); Amendments to Warehouse Receipts Act (1923). Total, 5.

**Colorado.**—Declaratory Judgments Act (1923); Fiduciaries Act (1923); Negotiable Instruments Act (1897); Warehouse Receipts Act (1911); Amendments to Warehouse Receipts Act (1923). Total, 5.

**Connecticut.**—Bills of Lading Act (1911); Negotiable Instruments Act (1897); Sales Act (1907); Stock Transfer Act (1917); Warehouse Receipts Act (1907). Total, 5.

**Delaware.**—Aeronautics Act (1923); Conditional Sales Act (1919); Desertion and Non-Support Act * (1913); Fraudulent Conveyance Act (1919); Negotiable Instruments Act (1911); Warehouse Receipts Act (1917); Divorce Procedure Act of 1901; Annulment of Marriage and Divorce Act (1907). Total, 8.

**Florida.**—Negotiable Instruments Act (1997); Warehouse Receipts Act (1917). Total, 2.

**Georgia.**—Land Registration Act (1917).* Total, 1.

**Idaho.**—Bills of Lading Act (1915); Limited Partnership Act (1919); Negotiable Instruments Act (1903); Partnership Act (1919); Sales Act (1919); Warehouse Receipts Act (1915); Workmen's Compensation Act (1917).* Total, 7.

**Illinois.**—Bills of Lading Act (1911); Cold Storage Act (1917); Desertion and Non-Support Act * (1915); Extradition of Persons of Unsound Mind Act (1917); Foreign Probated Wills Act (1917); Limited Partnership Act (1917); Marriage Evasion Act (1915); Negotiable Instruments Act (1907); Partnership Act (1917); Sales Act (1915); Stock Transfer Act (1917). Total, 12.

**Indiana.**—Negotiable Instruments Act (1913); Stock Transfer Act (1923); Warehouse Receipts Act (1921). Total, 3.

**Iowa.**—Acknowledgments Act; Bills of Lading Act (1911); Negotiable Instruments Act (1902); Sales Act (1919); Warehouse Receipts Act (1907). Total, 5.

**Kansas.**—Desertion and Non-Support Act (1911); Foreign Executed Wills Act (1911); Negotiable Instruments Act (1905); Warehouse Receipts Act (1909). Total, 4.

**Kentucky.**—Child Labor Act (1914); Federal Pure Food Act; Negotiable Instruments Act (1904). Total, 3.

**Louisiana.**—Acknowledgments Act, Domestic (1920); Bills of Lading Act (1912); Divorce Statistics Act (1913); Extradition of Persons of Unsound Mind Act (1918); Federal Pure Food Act; Flag Act (1919); Fiduciaries Act (1924); Foreign Acknowledgments Act (1916); Foreign Depositions Act (1922); Foreign Probated Wills Act (1916); Marriage Evasion Act (1914); Marriage Statistics Act (1908); Negotiable Instruments Act (1904); Proof of Statutes Act (1922); Stock Transfer Act of 1902 (1904); Stock Transfer Act (1910); Warehouse Receipts Act (1909); Wills Act, Foreign Executed (1912). Total, 18.

**Maine.**—Bills of Lading Act (1917); Flag Act (1919); Negotiable Instruments Act (1917); Sales Act (1923); Warehouse Receipts Act (1917). Total, 5.

**Maryland.**—Bills of Lading Act (1910); Cold Storage Act (1916); Extradition of Persons of Unsound Mind Act (1918); Flag Act (1918); Foreign Acknowledgments Act (1916); Foreign Depositions Act, 1922; Foreign Executed Wills Act (1914); Fraudulent Conveyance Act (1920); Limited Partnership Act (1918); Negotiable Instruments Act (1898); Partnership Act (1916); Sales Act (1910); Stock Transfer Act (1910); Warehouse Receipts Act (1910). Total, 14.

**Massachusetts.**—Acknowledgments Act; Bills of Lading Act (1910); Child Labor Act (1913); Cold Storage Act (1912); Desertion and Non-Support Act * (1911); Foreign Probated Wills Act of 1895 (1911); Fraudulent Conveyance Act (1924); Limited Partnership Act (1923); Marriage and Marriage License Act * (1911); Marriage Evasion Act * (1913); Negotiable Instruments Act (1898); Partnership Act (1922); Sales Act (1908); Stock Transfer Act (1910); Warehouse Receipts Act (1907). Total, 15.

**Michigan.**—Acknowledgments Act (1895); Aeronautics Act (1923); Bills of Lading Act (1911); Flag Act (1923); Foreign Executed Wills Act (1911); Foreign Depositions Act (1921); Foreign Probated Wills Act of 1895 (1911); Fraudulent Conveyance Act (1919); Negotiable Instruments Act (1905); Partnership Act (1917); Proof of Statutes Act (1921); Sales Act (1913); Stock Transfer Act (1913); Warehouse Receipts Act (1909). Total, 14.

**Minnesota.**—Acknowledgments Act; Bills of Lading Act (1917); Fraudulent Conveyance Act (1921); Limited Partnership Act (1919); Negotiable Instruments Act (1913); Partnership Act (1921); Sales Act (1917); Warehouse Receipts Act (1913). Total, 8.

**Mississippi.**—Child Labor Act * (1914); Desertion and Non-Support Act (1920); Negotiable Instruments Act (1916); Warehouse Receipts Act (1920). Total, 4.

**Missouri.**—Bills of Lading Act (1917); Negotiable Instruments Act (1905); Warehouse Receipts Act (1913). Total, 3.

**Montana.**—Acknowledgments Act *; Negotiable Instruments Act (1903); Warehouse Receipts Act (1917). Total, 3.

**Nebraska.**—Negotiable Instruments Act (1905); Sales Act (1921); Warehouse Receipts Act (1909). Total, 3.

**Nevada.**—Aeronautics Act (1923); Bills of Lading Act (1923); Depositions Act (1921); Desertion and Non-Support Act (1923); Extradition of Persons of Unsound Mind Act (1917); Fiduciaries Act (1923); Foreign Acknowledgments Act (1917); Foreign Execution of Wills Act (1913); Foreign Probated Wills Act (1915); Illegitimacy Act (1923); Negotiable Instruments Act (1907); Proof of Statutes Act (1921); Sales Act (1915); Warehouse Receipts Act (1913). Total, 14.

**New Hampshire.**—Bills of Lading Act (1917); Foreign Acknowledgments Act (1917); Fraudulent Conveyance Act (1919); Negotiable Instruments Act (1909); Sales Act (1923). Total, 5.

540      COMMISSIONERS ON UNIFORM STATE LAWS.

**New Jersey.**—Annulment of Marriage and Divorce Act of 1907 (1907); Bills of Lading Act (1913); Conditional Sales Act (1919); Declaratory Judgment Act (1924); Desertion and Non-Support Act* (1917); Fraudulent Conveyance Act (1919); Limited Partnership Act (1919); Negotiable Instruments Act (1902); Partnership Act (1919); Sales Act (1907); Stock Transfer Act (1916); Warehouse Receipts Act (1907). Total, 12.

**New Mexico.**—Acknowledgments Act; Fiduciaries Act (1923); Illegitimacy Act* (1923); Negotiable Instruments Act (1907); Warehouse Receipts Act (1909). Total, 5.

**New York.**—Bills of Lading Act (1911); Conditional Sales Act (1922); Foreign Probated Wills Act of 1895 (1919); Limited Partnership Act (1922); Negotiable Instruments Act (1897); Partnership Act (1919); Sales Act (1911); Stock Transfer Act (1913); Warehouse Receipts Act (1907). Total, 9.

**North Carolina.**—Bills of Lading Act (1919); Fiduciaries Act (1923); Negotiable Instruments Act (1899); Warehouse Receipts Act (1917). Total, 4.

**North Dakota.**—Acknowledgments Act*; Aeronautics Act (1923); Declaratory Judgments Act (1923); Desertion and Non-Support Act (1911); Illegitimacy Act* (1923); Negotiable Instruments Act (1899); Sales Act (1917); Warehouse Receipts Act (1917). Total, 8.

**Ohio.**—Bills of Lading Act (1911); Negotiable Instruments Act (1902); Sales Act (1908); Stock Transfer Act (1911); Warehouse Receipts Act (1908). Total, 5.

