EXHIBIT 3

# HANDBOOK

OF THE

# National Conference of Commissioners

ON

# Uniform State Laws

AND

# Proceedings

OF THE

Thirty-fourth Annual Meeting

PHILADELPHIA, PENNSYLVANIA

July 1-8

1924

# REPORT OF COMMITTEE ON A UNIFORM ACT TO REG-ULATE THE SALE AND POSSESSION OF FIREARMS.

*To the National Conference of Commissioners on Uniform State Laws:*

The undersigned committee was appointed at the meeting at Minneapolis in August, 1923, for the purpose of considering and reporting upon a Uniform Act to Regulate the Sale and Possession of Firearms. A study has been made by the committee of legislation as it exists in some of the principal states of the Union and exchanges of views have been had between the members of the committee in reference to the general subject matter of those laws. But owing to a lack of funds, the distance of the members of the committee from one another, and the shortness of time due to the earlier date of the meeting in Philadelphia, it has been impossible to have a session of the committee or to prepare a tentative draft of an act. This report is therefore for the purpose of presenting to the Conference in a general way the present state of the law as it has been ascertained by the committee and to make recommendations with reference to the continuance of the work, with a view to the preparation of a tentative act for presentation at the next meeting of the Conference in 1925.

## TIMELINESS OF SUBJECT

The matter of the regulation of the sale and possession of firearms is a live subject. It was brought to the attention of the Conference last summer by the United States Revolver Association in the form of an Argument for a Uniform Revolver Law which is appended hereto, together with the text of such law.

It had just prior to the meeting of the Conference last summer been dealt with in California in one of the most recent acts upon this subject, known as Assembly Bill No. 263 of the State of California, approved June 13, 1923, the full text of which is appended hereto, in which the entire matter of the regulation and sale of "dangerous

weapons" is treated exhaustively.  This act deals not only with firearms but with black-jacks, slung shots and other deadly weapons. It has seemed to the committee best to confine its activities to the range indicated in its title, and in the preparation of a .Uniform Law to deal only with firearms.

The matter of the regulation of the sale and use of firearms is called to the attention of the public from time to time by notable fatalities that occur in the use of weapons both by officers and by citizens who are not officers.  One of the most notorious illustrations of this was the recent accidental shooting of Senator Greene of Vermont on Pennsylvania Avenue in Washington within two blocks of the Nation's Capitol in a melée between officers and bootleggers.  This immediately focused the attention not only of residents of the District of Columbia, but of people throughout the country upon proposed legislation on the subject by Congress for the District of Columbia as local legislation as well as their attention upon proposed legislation governing the sale of weapons in interstate commerce.  There had already been introduced in Congress prior to the accident to Senator Greene several bills providing briefly for the regulation of the sale and use of firearms in the District of Columbia.  These are appended hereto.  Since the shooting of Senator Greene, enactment of legislation of this kind has been urged upon Congress, and the President of the United States has taken a personal interest in the matter.  A committee of the House of Representatives of which Ernest W. Gibson is Chairman now has the matter under consideration, and Mr. Gibson has written a letter to the Chairman of this committee welcoming aid upon this subject.

One of the recent bills in Congress, Senate Bill No. 4012, introduced by Mr. Capper in the 67th Congress, September 20, 1922, was a bill to control the possession, sale and use of pistols and revolvers in the District of Columbia.  This bill was practically the same as the uniform law proposed by the United States Revolver Association.  House bill No. 461 introduced by Mr. Clark of Florida in the 68th Congress December 5, 1923, requires any person desiring to purchase a pistol, rifle, etc. to furnish the dealer a certificate from the Clerk of the court that such person

has never been convicted of any offense in said court, and also to furnish certificates from at least two citizens of the District that such person is of good character, law-abiding and peaceable. Section 2 provides a penalty for violation of Section 1. Several bills have been recently introduced to control the shipment of fire-arms in interstate commerce.