**Oklahoma.**—Negotiable Instruments Act (1909); Warehouse Receipts Act (1915). Total, 2.

**Oregon.**—Negotiable Instruments Act (1899); Sales Act (1919); Warehouse Receipts Act (1913). Total, 3.

**Pennsylvania.**—Bills of Lading Act (1911); Declaratory Judgments Act (1923); Depositions Act (1921); Fiduciaries Act (1923); Fraudulent Conveyance Act (1921); Limited Partnership Act (1917); Negotiable Instruments Act (1901); Partnership Act (1915); Proof of Statutes Act (1921); Sales Act (1915); Stock Transfer Act (1911); Warehouse Receipts Act (1909). Total, 12.

**Porto Rico.**—Warehouse Receipts Act (1919). Total, 1.

**Rhode Island.**—Bills of Lading Act (1914); Negotiable Instruments Act (1899); Sales Act (1908); Stock Transfer Act (1912); Warehouse Receipts Act (1908). Total, 5.

**South Carolina.**—Negotiable Instruments Act (1914). Total, 1.

**South Dakota.**—Conditional Sales Act (1919); Depositions Act (1921); Extradition Act (1921); Flag Act (1923); Fraudulent Conveyance Act (1919); Illegitimacy Act (1923); Negotiable Instruments Act (1913); Partnership Act (1923); Sales Act (1921); Stock Transfer Act (1921); Warehouse Receipts Act (1913). Total, 11.

**Tennessee.**—Acknowledgments Act (1919); Acknowledgments Act, Foreign (1921); Aeronautics Act (1923); Cold Storage Act (1919); Declaratory Judgments Act (1923); Extradition of Persons of Unsound Mind Act (1917); Flag Act (1923); Foreign Depositions Act (1923); Fraudulent Conveyance Act (1919); Limited Partnership Act (1919); Negotiable Instruments Act (1899); Partnership Act (1917); Proof of Statutes Act (1923); Sales Act (1919); Amendments to Sales Act (1923); Stock Transfer Act (1917); Warehouse Receipts Act (1909). Total, 17.

**Texas.**—Desertion and Non-Support Act (1913); Negotiable Instruments Act (1919); Warehouse Receipts Act (1919). Total, 3.

**Utah.**—Aeronautics Act (1923); Child Labor Act* (1915); Cold Storage Act (1917); Desertion and Non-Support Act (1915); Foreign Executed Wills Act* (1907); Foreign Probated Wills Act of 1895; Land Registration Act (1917); Limited Partnership Act (1921); Negotiable Instruments Act (1899); Partnership Act (1921); Sales Act (1917); Warehouse Receipts Act (1911). Total, 12.

**Vermont.**—Aeronautics Act (1923); Bills of Lading Act (1915); Desertion and Non-Support Act (1915); Marriage Evasion Act (1912); Negotiable Instruments Act (1912); Sales Act (1921); Amendments to Sales Act (1923); Warehouse Receipts Act (1912); Amendments to Warehouse Receipts Act (1923). Total, 9.

**Virginia.**—Desertion and Non-Support Act* (1915); Land Registration Act (1916); Limited Partnership Act (1918); Negotiable Instruments Act (1897); Partnership Act (1918); Stock Transfer Act (1924); Warehouse Receipts Act (1908). Total, 7.

**Washington.**—Bills of Lading Act (1915); Flag Act (1919); Foreign Probated Wills Act of 1895 (1911); Negotiable Instruments Act (1899); Warehouse Receipts Act (1913). Total, 5.

**West Virginia.**—Conditional Sales Act (1921); Desertion and Non-Support Act (1917); Negotiable Instruments Act (1907); Vital Statistics Act (1921) *; Warehouse Receipts Act (1917). Total, 5.

**West Virginia.**—Conditional Sales Act (1921); Desertion and Non-Support Act (1917); Negotiable Instruments Act (1907); Vital Statistics Act (1921) *; Warehouse Receipts Act (1917). Total, 5.

**Wisconsin.**—Bills of Lading Act (1917); Cold Storage Act (1917); Conditional Sales Act (1919); Desertion and Non-Support Act (1911); Extradition of Persons of Unsound Mind Act (1919); Foreign Acknowledgments Act (1915); Foreign Probated Wills Act (1915); Fraudulent Conveyance Act (1919); Limited Partnership Act (1919); Marriage and Marriage License Act (1917); Marriage Evasion Act (1915); Migratory Divorce Act of 1901; Divorce Procedure Act of 1901; Annulment of Marriage and Divorce Act of 1907 (1909); Negotiable Instruments Act (1899); Partnership Act (1915); Sales Act (1911); Stock Transfer Act (1913); Warehouse Receipts Act (1909). Total, 20.

**Wyoming.**—Declaratory Judgments Act (1923); Desertion and Non-Support Act (1915); Negotiable Instruments Act (1905); Partnership Act (1917); Sales Act (1917); Warehouse Receipts Act (1917). Total, 6.

**Alaska.**—Acknowledgments Act, Foreign (1915); Bills of Lading Act (1913); Conditional Sales Act (1919); Desertion and Non-Support Act* (1915, 1919); Extradition of Persons of Unsound Mind Act (1923); Foreign Depositions Act (1923); Foreign Executed Wills Act (1913); Foreign Probated Wills Act of 1895 (1913); Limited Partnership Act (1917); Negotiable Instruments Act (1913); Partnership Act (1917); Proof of Statutes Act (1923); Sales Act (1913); Stock Transfer Act (1913); Warehouse Receipts Act (1913). Total, 15.

**District of Columbia.**—Negotiable Instruments Act (1899); Warehouse Receipts Act (1910). Total, 2.

**Hawaii.**—Aeronautics; Desertion and Non-Support Act* (1913); Negotiable Instruments Act (1907); Workmen's Compensation Act. Total, 4.

**Philippine Islands.**—Bills of Lading Act; Negotiable Instruments Act (1911); Warehouse Receipts Act (1912). Total, 3.

542        COMMISSIONERS ON UNIFORM STATE LAWS.

## LIST OF ACTS SHOWING THE STATES WHEREIN ADOPTED.

NOTE.—The star (*) indicates that the Uniform Act has been adopted with modifications.

**Acknowledgments Act.**—Iowa, Louisiana, Massachusetts, Michigan, Minnesota, * Montana, New Mexico, * North Dakota, Tennessee. Total, 9.

**Acknowledgments Act, Foreign.**—Louisiana, Maryland, Nevada, New Hampshire, Tennessee, Wisconsin, Alaska. Total, 7.

**Aeronautics Act.**—Delaware, Hawaii, Michigan, Nevada, North Dakota, Tennessee, Utah, Vermont. Total, 8.

**Bills of Lading Act.**—Arizona, California, Connecticut, Idaho, Illinois, Iowa, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, Vermont, Washington, Wisconsin, Alaska, Philippine Islands. Total, 26.

**Child Labor Act.**—Kentucky, Massachusetts, * Mississippi, * Utah. Total, 4.

**Cold Storage Act.**—Illinois, Maryland, * Massachusetts, Tennessee, Utah, Wisconsin. Total, 6.

**Conditional Sales Act.**—Arizona, Delaware, New Jersey, New York, South Dakota, West Virginia, Wisconsin, Alaska. Total, 8.

**Declaratory Judgments Act.**—Colorado, New Jersey, North Dakota, Pennsylvania, Tennessee, Wyoming. Total, 6.

**Desertion and Non-Support Act.**—Alabama, * Delaware, * Hawaii, * Illinois, Kansas, North Dakota, Massachusetts, Mississippi, Nevada, * New Jersey, Texas, Utah, * Virginia, Vermont, West Virginia, Wisconsin, Wyoming, * Alaska. Total, 18.

**Extradition of Persons of Unsound Mind Act.**—Alaska, Illinois, Louisiana, Maryland, Nevada, South Dakota, Tennessee, Wisconsin. Total, 8.