### United States Revolver Association's Proposed Uniform Law

The uniform law proposed by the United States Revolver Association and appended hereto may be taken as a starting point in drafting a uniform law. But the proposed act lacks certain provisions found in other acts which might be added thereto, for example, a provision requiring a citizen desiring to purchase a pistol or revolver to secure a license or permit from the chief of police, sheriff or other officer, said license or permit to be the authority of the dealer in making a sale. Such a provision may seem drastic but certainly no law-abiding or reputable citizen with sufficient grounds for owning or possessing a weapon would hesitate to make application for the license. It would prohibit in a great measure, if not entirely prevent, the felon from obtaining a weapon.

The United States Revolver Association's proposed law, as well as many others, imposes practically no restriction on dealers other than a few conditions subsequent to the issuance of their license. Chief among these are: (a) Dealers are not permitted to display pistols or revolvers. (b) Records must be kept of each sale (but generally speaking no check is ever made of these records) (c) No pistol or revolver shall be delivered on the day of the sale, (and here again it is doubtful whether any check is ever made on deliveries). This situation could be and should be remedied and brought under control by some designated authority (1) by limiting the number of dealers (2) by a more careful selection of dealers (3) by requiring that every licensed dealer be compelled to give bond, and (4) by periodical inspection of stocks and registers. While it may seem that these provisions will place undue burdens and restrictions on the parties concerned yet if this vice is to be

remedied this committee feels that the laws in relation thereto must of necessity be drastic and all steps taken to insure their enforcement.

### General Considerations in Drafting Uniform Law

A study of this proposition shows the advisability of having a uniform law and one which if enforced will make it difficult for any person not a law-abiding citizen to obtain a pistol or revolver. Too liberal a statute would be little better, even if uniform, than those now in force, while a law making it practically impossible to purchase a weapon would be objectionable for several reasons. First, because the criminal or felon would undoubtedly resort to illegal methods of obtaining a firearm, and secondly, the firearms business of this country, employing thousands of skilled mechanics and representing millions of dollars, would be sacrificed.

Great care should be exercised in the drafting of a provision concerning the carrying of concealed weapons. To quote from the United States Revolver Association's Argument; "Entirely convincing evidence of necessity should be required before such a permit is granted." Police and other officers and all persons engaged in carrying large sums of money, as bank and express messengers, should be permitted to carry weapons; but some system should be devised whereby these persons may be instructed in the use of firearms.

Acts prohibiting the carrying of concealed weapons are held constitutional and a valid and proper exercise of the police power. The provision of the second amendment to the constitution that, "the right of the people to keep and bear arms shall not be infringed," and similar constitutional provisions in the States do not preclude the exercise of this police power.

The possibility of enforcing such a law can hardly be doubted, when it is considered that a few cities and states have severe regulations governing the use of firearms and these few are able to enforce them so far as their own jurisdictions are concerned. The result, however, is nullified by the fact that firearms may be purchased in adjoining districts.

—714—

## RECOMMENDATIONS OF COMMITTEE

In view of the foregoing considerations, the committee recommends as follows:

1.   That either this committee or another committee of this Conference be continued for the further consideration of a uniform act to regulate the sale and possession of firearms with instructions to prepare and report a tentative draft of a proposed uniform act at the next meeting of this conference.

2.   That the committee be granted such an appropriation by the Conference, if possible, as may enable the members of the committee to meet ahead of the next meeting of the Conference for the purpose of making as complete a report as possible.

> CHARLES V. IMLAY, *Chairman*
> ASHLEY COCKRILL
> CLARENCE A. DAVIS
> E. B. STEWART
> JOHN HINKLEY
> GEORGE M. HOGAN
> WILLIAM H. LEARY

nust
orce-

ng a
any
lver.
han
le to
ons.
t to
rms
nics

sion
the
con-
h a
en-
nes-
tem
the

ield
ver.
hat,
in-
not

ted,
gu-
en-
The
be

# APPENDIX

## THE ARGUMENT FOR A UNIFORM REVOLVER LAW

(Reprinted from pamphlet published by United States Revolver Association)

The increase in the number of crimes of violence, in which pistols and revolvers have figured, has led to a nation-wide demand for regulatory legislation relating to such weapons.

As a consequence, a veritable flood of legislative bills has appeared in various States and municipalities and even in the Congress of the United States. These bills range all the way from mild regulation to absolute prohibition of the manufacture, sale and ownership of pistols and revolvers.