**Fiduciaries Act.**—Colorado, Louisiana, Nevada, New Mexico, North Carolina, Pennsylvania. Total, 6.

**Flag Act.**—Arizona, Louisiana, Maine, Maryland, Michigan, South Dakota, Tennessee, Washington, Wisconsin. Total, 9.

**Foreign Depositions Act.**—Alaska, Arizona, California, Louisiana, Maryland, Michigan, Nevada, Pennsylvania, South Dakota, Tennessee. Total, 10.

**Fraudulent Conveyance Act.**—Arizona, Delaware, Maryland, Massachusetts, Michigan, Minnesota, New Hampshire, New Jersey, Pennsylvania, South Dakota, Tennessee, Wisconsin. Total, 12.

**Illegitimacy Act.**—Nevada, * New Mexico, * North Dakota, South Dakota. Total, 4.

**Land Registration Act.**—* Georgia, Utah, Virginia. Total, 3.

**Limited Partnership Act.**—Idaho, Illinois, Maryland, Massachusetts, Minnesota, New Jersey, New York, Pennsylvania, Tennessee, Utah, Virginia, Wisconsin, Alaska. Total, 13.

**Marriage and Marriage License Act.**—* Massachusetts, Wisconsin. Total, 2.

**Marriage Evasion Act.**—Illinois, Louisiana, * Massachusetts, Vermont, Wisconsin. Total, 5.

**Negotiable Instruments Act.**—Adopted in all jurisdictions except Georgia and Porto Rico; adopted with modifications in Vermont. Total, 51.

**Partnership Act.**—Idaho, Illinois, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New York, Pennsylvania, South Dakota, Tennessee, Utah, Virginia, Wisconsin, Wyoming, Alaska. Total, 16.

**Proof of Statutes Act.**—Alaska, Arizona, Louisiana, Michigan, Nevada, Pennsylvania, Tennessee. Total, 7.

**Sales Act.**—Arizona, Connecticut, Idaho, Illinois, Iowa, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nebraska, Nevada, New Hampshire, New Jersey, New York, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Wisconsin, Wyoming, Alaska. Total, 27.

**Amendments to Sales Act.**—Tennessee, Vermont. Total, 2.

**Stock Transfer Act.**—Arkansas, Connecticut, Illinois, Indiana, Louisiana, Maryland, Massachusetts, Michigan, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, South Dakota, Tennessee, Virginia, Wisconsin, Alaska. Total, 18.

**Vital Statistics Act.**—* West Virginia (1921). Total, 1.

**Warehouse Receipts Act.**—Adopted in all jurisdictions except Georgia, Kentucky, New Hampshire, South Carolina, Hawaii. Total, 48.

**Amendments to Warehouse Receipts Act.**—Alabama, California, Colorado, Vermont. Total, 4.

**Wills Act, Foreign Executed (Act of 1910).**—Kansas, Louisiana, Maryland, Michigan, Nevada, * Utah, Alaska. Total, 7.

**Wills Act, Foreign Probated (Act of 1915).**—Illinois, Louisiana, Nevada, Wisconsin. Total, 4.

**Workmen's Compensation Act.**—Idaho, Hawaii. Total, 2.

18

# ADDRESS OF THE PRESIDENT.

## NATHAN WILLIAM MacCHESNEY,

### OF ILLINOIS.

Nowhere else in the United States could the National Conference of Commissioners on Uniform State Laws more appropriately hold an Annual Conference than in Philadelphia. It was in this historic city that the Declaration of Independence and the Constitution of the United States were written, and just as the deliberations of those bodies resulted in the birth and form of our nation, as we know it, so the deliberations of the National Conference are giving character and substance to the principles therein enunciated. No other body in this country is giving more continued attention or is engaged in a more important work for the preservation of the structure of our government as we know it than is the National Conference of Commissioners on Uniform State Laws.

The members of this Conference do not need to be reminded of the fact but it is well to recall to the less well informed public the philosophy underlying the movement for Uniform State Laws which has been fathered and furthered by this body. Again for the benefit of those not familiar with the movement, I am taking the liberty of recalling to their minds the origin, history and achievements of the Conference as set forth in its handbook, and in the A. B. A. Reports, Vol. XLVII (1922), at pages 691-4.

A tabulation of the Uniform Acts drafted and approved by the Conference, the year of approval, and the number of jurisdictions adopting each act, appears annually in the A. B. A. Reports. (See 1924 tabulation, *infra,* pages 536-543.)

The real significance of this tabulation will perhaps be made more apparent when it is noted that, while the total legislative output is 30 Uniform Acts, because of the theory on which the Conference is organized, it has resulted in 346 legislative enactments. In addition to these acts which have been given final

Case 2:14-cv-02626-TLN-DB   Document 52-4   Filed 12/05/16   Page 26 of 51

approval by the Conference numerous other subjects have from time to time been given consideration. Acts have been prepared and adopted which have been subsequently declared obsolete or superseded, as stated, or which have been finally rejected and refused approval. There are twenty-three additional subjects in connection with which Uniform Acts now are being considered. These subjects are as follows:

1. An Act to Validate Certain Written Transactions Without Consideration and to Make Uniform the Law Relating Thereto.
2. An Act to Validate Transactions Between a Person Acting on His Own Behalf and the Same Person Acting Jointly with Others and to Make Uniform the Law Relating Thereto.
3. An Act Concerning the Discharge of Obligors Bound for the Same Debt and to Make Uniform the Law in Regard Thereto.
4. Uniform Sale of Securities Act.
5. Uniform State Trade-Mark Act.
6. Uniform Trust Receipts Act.
7. Uniform Incorporation Act.
8. Uniform Real Estate Mortgage Act.
9. Uniform Chattel Mortgage Act.
10. Uniform Acknowledgment of Instruments Act.
11. Uniform Arbitration Act.
12. Uniform Act Governing the Use of Highways by Vehicles.
13. Uniform Act for Compacts and Agreements Between States.
14. Uniform Act for Securing Compulsory Attendance of Non-Resident Witnesses in Civil and Criminal Cases.
15. Uniform Drug Act.
16. Uniform Act for the Extradition of Persons Charged with Crime.
17. Uniform Act for Tribunal to Determine Industrial Disputes.
18. Uniform Act for One Day's Rest in Seven.
19. Uniform Act for Joint Parental Guardianship of Children.
20. Uniform Child Labor Act. (Revision.)
21. Uniform Aviation Act. (Question as to title to superincumbent air.)
22. Uniform Primary Act for Federal Officers.
23. Uniform Act to Regulate the Sale and Possession of Firearms.

Drafts of acts with reference to certain of these subjects were considered at the last Annual Conference and referred back to the various committees for consideration and report at this Conference as follows:

Uniform [Real Estate] Mortgage Act.
Uniform Chattel Mortgage Act.
Uniform Arbitration Act.
Uniform Act for Joint Parental Guardianship of Children.
Uniform Act for Compulsory Attendance of Non-Resident Witnesses.
Uniform Sale of Securities Act.

The committees having these several matters in charge will each of them present new drafts of the acts referred to them for further consideration except the Committees on Joint Pa-

rental Guardianship of Children and for Compulsory Attendance of Non-Resident Witnesses.

Last year in my annual address I made a departure from the practice theretofore pursued, in that I undertook to review for the Conference the accomplishments of its committees, following the preceding Annual Conference. This seems so useful a procedure both for bringing before the Conference in one place the work of its various committees and informing those interested in our work but not familiar with it as to the extent of the accomplishment of this body that I am undertaking to pursue a similar method this year. So far as this work has been one of accomplishment, the credit is due to the indefatigable industry of some of the Chairmen and the loyalty and devotion to the work in which we are engaged, upon the part of our committees having the various matters in charge.

Unfortunately, due to the early date at which the present Conference is held it has prevented the committee reports being available at a date early enough to make this review as critical as I should like to have it and has prevented me from including some of the reports which have not been available prior to the actual calling together of the Conference. Those which have been distributed to the members of the Conference, in accordance with the rules, in advance of this meeting, or which are available for this purpose and which I can include therefore in this review are as follows:

## A. EXECUTIVE COMMITTEE.

Mr. George B. Young, notwithstanding the very hard year which he has had and the great loss which he has sustained in the death of Mrs. Young, has given continuing attention to the work of the committee and has submitted a report for it covering in detail the work of the Executive Committee since the last Annual Conference and making certain specific recommendations which are before you. Two committees to which he calls attention I desire to comment on, namely:

1. That having to do with the Code of Criminal Procedure. This was referred to the National Conference by the American Bar Association upon the understanding that we were to undertake the drafting of such a code provided that through their co-operation we succeeded in secur-

ing an adequate fund for the purpose from the Commonwealth Fund or other sources. It having been impossible to do this, however, I have as President of this Conference, without waiting for formal action, referred the matter back to the American Bar Association with a statement that we regret we cannot undertake the work but that because of failure to secure funds which was the basis upon which it was referred to us we are returning it to them for such further action as they may deem best, with the hope, however, that adequate funds may be secured and the matter then re-referred to the National Conference when it will be willing to undertake the task.