*Should even a few of these measures be enacted into laws, the result would be confusion and conflict of authority which would make effective enforcement impossible and, far from improving conditions, would make them infinitely worse.*

With a view to providing effective legislation which will minimize the use of pistols and revolvers by criminals, and at the same time permit law-abiding citizens to obtain such weapons for protection and other legitimate uses, under proper restrictions, the United States Revolver Association has prepared a Uniform Law and is recommending its enactment in all of the States.

This Uniform Law is based on the Capper Bill (S. 4012), which was introduced in the United States Senate by Senator Arthur Capper of Kansas and recently favorably reported by the Senate District of Columbia Committee.

### WHAT THE UNIFORM LAW PROVIDES

Briefly, the Uniform Revolver Law provides that:

None but citizens, personally known, or properly identified to a licensed dealer in firearms, are permitted to purchase pistols or

—716—

revolvers. Each purchaser and seller must sign a record of sale, each in the presence of the other, and a copy of such record must be filed with the police.

*No pistol or revolver may be delivered to the purchaser until the day after the sale.*

Owners of such firearms are not permitted to carry them on their persons or in a vehicle without a license from the police.

Dealers are not permitted to display pistols or revolvers, or imitations thereof, where they can be seen from the outside of the store.

Possession of a pocket firearm by a person, committing or attemping to commit a felony, is regarded as prima facie evidence of criminal intent, and *is punishable by a mandatory sentence to five years extra imprisonment.*

Heavy penalties are prescribed for second and third offenders. Fourth offenders may be sentenced to life imprisonment.

Manufacturers' serial numbers or other identifying marks on pistols or revolvers must not be altered or erased.

*Aliens, minors and persons who have been convicted of a felony are not permitted to possess a pistol or revolver.*

### Why Revolver Laws Should Be Uniform

Regulation of the sale and ownership of pistols and revolvers comes within the police powers of the various States and is not a matter with which Congress can properly deal.

To be effective, therefore, such regulation must be uniform in all States. Otherwise there will be a continuance of the anomalous conditions now prevailing in certain States. An example of this is found in the case of New York State where the sale of weapons of this character is strictly regulated. It is not a difficult matter, however, for a criminal to cross the Hudson River to New Jersey, or to go by train or automobile to Connecticut and meet his requirements in those States.

The adoption of the Uniform Law in all States would stop this practice. The sale of pistols and revolvers would be in the hands of

reputable, licensed dealers and the intending purchaser would either have to be personally known to them as a citizen of good character, or else properly identified before he could obtain a weapon. Moreover, even a reputable citizen could not obtain a weapon at a moment's notice. He would have to wait twenty-four hours after he placed his order before delivery could be made. This would provide a "cooling spell" designed to overcome any sudden tendency to violence and at the same time provide the dealer with an opportunity to "check up" on the purchaser.

### WHY NOT A LICENSE TO PURCHASE?

Any provision which would make it necessary for an intending purchaser of a pistol or revolver to obtain a license before he could make such a purchase, is objectionable for these reasons:

All reputable, law-abiding citizens should be permitted legally to acquire and keep for legitimate uses, the weapons best suited for self-protection against marauders. This need cannot be denied by anyone who has studied the current statistics of crime.

Experience has demonstrated that, in such States as at present require a license to purchase, the law plays directly into the hands of the criminal.

The criminal at present has no difficulty in obtaining such weapons as he desires. He knows that the average citizen will not take the trouble—and frequently, it is a great deal of trouble— to obtain the required purchase license. Therefore, the criminal knows that the chances are nearly all in his favor and that he can operate safe in the knowledge that his victim is unarmed and unable to defend himself.

Furthermore, the law-abiding householder can by no chance foresee the moment when he may need a pistol or revolver for the defense of his property or of his life and the lives of those dependent upon him.

For that reason alone, he should be encouraged to procure and learn the proper use of a pistol or revolver. It is generally known that during a comparatively recent series of burglaries and robberies

in New York City, the authorities suggested the advisability of citizens arming themselves, notwithstanding the fact that the New York State law—the notorious Sullivan Law, so-called—places unreasonably severe restrictions in the way of such action.