2. The President was authorized to appoint such committees as he might deem wise in connection with the London meeting. After full consideration of this matter it seemed unwise to attempt separately from the American Bar Association to appoint any special committees and I have therefore not done so. It is to be hoped that the members of this Conference, however, will, in connection with this trip abroad, take occasion to observe anything which may be of interest to it and that those who are privileged to go may come back with new ideas which shall help us in the promotion of the work in which we are engaged.

Mr. Young in his report has stated:

> While there is a growing interest in this movement among the law organizations of the country there is also, I regret to say, a great deal of opposition or lack of faith in the movement on the part of many lawyers of prominence and influence. If the movement is to succeed an active effort must be made, it seems to me, to bring together in active co-operation and support all the agencies interested in the movement so that there may be a uniting of resources for the purpose of putting forth the effort necessary to have all the states actively engaged in the work.

Mr. Young also calls attention to the plan suggested by Judge Dunn of Oakland, California, for a conference made up of permanent commissioners. This plan, in so far as it will cause a conflict between the newly created commissioners and the National Conference, would be very unfortunate, but I have had some correspondence with Judge Dunn and believe that the general plan which he suggests should be given serious consideration as it would be possible to create a permanent commission on Uniform State Laws which would be in the nature of a Secretariat to the National Conference. The permanent commission would then be responsible for gathering the data, studying the need for a proposed act, and preparing preliminary drafts and submitting its reports to the National Conference for action, criticism, debate and recommendation.

I would recommend that further consideration be given this general plan to see whether or not some such permanent commission attached and subordinate to the National Conference might not enable us to secure more adequate funds than so far

has been done to carry on the important work in which we are engaged.

This is of particular importance because of the continuing necessity of increasingly careful work in the matters which we undertake concerning which Mr. Young states in closing his report:

> The standing which the Conference has heretofore had and which its acts have received has been due to the very careful and skillful manner in which these acts have been prepared and put out. It is far more important that any act which the Conference approves be clearly, accurately and properly drafted than that it be put out hastily. No more serious error can be made on the part of the Conference than to put out an act before it is in the best possible form both as to substance and expression.

### B. Scope and Program.

This committee has held a session on the eve of the meeting of this Annual Convention and has given consideration to certain matters which have been referred to it. One of these matters is a request from the Chamber of Commerce of the United States that consideration be given to the desirability of preparation of an act to raise the standards of commerce by prohibiting practices which result in fraud upon the public and unfair competition to legitimate merchants. In view of the source of this suggestion, it is believed that the desirability of such legislation should be given serious consideration and if possible work be undertaken along this line.

### C. Publicity.

No report has been received from this committee up to the time of the meeting of the Conference. It is believed that this committee should devote itself not merely to the announcement to the public of results accomplished but to a continuing educational program so that the Courts, the Bar, and the members of our legislatures may become cognizant of the work that is being done, and assist in securing adequate appropriations for the prosecution of the work and in securing passage of the acts as recommended to the country.

### D. Legislative Committee.

This year has been an off legislative year with only nine states holding legislative sessions. The Legislative Committee has

followed the matter up and its report shows the following situation this last year with reference to our legislation:

1. Three states have adopted Uniform Acts, namely:
(a) Massachusetts—
    Massachusetts has adopted the Fraudulent Conveyance Act, making 12 states which have adopted that act since its approval by this Conference in 1918.
(b) New Jersey—
    New Jersey has adopted the Declaratory Judgments Act, making six states which have adopted that act since its approval by this Conference in 1922.
(c) Louisiana—
    Louisiana has adopted the Fiduciaries Act, making six states which have adopted that act since its approval by this Conference in 1922.
2. Reports of Louisiana and Georgia were not available at the time of the committee report but there is a possibility of further adoptions in Louisiana at least where the Senate has reported favorably upon the Fiduciaries Act.

Again I wish to express the appreciation of the Conference for the painstaking and effective work done under the direction of Mr. Voorhees, as Chairman of this committee.

## E. Appointment and Attendance of Commissioners.

The Chairman of this committee has been in constant correspondence upon this matter and as a result the National Conference representation is kept reasonably complete. There are at the present time five vacancies.

## I. Committee on Legislative Drafting.

This committee does not make any specific recommendations in its report but gives an interesting and helpful review of some of the considerations which should enter into the drafting of statutes.

In this connection may I call the attention of the committee and of the Conference to the work that has been done in this field from year to year both in our own committee and under the auspices of the American Bar Association and express the hope that under the guidance of the National Conference which has had so large an experience in this field that some practical suggestions may be worked out in concrete form for the improvement of statutory legislation in this country.

## II. COMMITTEE ON UNIFORMITY OF JUDICIAL DECISIONS.

Neither I nor the Conference, I am sure, can think of this committee without thinking of the herculean work done in this field by our late lamented colleague Hon. Charles Thaddeus Terry. Last year his death had been so recent that the committee had not been able to reorganize under the Chairmanship of Judge Hargest to carry on the work but this year the committee has a very full report which brings the annotations up to January 1, 1924, upon certain Uniform Acts named in the report and the committee expresses the hope that it will have all of the annotations completed to that date by the time of the next annual report. Attention is called to certain recommendations contained in the report, as follows:

1. The committee deals with the question of securing citation of the Uniform Acts by original section numbers as well as by the sections of the statutes as adopted and sets forth a plan suggested by Mr. C. Willard Smith, vice-president of the West Publishing Company, for accomplishing that end which would result not only in making the annotation of these acts much simpler but in calling attention to the uniform character of the acts considered.

2. The committee calls attention to its recommendation found on pages 138 and 139 of its report of 1923, that the Commissioners send to the judges of their respective states a letter similar to that sent to the judges of the State of Pennsylvania by the Pennsylvania Commissioners and urges the Commissioners who have not done so to communicate in the same manner to the judiciary of their respective states.

3. The committee calls attention to the fact that the annotations of the Uniform Acts by the committee under the Chairmanship of Mr. Terry showed the decisions under each act arranged by states, whereas the present report arranges them and thinks it is more useful to so arrange the decisions under each act by sections. It is submitted in this form this year subject to the approval of the Conference as to subsequent years. I recommend the careful consideration of this change as it seems to greatly facilitate the use of the annotations in a way that is most useful, namely, when actual questions are being investigated.

## III. INTER-STATE COMITY COMMITTEE.

Mr. Hugh H. Brown, Chairman of this committee, I regret to say, has been ill during the year and has resigned from the Conference. No report of this committee is available and, so far as I know, it has not held a meeting or given consideration to any of the matters within its jurisdiction since the last Annual Conference.

Case 2:14-cv-02626-TLN-DB   Document 52-4   Filed 12/05/16   Page 32 of 51

## IV. CO-OPERATION WITH OTHER ORGANIZATIONS INTERESTED IN UNIFORM STATE LAWS.

Due to the resignation of Mr. Williams, of Maryland, from the Conference this committee has not carried out the program outlined for it by the Executive Committee last year. It is believed that this is another of our committees which has large possibilities in connection with the education of national organizations on the work being done by this Conference and the desirability of co-operating with it both in financing its work and in promoting the passage of its acts.

The requests received from the Investment Bankers Association of America in connection with our Uniform Sales of Securities Act and from the Chamber of Commerce of the United States of America in requesting action by us in connection with some matters in which it is interested show the desire of these organizations to co-operate with us if some plan can be worked out so they can be advised as to the work being done and the method by which they can co-operate.