## WHY A LICENSE TO CARRY?

There are certain classes of citizens who, by the very nature of their calling, are required to carry pistols and revolvers. These include policemen, certain other peace officers and members of the military and naval service of the United States and of the various States.

All other citizens should be required to obtain licenses from proper authorities before they are permitted to carry a weapon of this character on their person or in vehicles. Entirely convincing evidence of nceessity should be required before such a permit is granted.

Severe penalties should attach to the unauthorized carrying of concealed weapons and to the use or possession of a pistol or revolver in the commission of a crime.

In other words, law-abiding citizens should be perfectly free to obtain and keep in their homes pistols or revolvers, but no persons other than those authorized by law, should be allowed to carry such weapons abroad without express permission granted after necessity has been shown.

Only in this way can the use of such weapons by criminals be minimized.

## WHY NOT PROHIBITORY LAWS?

Laws prohibiting the manufacture, sale or ownership of pistols and revolvers would work to the detriment not only of the law-abiding public but of the Government itself.

Furthermore, such laws would be utterly ineffective for the very simple reason that they could not be enforced against the criminal. Any police official, any criminologist or any person who has made the slightest study of the subject will confirm this statement.

It would be possible, of course, to prohibit the manufacture of weapons of this character. But a very effective pistol can be made at home out of a small-bore rifle. Furthermore, we have several thousand miles of border and seacoast over which weapons would drift for the use of criminals. There would be created by any prohibitory law, the highly undesirable industry of pistol bootlegging.

Any prohibitory law, therefore, would operate against the reputable citizen and entirely in favor of the criminal. The former would observe the law and the latter, with his clandestinely obtained pistol in his pocket, would be absolutely safe in the pursuit of his calling.

A law prohibiting the manufacture of pistols and revolvers, or even limiting manufacture to the types in use in the military and naval service, would operate to the detriment of the Government for this reason:

The Army, Navy and Marine Corps of the United States and the National Guard use revolvers and automatic pistols of .45 calibre. The Government itself has practically no facilities for manufacturing these weapons.

Consequently, the manufacturers who make these types voluntarily keep a portion of their plants ready at all times for Government service. As the demand for the Army and Navy types is practically negligible in time of peace, the expense of maintaining the necessary idle machinery is born by the portions of the plants producing what may be termed commercial and police weapons.

If the sale of these commercial and police weapons were prohibited, there would be no funds available for the upkeep of the plants needed to manufacture service weapons with the result that the Government would suffer.

The Government could not equip itself to produce the needed weapons for years to come, because an arms manufacturing plant is not the creation of a month or so and expert gunsmiths are developed only by years of training. The impracticability of attempting to create new plants was demonstrated during the war

—720—

and is the subject of comment in the report on "America's Munitions," by Assistant Secretary of War, Benedict Crowell.

To summarize, therefore, a prohibitory law would wipe out an industry representing an investment of approximately $1,000,-000,000; it would throw out of employment several thousand men whose skill is the result of years of training and who could not be replaced in case of necessity; it would seriously affect the business of thousands of wholesale and retail dealers, with consequent commercial loss to their respective communities and loss in taxes to the Government; it would seriously cripple the Government in any perparedness program; it would put a premium on dishonesty and evasion.

Finally, it would utterly fail of its purpose, which would be primarily to keep weapons of this character out of the hands of criminals.

## WHY NOT RIFLES AND SHOTGUNS?

The pistol or revolver is the most convenient weapon for the protection of the home. It can be kept in a bureau or table drawer, instantly available when needed, but safe from inexperienced hands. The argument that because accidents have occurred through keeping a pistol or revolver in the house, such weapons should be barred, would hold good in connection with many extremely useful household utensils.

Serious and even fatal accidents have occurred because children have played with matches, razors, carving knives and various edged tools, and, while there are no statistics available, it is safe to assume that such accidents are at least as numerous as those caused by careless handling of pistols or revolvers. Such accidents, however, are not spectacular and rarely find their way into the newspapers, while every case of accidental shooting is printed under big headlines.