## V. CO-OPERATION WITH AMERICAN LAW INSTITUTE.

Attention is called to the fact that the submission of the report of this committee marks the beginning of a new plan of work for this Conference, as the committee report states:

At the last Annual Conference a committee was constituted for the purpose of co-operating with the American Law Institute; and it was voted that this committee might in furtherance of the work of the institute present drafts of acts directly to the Conference at its next session. The object of the Conference in passing the vote was to avoid the necessity of a year's delay by referring to the Committee on Scope and Program Legislation which might seem important in the work on which the American Law Institute was engaged. . . .

As a result of this plan we have before us for the first time certain acts which have not been initiated within the Conference, passed upon by the Scope and Program Committee, or referred to our own committees but come to the floor direct for consideration by the Conference itself on a first tentative draft. The acts presented under this plan are:

1. An Act to Validate Certain Written Transactions Without Consideration, and to Make Uniform the Law Relating Thereto.
   This act is intended to furnish a substitute for the old method of validating by the attachment of a seal and it would seem to be useful for the purpose of making the law uniform on this subject. A note gives the state of the law in the various states.

2. An Act to Validate Transactions Between a Person Acting on His Own Behalf and the Same Person Acting Jointly with Others, and to Make Uniform the Law Relating Thereto.

This is intended to work out certain legal questions connected with the situation where an individual is acting or interested in different capacities and a note explains the precise situation involved.

3. An Act Concerning the Discharge of Obligors Bound for the Same Debt and to Make Uniform the Law in Regard Thereto.

This act is intended to do away with the injustices worked under the laws as they now stand in various jurisdictions in reference to joint and several obligations, and a very full note reviews the precise situation in each of the states of the union with regard to this important subject. This act seems to be of particular importance and it is hoped the members of the Conference will give it careful consideration.

## VI. Co-operation with National Association of Insurance Commissioners.

It is desirable to continue a means of contact with this important interest but so far as I know this committee has not during the year been called upon to give any consideration to the subject matter.

## 1. Committee on Uniform Commercial Acts.

The committee states it has had under consideration the following three subjects:

1. Revision of draft of Uniform Sale of Securities Act.
2. Proposed Uniform State Trade-Mark Act.
3. Proposed Uniform Trust Receipts Act.

With reference to these acts the committee recommends as follows:

1. Uniform Sale of Securities Act.

The committee calls attention to the debate upon this subject last year, to the hearings had since the last Annual Conference, particularly to the question of exemption of certain high-grade mortgage securities and recommends that the Second Tentative Draft of the Uniform Sale of Securities Act submitted be given such consideration at this Conference that it may receive final approval.

With reference to this act there has been a wide-spread discussion and comment upon certain of its provisions. Your President believes that both the Conference and committee has given full consideration to the views presented and that they will have adequate consideration in the debate upon the act submitted before final approval.

Attention should be called to the certain representations made, however, in order that they may be given due weight before final action is taken. When that has been done I concur in the recommendation of the committee that every effort should be made to

finally approve the act at the present session. Among the representations made with reference to the draft submitted were:

I. The Chicago Mortgage Bankers Association and its counsel as well as the counsel for certain national mortgage issues have stated and believe that there is a sufficient difference in the character of the bond issues handled by the larger houses and those which it is attempted to cover to make it desirable that special provisions should be made for exemption. The committee disagrees with this position after having given full consideration to it. I merely call attention to the suggestion so that the Conference may have it clearly in mind.

II. The National Association of Securities Commissioners and the Investment Bankers Association have gone on record as being opposed to the recommendation of the draft in its present form for adoption by the various states, primarily on the ground that it fails to provide for a preliminary or tentative approval of issues, claiming that it would hamper if not prevent the legitimate underwriting of securities by the reputable bond houses of the country as now conducted. Mr. Barrett Wendell, Jr., the Chairman of the Legislative Committee of the Investment Bankers Association has specifically stated the following objections from his standpoint to our bill as it now stands:

" 1. The bill does not contain a provision for preliminary approval and the Blue Sky Commissioners themselves have seen the absolute necessity of having this as shown by its initiative in amending many acts in the last year or two.

" 2. The bill does not take care of outstanding securities. This directly affects the investor who may have held securities for a number of years and then desires to dispose of them and cannot do so because the broker to whom he sells cannot resell them.

" 3. The clause exempting Public Utilities is not as broad as it might be because experience has proven that where rates are regulated even though the securities themselves are not passed on, fraud does not exist.

" 4. There is nothing in the bill exempting the sale of real estate bonds which practically makes it impossible on account of expense to market the small local issues of $50,000 or $100,000.

" 5. There is no provision in the bill exempting from qualification securities of seasoned Industrials.

It is extraordinarily difficult to provide a system whereby preliminary approval may be given independently of the investigation required by the act. Nevertheless it is believed that it is possible to have certain of the information furnished and preliminary approval given in such a way as to facilitate the offering of securities on a given date subject to the furnishing of the full information and final approval later where the houses offering the same are of a character that can be determined and the issues are such that there is an inherent probability that they are not subject to the objections which the " Blue Sky Legislation " was created to meet.

In view of the widespread influence of the Investment Bankers' Association and the importance of the interests it represents it is believed that the Conference should give sufficient time to the committee having this matter in charge to thoroughly thresh out the questions involved so it cannot fairly be stated, whether the Conference agrees with the position of the Invest-

ment Bankers' Association or not, that it has not given full consideration to those views before deciding not to adopt them.

2. Uniform State Trade-Mark Act.

This is a matter which was referred to the National Conference by the American Bar Association upon recommendation of its Committee on Uniform State Trade-Mark Law. Our committee now reports that it is its judgment that it would not be advisable to attempt to frame a Uniform State Trade-Mark Act until the federal legislation has been revised as contemplated by the bill approved by the American Bar Association for introduction in Congress. The committee states:

"The Uniform State Act when framed will cover only a very limited field and it seems to your committee that it should wait until the proposed law was passed and the Uniform State Trade-Mark Law should be framed so as to be in entire harmony with the federal law after its adoption."

The Chairman of the American Bar Association Committee, Mr. Edward S. Rogers, concurs in this opinion though believing that the various state laws are urgently in need of revision. He therefore recommends that further action on its part on the proposed Uniform State Trade-Mark Act be deferred until the federal revision takes place. It is therefore recommended that this matter be re-referred to our committee on the subject for a report from year to year upon the matter so that the National Conference may keep in touch with the developments and that report be made to the American Bar Association as to the reasons for the postponement of action upon its request for a Uniform State Trade-Mark Act.

3. Uniform Trust Receipts Act.

The committee requested Mr. Carl N. Llewellyn, of the Yale University School of Law, to make a report on this subject to the committee, a copy of which report is appended to the report of the committee which states it presents it not as its finding but for the consideration of the committee itself. Apparently there are some difficult questions involved in the preparation of an act upon the subject and further consideration of the subject matter will be necessary before a draft can be prepared or presented. It is recommended that the matter be referred back to the committee for continued study and presentation of a tentative draft at the earliest possible date as it is believed that the legislation is needed at once.

## 2. UNIFORM INCORPORATION ACT.

The matter of the Uniform Incorporation Act has been pending before this Conference for years. A very large amount of work was done on it by the late Charles Thaddeus Terry, who was Chairman of the committee, and eight tentative drafts have been submitted and discussed by this Conference. The present committee under the Chairmanship of Commissioner Millis, of Michigan, has given untiring attention to the subject during the year and has had the assistance of an able draughtsman, Professor Stevens, of Cornell, in the preparation of the Ninth Tentative Draft, which the committee is submitting to this

Conference for consideration. The printed report of the committee is not available to me at the time I write this but I have been present at meetings of the committee, have discussed the matter numerous times with the Chairman, have had considerable correspondence with the draughtsman and have read and studied the drafts submitted in detail. It is my judgment that the act is an improvement over any incorporation act that has heretofore been submitted to this Conference or can be found in any single jurisdiction. I urge the Conference at its preesnt session to give serious consideration to the draft submitted, with the hope that it may finally dispose of this matter and recommend it to the country for passage by the legislatures in 1925 or 1926 at the latest. It will never be possible to get all of the states to agree upon the theory of an incorporation act, as some of the states will always adhere to the conservative policy of encouraging corporate management, other states will always incline toward a strict regulation of corporations, while a third group will regard incorporation as a mere revenue producing procedure. All three of these groups can hardly be gotten together, but there is a possibility, in my judgment, and I believe the present draft accomplishes that end, of bringing the reasonable requirements of the first and second groups together in such a way as to present a satisfactory law.