Moreover, the pistol or revolver is by all means the best weapon for use in close quarters. A rifle or a shotgun is next to useless in defense of the household. Such weapons are unwieldy at close quarters, are inconvenient to use, are less easily kept away from

—721—

children, and are much more apt to cause accidents through careless handling.

## PISTOLS NOT CAUSE OF CRIME

No one who has made even a superficial study of crime and criminals believes for a moment that the abolition of pistols and revolvers would abolish or even bring about a particularly marked decrease in crimes of violence.

The pistol is not an incentive to crime. From the earliest times crime has existed in one form or another and the weapon used in its commission has been incidental. Crimes of violence were done ages before firearms of any kind were invented and will continue long after newer and more efficient means have been perfected.

The point is that the use of any weapon in the commission of crime has led to the adoption of similar or better weapons as a protection against crime and this defensive warfare of the law-abiding against the lawless will always continue. Deprive the law-abiding citizen of his right to possess a pistol and you take away his best means of defense.

## A MATTER OF CUSTOM

Much has been said and printed lately about the small number of crimes of violence in which pistols or revolvers figure in England, as compared with the admittedly larger number in this country. There is a perfectly logical explanation.

In the first place the population of the British Isles is approximately 45,000,000, and only a very small percentage of this is foreign-born. The City of London, often called the most cosmopolitan city in the world, has a foreign-born population of only about 4 per cent.

Consequently, the vast majority of the people have for many generations been schooled to respect British laws and institutions. The British laws are clear and definite and, what is of particular importance, they are enforced to the letter.

The British criminal commits crimes of violence, many of them, but he does not as a rule use a pistol. Moreover, Great Britain was

founded long before the invention of firearms and British tradition is against the use of firearms.

Therefore, a British criminal using a pistol in the commission of crime well knows that that very fact will add greatly to his sentence and that his sentence will be carried out without any possibility of pardon or diminution.

On the other hand, our own is a comparatively new country. Firearms played a most important and necessary part in its founding and from its earliest days, the youth of our country has been trained in the use of such weapons.

Furthermore, we have here a population of approximately 110,000,000 people, a very large percentage of whom are foreign-born and with many of whom it has been a national custom to carry a weapon of some sort.

Still further, it is admitted that not only is there a definite lack of respect for law among certain of our people, but that many of our laws are faulty and that our enforcement of law is extremely lax and our prosecution of criminals attended by delays which frequently render conviction impossible.

Under these conditions, it would seem better for us, before comparing ourselves with other countries, to remedy the faults which admittedly exist in our laws and their enforcement, to minimize the legal delays and to frame such laws as are capable of enforcement and in such manner that enforcement must of necessity follow infraction.

## Why the U. S. R. A. is Interested

The United States Revolver Association is interested in the enactment of the Uniform Revolver Law in all of the States because its members realize the necessity for some form of regulation. They know that no regulation can be effective unless it is uniform in each State.

The Association which was formed about twenty-two years ago, is composed of about 3,000 members, organized into separate clubs, located in practically all States, as well as the Canal Zone, the District of Columbia and the outlying territories.

It develops and trains pistol marksmen entirely at the expense of its own members, holds frequent national championship matches and selects the teams to compete in international matches.

During the war many members of the Association were commissioned by the Government as instructors in revolver and pistol practice, thus relieving for other important work officers of the Army and Navy who otherwise would have been compelled to give this vitally necessary instruction.

The Association has made a careful study of the various laws dealing with pistols and revolvers, both in this and other countries. This study has led to the framing of the Uniform Revolver Law and to the Association's present effort to have this law enacted.

In this work the Association has received the suggestions and endorsements of the leading police officials and criminologists of the United States—men who have no delusions regarding the impracticability of laws which would prohibit pistols and revolvers—as well as of officers of the Army, Navy, Marine Corps, National Guard and various veterans' organizations.

The Association feels, therefore, that in undertaking the work of securing the general enactment of the Uniform Law, it is performing a duty well within the scope of its activities and for which it is probably best qualified.