### 3. UNIFORM [REAL ESTATE] MORTGAGE ACT.

The committee on this subject presents another draft of a Uniform [Real Estate] Mortgage Act this year in such form that it hopes it may receive final approval as to all of its parts except that which provides for foreclosure by action. This committee and its draughtsman, Mr. Bridgman, have reviewed this entire subject again upon all of the questions raised, held committee meetings for thorough discussion of the points involved and are convinced that the act it now presents fully meets the requirements of the Conference and is worthy of its endorsement.

This subject has been pending before this Conference many years, having originally been taken up upon the request of the National Association of Real Estate Boards and it is highly

important that if the act impresses the Conference as being in such condition as to merit endorsement final action should be taken now as further delay will result in other organizations interested undertaking to and presenting an act which will not compare with the work now before this Conference for consideration as the result of the labors of its own committee. I strongly recommend sufficient consideration of this act at this Conference to assure its final passage.

### 4. UNIFORM CHATTEL MORTGAGE ACT.

The Chairman of this committee, Commissioner Hogan, has been in correspondence on this subject and Mr. Llewellyn, of Yale, has been acting as draughtsman for the committee, but owing to unavoidable delays neither the report nor any draft is available at the time that I write. However, I am advised that a meeting of this committee is being held at the present time and that it will be prepared to report to the Conference with reference to the subject matter submitted to it.

### 5. UNIFORM ACKNOWLEDGMENT ACT.

No report has been submitted to me by this committee and I have not been able to secure any information as to what action has been taken with reference to the subject matter submitted to it.

### 6. UNIFORM ARBITRATION ACT.

The Conference will recollect that this committee had an act which was given consideration last year but which, under all the circumstances, it was deemed wise to refer back to the committee for further consideration and report. The committee has given thorough consideration to the entire subject since the last Annual Conference and presents this year a draft of an act which is believed to clearly present the views of the National Conference as expressed last year. It will be recalled that this is a subject referred to us by the American Bar Association and if at all possible the National Conference should take action on the act this year in order that its act may be available for the large number of legislative sessions which will be held in 1925.

The committee submits, with the draft presented, copies of the Arbitration Act of the State of New Jersey which is based upon but perfects the New York Act and the Illinois Act and calls attention to the real question involved in the controversy with reference to this type of legislation, namely:

"This question of Commercial Arbitration is really divided into two schools in this country, viz.: that which holds that an agreement to arbitrate any controversy may be made before the controversy arises, and that which believes that the agreement to arbitrate should be confined to controversies which have arisen. The line of cleavage is very clear. New York and New Jersey have passed laws which have been held constitutional which permit parties to agree in advance to arbitrate any difficulties that may arise in the future in connection with the contract. Illinois on the other hand limits the agreement to arbitrate to controversies which have arisen. . . ."

The committee explains why it believes there is a real difference in the demand as to the type of legislation in the different parts of the country and recommends to the Conference the passage of a law:

"which would permit two or more parties to agree in writing to submit to arbitration for any controversy existing between them at the time the agreement to submit to arbitration is entered into."

From my observation of the actual work under the Illinois Act and the feeling of our merchants and business men with reference to the plan therein provided, it is my judgment that the committee has reached the correct solution and I urgently commend to the Conference serious consideration of the draft as presented and express the hope as heretofore stated that we may be able to make a report to the American Bar Association this year on the reference made to us upon this subject two years ago.

### 7. COMMITTEE ON UNIFORM ACT GOVERNING THE USE OF HIGHWAYS BY VEHICLES.

The National Conference has had a committee on this subject for a good many years but because of the growing state of the law upon the subject, the difficulties attendant upon reaching a conclusion and the very considerable labor involved in accumulating the data, nothing had been done upon the draft of a uniform law covering this subject as a whole until Commissioner Beers was appointed Chairman. The committee dur-

ing the last year has held meetings, carried on considerable correspondence and has had before it two drafts, one prepared by the Chairman and another by J. Allen Davis, Esq., of the Los Angeles Bar, whose services were made available through the courtesy of Hon. Gurney E. Newlin, one of our California Commissioners and a member of the committee. As a result we have before us for the first time an act upon this subject. The committee presents it for consideration and discussion and not for final action at the present Conference, though it is hoped to make such progress that by the end of another year such final act may be presented.

### 8. Uniform Act for Compacts and Agreements Between States.

With reference to the work of the Committee on Uniform Act for Compacts and Agreements between States, I regret to report that the Hon. Thomas J. O'Donnell has resigned as a member of the National Conference, but it will be recollected that the former Chairman of the committee, Hon. John H. Wigmore, had done a very large amount of work in the securing of data with reference to the subject and made a very full report concerning it.

In view of this fact, I have reapppointed Col. Wigmore Chairman of this committee as he has been pursuing the subject during the year and believes the time has arrived to take definite action with reference to certain aspects of the matter, more particularly those having to do with international commercial law. He has prepared and there will be presented to this Conference, a report by him as Chairman though, due to the above circumstances, it has come too late to be circulated in advance of the meeting. He states that he believes that in the field of domestic law the committee has no further important task to accomplish as those interests having commercial inter-state interests are reasonably aware of the situation now. He calls attention to the recent seven-state compact for the control and distribution of the waters of the Colorado River as being " a signal demonstration of the beneficent possibilities of the interstate compact method." He feels, however, that in the field of

international commercial law practically everything remains to be done and he states he has the conviction that an immediate effort should be made to induce the employment of the state compact method for the advancement of our international commercial relations for reasons which he sets forth in detail in his report. He then recommends that he be authorized, as Chairman of the committee, to present the general subject to the Secretary of State of the United States "with a view to his consideration of the feasibility of employing the state compact method in such future international negotiations in the field of commercial law as may seem suitable for the use of this method of consolidating national action."

I therefore recommend that the committee be continued, that it be instructed to give consideration to the proposals of Col. Wigmore with reference to the subject matter and that the Chairman be authorized to present the matter indicated to the Secretary of State of the United States and if, in the judgment of the committee, it seems wise to report to the next Annual Conference and submit an act or acts with reference to the subject matter or matters involved in such international commercial relations.

### 9. COMMITTEE ON SECURING COMPULSORY ATTENDANCE OF NON-RESIDENT WITNESSES IN CIVIL AND CRIMINAL CASES.

The Conference will remember that there was considerable discussion with reference to the constitutional questions involved in the act under consideration by this committee and that it was referred back with instructions to re-draft the act and report a brief upon the constitutional questions involved to this Conference.

The Executive Committee believed that the committee should hold a meeting in order to carry out the instructions of the Conference, and made an appropriation for that purpose, but later was compelled, owing to lack of funds, to cancel it. It is earnestly recommended that the committee be given the facilities this year to complete its work so that this act may be finally disposed of at the next Conference.

### 10. UNIFORM DRUG ACT.

This committee requested an appropriation for a meeting of the committee which was granted by the Executive Committee on the supposition that certain additional funds were available. It was later compelled to cancel the appropriation. No report of this committee has been received, and so far as I know, no committee meeting has been held or work done because of the lack of the meeting. This committee should be given sufficient funds another year to complete its work, if possible, so that the matter may be disposed of.

### 11. UNIFORM ACT FOR EXTRADITION OF PERSONS CHARGED WITH CRIME.

Though no report of this committee has been received, I am advised by the Secretary that one is being printed to be presented at this Conference so as to bring this matter up for consideration during the present session.

### 12. UNIFORM ACT FOR TRIBUNAL TO DETERMINE INDUSTRIAL DISPUTES.

This is a matter also upon which I have received no formal report from the committee, but the Chairman has recently been corresponding with the members of the committee, has mailed to them a copy of the brief in the State of Kansas with reference to the decision of the Supreme Court of the United States in the case of Dorchy *vs.* The State of Kansas and it is believed will be prepared to make a report on the progress made in this field since the last Conference, but it is not believed the time has yet come for the preparation and submission of a draft upon this important question.