But, aside from preserving the sport of target practice, the Association's sole interest lies in the satisfaction of having accomplished a piece of work which it is admitted by the police and other authorities, will be of inestimable benefit to the Nation.


## OPINIONS OF POLICE OFFICIALS

### CITY OF NEW YORK

If a similar law were enacted in all states, the danger of criminals obtaining pistols would be reduced to a minimum.

JOHN J. CRAY,

Fourth Deputy Commissioner.

—724—

## POLICE DEPARTMENT, CITY OF N. Y.

The bill as drafted has many good features. I am in favor of a law which will apply to all States.

DOMINICK HENRY,
Acting Deputy Chief Inspector.

## HOT SPRINGS, ARK.

I shall be only too glad to do everything possible, should such a bill be drawn in the State of Arkansas, to lend my efforts to see that it is passed.

R. O. SULLIVAN,
Chief of Police.

## PINKERTON'S NATIONAL DETECTIVE AGENCY

We are quite certain Mr. Pinkerton is in favor of all reasonable legislation that has for its object the proper and reasonable control of firearms.

GEORGE D. BANGS,
General Manager.

## FOSTER N. BURNS DETECTIVE AGENCY

I have always advocated a very strict law in reference to the carrying of firearms. If there is anything that I can do to be of service, command me.

FOSTER N. BURNS,
General Manager.

## WINSTON-SALEM, N. C.

In my opinion without this law being standardized and applying to every State it will be difficult and almost impossible to keep revolvers out of the possession of the criminal class.

J. A. THOMAS,
Chief of Police.

## PITTSFIELD, MASS.

It is an excellent bill. You are doing a real service to your country.

JOHN L. SULLIVAN,
Chief of Police.

## BRIDGEPORT, CONN.

The making of this bill is a wonderful achievement; every provision is so framed that the inevitable result will be a decrease in crime.

PATRICK J. FLANAGAN,
Superintendent of Police.

## FORT WAYNE, IND.

I heartily endorse such legislation. The bill would be a good law for all the States and by all means should be uniform throughout the whole United States.

WILLIAM H. MOELLER,
Chief of Police.

## BALTIMORE, MD.

I have read the bill very carefully and I have no hesitancy in giving it my hearty endorsement, as I believe it is a very good bill and designed to accomplish the purpose which is sought. A measure of this sort should, in my opinion, be made universal.

GEORGE G. HENRY,
Chief Inspector.

## WATERBURY, CONN.

I am strongly in favor of a bill of this nature and think that every State should adopt it. On one or two occasions, chiefs of police of this State have been before our legislature in an effort to have a bill passed controlling the sale of revolvers. We shall make a special effort through representatives from this city to get a bill passed by our next legislature along the same lines as the one you have sent.

GEORGE M. BEACH,
Superintendent.

## OGONTZ, PA.

If a bill of this kind were introduced at the next session of the legislature of Pennsylvania, I would surely use my influence to have it passed.

THEODORE H. HALLOWELL,
Chief of Police.

### NEW KENSINGTON, PA.

Should be a national law.  It would reduce felonies 70 per cent.

DAN J. ZELOYLE,
Chief of Police.

### DEPT. OF STATE POLICE, HARRISBURG, PA.

I have read the bill carefully and think it is excellent.  It meets with many of the ideas which I have had for a long time.  It will give me great pleasure to aid in getting such a bill enacted in Pennsylvania.

LYNN G. ADAMS,
Superintendent.

### WALTHAM, MASS.

I am heartily in favor of a uniform law for all the States.  Unless we can have a uniform law certain sections of our present law are useless.

JAMES H. McKENNA,
Chief of Police.

### CITY OF HIGHLAND PARK, MICH.

I have gone over this bill and think if it could be passed in every State it would be a grand law.  I have no doubt that it would cut down the taking of lives to a very great extent.

CHARLES W. SEYMOUR,
Chief of Police.

### LEHIGH & NEW ENGLAND RAILWAY COMPANY

I am very much opposed to the indiscriminate carrying of firearms. However, I do believe that respectable citizens should be able to procure firearms for the protection of life and property.

GEORGE L. SMITH,
Chief Special Agent.