### 13. UNIFORM ACT FOR ONE DAY'S REST IN SEVEN.

This committee again presents an act for consideration of the Conference, a prior draft having been considered, about 1919, and after discussion referred back to the committee. The committee itself has not met or conferred but the act is presented upon the basis of a work of a similar Committee of the Amer-

ican Association of Labor Legislature, which drafted and recommended a law upon the subject. Subject to modifications it has been enacted in New York, Massachusetts and Wisconsin.

The committee believes that the most expedient course is to endorse the law referred to and to recommend its enactment as a Uniform Law by the several states.

Attention is called to the fact that while this is not the usual procedure, the Conference has in the past approved of seven acts drafted by other organizations, is this year to give consideration to three acts prepared under the auspices of the American Law Institute and that the plan involved in the recommendation of the committee is that recommended by the Committee on Scope and Program in its report for the year 1922, which recommended that the Conference might well undertake the legal standardization of the welfare measures without going into or necessarily becoming responsible for the policies of the acts involved.

In my report as President last year I recommended the further consideration of this subject by the Committee on Scope and Program, as I believe that it offers a method whereby this Conference may furnish the necessary technical knowledge in the drafting of such acts without becoming involved in the considerations underlying them, concerning which only experts can speak with confidence.

I beg leave, therefore, to call your attention to the recommendation of the committee and to the act submitted, with the hope that it may be given full consideration at this session.

## 14. UNIFORM ACT FOR JOINT PARENTAL GUARDIANSHIP OF CHILDREN.

It will be recollected that this question was one taken up at the request of the National League of Women Voters and that of some twenty-one subjects upon which they desire uniform legislation, they stated that this was the one which they desired to have given prior attention.

We have had before us a tentative draft upon this subject but not in such form as to merit final consideration. It will be recalled that one of the principal objections was that while pur-

porting to be a law upon the subject of joint guardianship, it in fact conferred additional powers to those now held by either parent and it was thought that the matter should be given further consideration particularly with a view to conserving and protecting the assets of the children involved.

No report of this committee has been received by me and I therefore do not know what recommendations, if any, will be before this Conference upon the subject. I understand that the Chairman does not expect to be present. I am in receipt of a communication from the National League of Women Voters, however, in which they express the desire that progress should be made along this line and they also request that we give further consideration to the matter of marriage and divorce. In this connection they ask that Mrs. Jennie Loitman Barron, of the Boston Bar, who is to be present at the sessions of this Conference as a representative of the National League of Women Voters, be given a hearing on both of these subject matters. They state that they believe that while not much progress has been made in the field covered by our marriage act, with the help of the women and their organizations further progress might be made.

I recommend that Mrs. Barron be given a hearing as requested by the National League of Women Voters, at such time as may be fixed by the Executive Committee.

## 15. UNIFORM CHILD LABOR ACT.

It will be recollected that this committee was recreated because of the judgment of the Conference that substantial progress had been made in this field and that in view of the failure of the Supreme Court of the United States to sustain the constitutionality of the Federal Child Labor Acts further attention should be given to this important question. The committee of which Commissioner Davis, of Washington, was appointed Chairman, was therefore created and has been giving the matter attention. The situation is changing, however, as the result of progress made in the passage of an amendment to the Constitution of the United States to permit the passage of a federal act and it may be that the committee may feel that it should wait to see whether or not such amendment will become effective.

No report of the committee is available to me at this time but in view of the situation I recommend the continuance of the committee with instruction to give consideration to the relationship of the state and federal laws upon the subject and, if in their judgment it seems to be the opportune time, to present a revised draft of our Uniform Child Labor Act for passage by the various states.

### 16. UNIFORM AVIATION ACT.

Our Uniform Aviation Act was recommended for final passage in 1922 but there has been some discussion with reference to certain features of it and the question arises whether or not in view of the criticisms made and the adverse effect upon the passage of the law reconsideration should not be given to certain aspects of the act as passed. The attention of the Conference is called to the correspondence between Mr. Charles A. Boston and the Committees on Uniform State Laws of the Association of the Bar of the City of New York and the New York State Bar Association regarding the adverse report of the latter association upon the Uniform Aviation Act because of the fact that it recognizes the ownership of the superincumbent air in the owner of the fee, subject only to the rights of flight. Mr. Boston thinks that there is very considerable doubt about this legal ownership of the superincumbent air by the owner of the land and that an act that is merely intended to define the rights of flight should not go into this question and recognize a right of the land owner which is doubtful and which might prove embarrassing in future developments such as radio communication.

In view of the source of this criticism and its effect upon the passage of our Uniform Aeronautics Act, it is recommended that this matter be referred to the Executive Committee for consideration and report as to what action, if any, should be taken at this session of the Conference.

### 17. UNIFORM PRIMARY ACT FOR FEDERAL OFFICERS.

It will be recalled that at the last Annual Conference the then committee on this subject took a position on the policy of the

act which had been referred to it and failed to follow the instructions of the Conference with reference to preparation of an act upon the subject. The Conference then re-referred the matter to the committee with instructions to prepare and present an act upon the subject in accordance with the action of the Conference theretofore taken. The new committee under the Chairmanship of Hon. Arthur H. Ryall has therefore given serious consideration to the subject during the year and presents a digest of the law upon the subject in each of the states of the union together with copies of certain of the statutes covering the subject matter.

Upon investigation the committee found that this information was not available at any one place and has already contributed to the knowledge upon this subject by the work done. Attention is called to what the committee believes to be the essential features of an act to be presented which it states should provide for at least the following:

First. A uniform date for holding presidential primaries the same as is now provided for the national election.

Second. That primary election day should be some time not earlier than March 15 and not later than May 1 in the year in which the presidential electors are chosen.

Third. That all provisions requiring candidates to accept challenges to debate or otherwise appear before the electorate (as now provided by the South Dakota law) should be eliminated.

Fourth. Some uniform restriction upon expenditures based upon population.

Fifth. Party enrollment under such restrictions as will prevent the participation of members of other parties in choosing candidates of the party of which the elector is not a member.

After giving full consideration to the data collected and the problems involved, the committee states that if it is the desire of the Conference, it will continue its consideration of the subject, and submit to the next Conference a tentative draft for its consideration, recommending that it be directed and authorized so to do.

No one can give consideration to the data submitted by the committee without concurring in the conclusion reached by it and it is urgently recommended that the Conference direct the continuation of the work and request the preparation of an act for consideration at the next Annual Conference.

### 18. Committee on Uniform Act to Regulate the Sale and Possession of Firearms.

This was a new committee appointed at the Annual Conference in Minneapolis last year, as a result of certain matters brought to the attention of the Conference by the United States Revolver Association. Those who have not considered this question, perhaps, would find difficulty in seeing the necessity for a Uniform Act upon the subject, but it is believed that one who looks into it will agree with the committee that:

Study of this proposition shows the advisability of having a uniform law and one which if enforced will make it difficult for any person not a law-abiding citizen to obtain a pistol or revolver.

The necessity for uniformity arises from the fact that unless there are similar provisions the best thought out acts may be unavailing under the present state of the law and the committee makes a recommendation with reference to the continuation of its powers with a view to the presentation of a tentative draft at the Annual Conference in 1925. It is recommended that the committee be continued, that it be given a sufficient appropriation to hold a meeting and be requested to prepare and report a tentative draft for an act at the next Annual Conference.

### 19. Committee on Revision of By-Laws.

In view of the fact that the National Conference is in fact a continuing body with a permanent policy and its work goes on from year to year, it has seemed wise to make certain changes in the Constitution and By-Laws which recognize this fact and change certain provisions which assume reorganization at each meeting of the Annual Conference. It also seems desirable to adopt some new plan of committee organization in order to bring related work together in sections, secure full committee meetings and increase their effectiveness.

I have, therefore, appointed a committee on the Revision of Constitution and By-Laws consisting of the Hon. Jesse A. Miller, Chairman, Arthur H. Ryall, and George B. Young, which has prepared and will present certain amendments to this Conference which I hope may be given early consideration in order that, if they meet with the approval of this Conference, they may become effective at the present Annual Conference.