### KNOXVILLE, TENN.

If this law could be passed to cover all States it would be most welcome to the peace officers of the country.

E. M. HAYNES,
Chief of Police.

—727—

## A BILL TO PROVIDE FOR UNIFORM REGULATION OF REVOLVER SALES

(Published by United States Revolver Association)

*Based upon Senate Bill 4012 Introduced in the U. S. Senate September 20, 1922*

# A Bill

To control the possession, sale, and use of pistols and revolvers, to provide penalties, and for other purposes.

*Be it enacted, etc.*

SECTION 1.  DEFINITION.—"Pistol or revolver," as used in this Act, shall be construed as meaning any firearm with barrel less than twelve inches in length.

SEC. 2.  COMMITTING CRIME WHEN ARMED.—If any person shall commit or attempt to commit a crime when armed with a pistol or revolver, and having no permit to carry the same, he shall in addition to the punishment provided for the crime, be punished by imprisonment for not less than five nor more than ten years.

SEC. 3.  PUNISHMENT.—The judge shall have the power to sentence any person who may be convicted for a second or third offense under Section 2, of this Act, to double and triple the penalty imposed thereby, and for a fourth offense the person so convicted may be sentenced to perpetual imprisonment.

SEC. 4.—BEING ARMED PRIMA FACIE EVIDENCE OF INTENTION.— In the trial of a person for the commission of a felony or of an attempt to commit a felony against the person of another, the fact that he was armed with a pistol or revolver and having no permit to carry the same shall be prima facie evidence of his intention to commit said felony.

SEC. 5.  ALIENS AND CRIMINALS MUST NOT POSSESS ARMS.— No unnaturalized foreign-born person and no person who has

been convicted of a felony against the person or property of another or against the Government of the United States or of any State or subdivision thereof, shall own or have in his possession or under his control, a pistol or revolver. Violations of this section shall be punished by imprisonment for not less than five years.

SEC. 6.   CARRYING PISTOL CONCEALED.—No person shall carry a pistol or revolver concealed in any vehicle or upon his person, except in his dwelling house or place of business, without a license therefor as hereinafter provided. Violations of this section shall be punished by imprisonment for not less than one year, and upon conviction the pistol or revolver shall be confiscated and destroyed.

SEC. 7.   EXCEPTIONS.—The provisions of the preceding section shall not apply to marshals, sheriffs, policemen, or other duly appointed peace officers, nor to the regular and ordinary transportation of pistols or revolvers as merchandise, nor to members of the Army, Navy, or Marine Corps of the United States, or the National Guard, when on duty, or organizations by law authorized to purchase or receive such weapons from the United States, or this State, nor to duly authorized military or civil organizations when parading, nor to the members thereof when at or going to or from their customary places of assembly.

SEC. 8.   ISSUE OF LICENSES TO CARRY.—The justice of a court of record, the chief of police of a city or town and the sheriff of a county, or persons authorized by any of them, shall, upon the application of any person having a bona fide residence or place of business within the jurisdiction of said licensing authority, or of any person having a bona fide residence or place of business within the United States and a license to carry a firearm concealed upon his person issued by the authorities of any State or subdivision of the United States, issue a license to such person to carry a pistol or revolver within this State for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property or for any other proper purpose, and that he is a suitable person to be so licensed. The license shall be in triplicate, in form to be prescribed by the Secretary of State,

—729—

and shall bear the name, address, description, and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee, the duplicate shall within seven days be sent by registered mail to the Secretary of State, and the triplicate shall be preserved for six years by the authority issuing said license.

SEC. 9.  SELLING TO MINORS.—Any person or persons who shall sell, barter, hire, lend, or give to any minor under the age of eighteen years any pistol or revolver shall be deemed guilty of a misdemeanor, and shall upon conviction thereof be fined not less than $100. nor more than $1,000, or be imprisoned for not less than three months, nor more than one year, or both.