This constitutes a review of my impressions of the work done by our various committees during the year and I have endeavored to reflect to the members of the Conference the recommendations of the committees and what I believe to be the desirable course of action by the Conference with reference thereto.

Again, I want to express to the Chairman of the Executive Committee, Hon. George B. Young, my great appreciation of the service he has rendered to the Conference during the past year.

It is with profound sorrow that I have to report to the Conference, what I know will be regarded by many who have had the privilege of knowing her as a personal loss, the death of Mrs. Young, who has attended so many of the Conferences in past years with her husband and who has taken an interest in the work of the Conference from year to year. I am sure that I only express the feeling of all of us when I say that our hearts go out to Mr. Young in this irreparable loss and that he has our deepest sympathy and affectionate regard in these days of his sorrow.

It again becomes my sad duty to call the attention of the Conference to the very great loss we have sustained in the answering of the Last Roll Call by several of our colleagues. It has rarely been the sad duty of the President of the Conference to record in a single year the loss of so many men who contributed so largely to the prestige and work of this Conference and it will be indeed hard to replace them in its work.

Among those who have died since our last Annual Conference are:

Hon. Walter George Smith, of Pennsylvania, Fifth President of the Conference, 1909-10, 1910-11, 1911-12.

Hon. Henry Stockbridge, of Maryland, Ninth President of the Conference, 1920-21, 1921-22.

Hon. Eugene C. Massie, of Virginia, Vice-President of the Conference, 1922-23, and Chairman of the Executive Committee, 1914-20.

Hon. W. A. Morgan, of Rhode Island.

I request that I be authorized to appoint appropriate committees to prepare suitable memorials to be spread upon permanent records of the Conference.

Memorial committees will in due course be appointed and proper memorials prepared, but these men were my friends and colleagues of many years' standing, as they were of yours,

Case 2:14-cv-02626-TLN-DB   Document 52-4   Filed 12/05/16   Page 48 of 51

and I want to express my personal regard, affection and respect for them as men, as lawyers, and as public citizens. I could wish no better future for the National Conference than that we may be honored throughout its history from time to time by men of equal devotion to the cause in which we are engaged.

Again, I beg to remind you of the importance of most cordial relations between the American Bar Association and the National Conference of Commissioners on Uniform State Laws. and the necessity of keeping constantly in mind this relationship in order that each may supplement the work of the other in such a way as to make the greatest possible progress in the field to which we are devoted, namely, the Uniformity of State Legislation.

We have under consideration at the present time two Uniform Acts at the request of the American Bar Association, namely, Uniform Arbitration Act and Uniform State Trade-Mark Act. The committee on the former will submit to this Annual Conference an act on which it is hoped to take final action, while on the question of the Uniform State Trade-Mark Act action is being postponed, as stated, with approval and concurrence of the Chairman of the American Bar Association Committee upon the subject.

Continued interest is expressed in the work in which we are engaged. Last year I called attention to certain indications of the growing interest. This year I shall not attempt an extended list of this kind but perhaps your attention might well be called to two or three outstanding matters of interest in connection with the Uniform State Law movement:

1. The publication by the Edward Thompson Company of "Uniform Laws Annotated" has been entirely successful. The work has proven to be well done. The publication of the books has added to the interest in and knowledge of the Bar concerning the subject matters and there has been proved to be a real demand for the work. The publishers have just completed and distributed the Annotated Supplements for 1924 for nine of the 10 volumes. The Supplement to Book Five on Negotiable Instruments is being prepared together with a new book of Commentaries on Conditional Sales Act by Hon. George G. Bogert, Secretary of the National Conference. It is planned that these supplements shall be cumulative and become a part of the books as issued.

The National Conference is under obligation to the Edward Thompson Company for the real contribution which it has made in providing the Bar of this country, in readily accessible form, the results of the

work of the National Conference and I am glad to record your appreciation of the work done.

2. Last year the appointment by the Commercial Law League of America of a committee to act in connection with the work being done by the National Conference was announced. The Commercial Law League is continuing to take an interest in the subject matter and its co-operation, properly directed, can be of very great benefit in interesting the Bar in the subject generally and in helping to secure the passage by the various state legislatures of the acts recommended by the National Conference.

Last year in closing my report to you I called attention again to the necessity of a careful preservation of the division of powers between the state and nation and the danger that the whole fabric of our government might be fatally weakened if this was not kept constantly in mind. Since then this view has received confirmation from high quarters and perhaps nothing has occurred in a long time that should give us greater courage in going forward notwithstanding the obstacles met in the important work in which we are engaged than the recent address of the President of the United States on the occasion of the dedication of the Arizona Stone in the Washington Monument. That beautifully impressive, yet superbly simple, monument reflects better than anything that our imagination can conceive, the strong and simple and sincere spirit of the founder of our country, and nowhere better than in connection with the memorial to him could consideration be given to the best means to preserve unimpaired the inheritance which he has given us.

President Coolidge, in the course of his address, said:

If we are to maintain the nation and its government institutions with a fair semblance of the principles on which they were founded, two policies must always be supported. First, the principle of local self-government in harmony with the needs of each state. This means that in general the states should not surrender but retain their own sovereignty and keep control of their own government. Second, a policy of local reflection of nation-wide public opinion. Each state must shape its course to conform to the generally accepted sanctions of society and to the needs of the nation. It must provide a workable similarity of economic and industrial relations. It must protect the health and provide for the education of its own citizens. This policy is already well recognized in the association of the states for the promotion and adoption of uniform laws. Unless this policy be adopted by the states, interference by the nation cannot be resisted.

Throughout our whole nation there is an irresistible urge for the maintenance of the highest possible standards of government and society. Unless this sentiment is heeded and observed by appropriate state action, there is always grave danger of encroachment upon the states by the national government. But it must always be realized that such

encroachment is a hazardous undertaking, and should be adopted only as a last resort. The true course to be followed is the maintenance of the integrity of each state by local laws and social customs, which will place it in comparative harmony with all the others. By such a method, which can only be the result of great effort, constantly exerted, it will be possible to maintain an "Indestructible union of indestructible states." The maintenance of this position rises in importance above the hope of any other benefits, which constant changes would be likely to secure. The nation can be inviolate only as it insists that Arizona be inviolate.

Sometimes there have been those members of the National Conference who have criticized its attempt to deal with so-called social laws as well as those of commercial significance but if the ideal as expressed by the President is to be met and there is to be a constantly advancing standard which shall compare with and be harmonious with the laws of other states there must go, side by side with the consideration of commercial acts by this National Conference, the consideration of necessary changes of the statutes having to do with the social interest of the people.

A body of men such as those composing this National Conference need not be ashamed of devoting themselves to social or welfare work of and for itself, but even from the standpoint of the commercial interest of the nation and the stability of our government, the time necessary to perfect acts upon these subjects upon which agreement is more difficult is fully justified.

I cannot refrain in this connection from quoting, though from memory, the words of Theodore Roosevelt when he said:

Unless this is a good country for all of us to live in it will not long be a good country for any of us.

Advancing social and industrial standards must keep step with the advance of business processes or society will soon be so out of tune that the harmony of our civilization will be destroyed.

It should be a matter of pride and congratulation that the President of the United States has taken occasion not only to endorse the purpose of this organization but also has called attention to the National Conference itself and specifically stated that unless the policy of uniformity, for which we stand, is adopted by the states, that interference by the nation must inevitably follow.

570     COMMISSIONERS ON UNIFORM STATE LAWS.

A number of years ago, now, I took occasion, as President of the Illinois State Bar Association, to call attention to the fact that uniformity of legislation was a proper remedy for overcentralization and urged a widespread adoption of Uniform State Laws in ever widening fields, as a ready means to efficiency consistent with democracy.

The movement for Uniform State Laws is historically correct, traditionally true, economically sound, democratically American and nationally efficient. Any movement, so organized and so based, may ultimately count upon adequate public support and the National Conference of Commissioners on Uniform State Laws, I am confident, will continue through the years to arouse ever increasing interest in and support of the movement for Uniform State Laws. In time we may count upon the public generally recognizing, as the President of the United States has stated, that our movement is not merely legally desirable but is governmentally indispensable if our nation, as we know it, is to continue to function in its historic form under the Constitution of the United States.