SEC. 10.  SALES REGULATED.—No person shall sell, deliver, or otherwise transfer a pistol or revolver to a person who he has reasonable cause to believe either is an unnaturalized foreign-born person or has been convicted of a felony against the person or property of another, or against the Government of the United States or any State or subdivision thereof, nor in any event shall he deliver a pistol or revolver on the day of the application for the purchase thereof, and when delivered, said pistol or revolver shall be securely wrapped and shall be unloaded. Before a delivery be made the purchaser shall sign in triplicate and deliver to the seller a statement containing his full name, address, occupation, and nationality, the date of sale, the caliber, make, model, and manufacturer's number of the weapon. The seller shall, within seven days, sign and forward by registered mail one copy thereof to the Secretary of State, and one copy thereof to the chief of police of the city or town or the sheriff of the county of which the seller is a resident, and shall retain the other copy for six years. This section shall not apply to sales at wholesale. Where neither party to the transaction holds a dealer's license, no person shall sell or otherwise transfer a pistol or revolver to any person not personally known to him. Violations of this section shall be punished by a fine of not less than $100 or by imprisonment for not less than one year, or by both such fine and imprisonment.

—730—

SEC. 11.   DEALERS TO BE LICENSED.—Whoever, without being licensed as hereinafter provided, sells, or otherwise transfers, advertises, or exposes for sale, or transfer or has in his possession with intent to sell, or otherwise transfer, pistols or revolvers, shall be punished by imprisonment for not less than two years.

SEC. 12.   DEALERS' LICENSES; BY WHOM GRANTED, AND CONDITIONS THEREOF.—The duly constituted licensing authorities of any city, town or political subdivision of this State, may grant licenses in form prescribed by the Secretary of State, effective for not more than one year from date of issue, permitting the licensee to sell at retail within the said city or town or political subdivision, pistols and revolvers, subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

1.   The business shall be carried on only in the building designated in the license.

2.   The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can easily be read.

3.   No pistol or revolver shall be delivered—

(a)   On the day of the application for the purchase, and when delivered shall be unloaded and securely wrapped; nor

(b)   Unless the purchaser either is personally known to the seller or shall present clear evidence of his identity; nor

(c)   If the seller has reasonable cause to believe that the purchaser either is an unnaturalized foreign born person or has been convicted of a felony against the person or property of another, or against the Government of the United States or any State or subdivision thereof.

4.   A true record, in triplicate, shall be made of every pistol or revolver sold, said record to be made in a book kept for the purpose, the form of which may be prescribed by the Secretary of State, and shall be personally signed by the purchaser and by the person effecting the sale, each in the presence of the other, and shall include the date of sale, the caliber, make, model, and manufacturer's number of the weapon, the name, address, occu-

pation, and nationality of the purchaser.  One copy of said record shall, within seven days, be forwarded by registered mail to the Secretary of State and one copy thereof to the chief of police of the city or town or the sheriff of the county of which the seller is a resident, and the other copy retained for six years.

5.  No pistol or revolver, or imitation thereof, or placard advertising the sale or other transfer thereof, shall be displayed in any part of said premises where it can readily be seen from the outside.

SEC. 13.  PENALTY FOR FALSE INFORMATION.—If any person in purchasing or otherwise securing delivery of a pistol or revolver or in applying for a permit to carry the same, shall give false information or offer false evidence of his identity he shall be punished by imprisonment for not less than five nor more than ten years.

SEC. 14.  ALTERATION OF IDENTIFYING MARKS PROHIBITED.— No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver.  Possession of any such firearm upon which the same shall have been changed, altered, removed, or obliterated, shall be presumptive evidence that such possessor has changed, altered, removed, or obliterated the same.  Violations of this section shall be punished by imprisonment for not less than one year nor more than five years.

SEC. 15.  EXISTING LICENSES REVOKED.—All licenses heretofore issued within this State permitting the carrying of pistols or revolvers concealed upon the person shall expire at midnight of December 31, 1923.

SEC. 16.  EXCEPTIONS.—This Act shall not apply to antique pistols or revolvers incapable of use as such.

SEC. 17.  CERTAIN ACTS REPEALED.—All laws or parts of laws inconsistent herewith are hereby repealed.

NOTE:—This measure is approved by the United States Revolver Association, 14 West Forty-eighth Street, New York, N. Y.