# EXHIBIT 10

# REPORT

OF THE

## STANDING COMMITTEE ON UNIFORM STATE LAWS.

*To The American Bar Association:*

As President of the National Conference of Commissioners on Uniform State Laws, and as such, *ex officio,* The American Bar Association Committee on Uniform State Laws, I submit the following report:

### RECOMMENDATIONS.

It is recommended that this committee be permitted to file a Supplemental Report after the meeting of the National Conference of Commissioners on Uniform State Laws at Denver to contain copies of such uniform acts as the National Conference may finally approve at that meeting and that acts so submitted to this Association be approved by this Association.

### REPORT

In the report of last year to this Association, Bar Association Reports, Vol. 50, for 1925, beginning on page 560, is a full and exhaustive statement of the work now being considered by the Conference, to which reference is here made.

Since that report was submitted some acts have been brought to such a state of completion that it is hoped they will be finally approved by the Conference at the July meeting in Denver and such of said acts as may be so approved will be submitted to this Association at Denver for its approval. These acts may be approved:

1. Uniform Federal Tax Lien Registration Act.
2. Uniform Chattel Mortgage Act.
3. Uniform Motor Vehicle Code.
4. Uniform Firearms Act.
5. Uniform Public Utilities Act.

During the year the committee having in charge the Uniform Motor Vehicle Act, in cooperation with the committees of the National Conference on Street and Highway Safety, called by Secretary of Commerce Hoover, have divided the act into four

(527)

Case 2:14-cv-02626-TLN-DB   Document 52-12   Filed 12/05/16   Page 3 of 13
Case 2:14-cv-02626-TLN-DB   Document 52-12   Filed 12/05/16   Page 3 of 13

parts, following closely the principles and substance of the act as it was last year submitted to the National Conference of Commissioners on Uniform State Laws, but so framed that certain of the acts constituting the Code can be adopted without adopting all of the acts. This was done in the hope that uniformity in certain respects might be attained where it was not immediately possible to attain full uniformity. The importance of the subject is obvious. The four acts constituting the Code are:

1. Uniform Motor Vehicle Registration Act.
2. Uniform Certificate of Title Act.
3. Uniform Motor Vehicle Operators' and Chauffeurs' License Act.
4. Uniform Act Regulating the Operation of Vehicles on Highways.

The Uniform Motor Vehicle Registration Act creates the Motor Vehicle Department and provides for registration of all motor vehicles and for reciprocal rights among the states.

The Uniform Certificate of Title Act provides for filing proof of title before registration and is an anti-theft act for the protection of car owners.

The Uniform Motor Vehicle Operators' and Chauffeurs' License Act provides for the licensing of all operators and chauffeurs after examination by the Department to determine competency and provides for full reciprocity among states having the act.

The Uniform Act Regulating the Operation of Vehicles on Highways provides rules of the road, and regulates equipment and operation of cars.

This Uniform Motor Vehicle Code was approved by the Second National Conference on Street and Highway Safety, held in Washington March 23, 24 and 25, 1926, and recommended to the National Conference of Commissioners on Uniform State Laws as the basis for uniform legislation on the subject.

The important feature of the Uniform Sale of Securities Act, which prevented final disposition last year, is still unsettled.

There is some probability that the Uniform (Real Estate) Mortgage Act may be revived and given further consideration.

The committee appointed last year on the subject of Uniform Marriage and Divorce Acts has given the matter some study and is submitting to the National Conference this year a redraft of those acts.

Some work has been done during the year on the Uniform State Inheritance Tax Act, but the National Tax Association has made recommendations relative to that subject that are somewhat in conflict with the form of inheritance tax customarily used by the states and somewhat in conflict with the theory upon which

the National Conference has been drafting its act. Progress is being made on this subject but no act will be approved by the Conference this year.

Progress has also been made on the Uniform Act to Regulate the Sale and Possession of Firearms. The subject matter of this act is one in which the National Crime Commission is especially interested. The second tentative draft of this act will be before the Conference for consideration at the Denver meeting and may be approved.

Normal progress has been made during the year on other subjects before the Conference. The foregoing acts are the only ones, however, which it is probable will be finally approved by the National Conference at the Denver meeting and some of these may not be.

The first draft of the Uniform Mechanics' Lien Act will be submitted to the National Conference for consideration this year.

Copies of these and other acts before the Conference may be had from George G. Bogert, Secretary of the National Conference of Commissioners on Uniform State Laws, University of Chicago Law School, Chicago, Illinois.

The work of the National Conference of Commissioners on Uniform State Laws is seriously handicapped by the lack of adequate means to enable the committees to hold necessary meetings. The work it is doing cannot be properly done without committee meetings. The printing of the Conference is necessarily quite extensive and the Secretary's office also involves expense. The work of the Conference could be more promptly and efficiently completed if its income were sufficient to meet its needs. Under present conditions every dollar it receives has to do the work of three. The members of this Association could be very helpful in the promotion of this work if they would exercise their influence to induce legislatures to make reasonable appropriations for the expense of the National Conference.

Respectfully submitted,
GEORGE B. YOUNG, *Committee.*

## SUPPLEMENTAL REPORT

OF THE

### STANDING COMMITTEE ON UNIFORM STATE LAWS.

*To The American Bar Association:*

As President of the National Conference of Commissioners on Uniform State Laws, and as such, *ex officio,* The American Bar Association Committee on Uniform State Laws, I submit the following supplemental report:

#### RECOMMENDATIONS

It is recommended that The American Bar Association approve the acts approved and recommended by the National Conference of Commissioners hereto attached and herein referred to.

#### REPORT.

The National Conference of Commissioners on Uniform State Laws held a session in Denver, Colorado, beginning July 6 and concluding on July 12, 1926. During that meeting the Conference reconsidered the matter of a Uniform Real Estate Mortgage Act and voted to restore that subject to its calendar and refer it to a new committee for further consideration and report.

The Conference on the report of Uniform State Inheritance Tax Committee voted to frame a Uniform State Inheritance Tax Act on the theory of a succession or legacy tax rather than on the estate theory and instructed its committee to prepare a proposed Uniform Inheritance Tax Act on that theory.

The National Conference has after consideration finally approved and recommended to the states and herewith submits to The American Bar Association for its approval the following acts, copies of which are hereto attached and marked exhibit as indicated:

1. Uniform Federal Tax Lien Registration Act. (Exhibit A.)
2. Uniform Chattel Mortgage Act. (Exhibit B.)
3. Uniform Act to Regulate the Sale and Possession of Firearms. (Exhibit C.)
4. Uniform Act for Extradition of Persons Charged with Crime. (Exhibit D.)

UNIFORM STATE LAWS.                555

not appear until judicial sale, shall be entitled to further proceedings to recover the deficiency.

SEC. 69. [*Disposal of the Goods by Surrender or Agreement.*]

1. At any time after inception of the mortgage the mortgagor and mortgagee may contract in writing for the voluntary surrender of the mortgagor's rights to the subject matter, without prejudice to any other encumbrance which may exist, in satisfaction of the obligation secured, or providing in any other manner for whole or partial liquidation of such obligation otherwise than as provided by this act.

2. Such a contract, made after default, shall, as between the parties, be valid and displace to that extent the provisions of this act with reference to foreclosure and redemption; and shall be valid as against creditors of the mortgagor unless proved to be a fraudulent conveyance.

SEC. 70. [*Time and Manner of Taking Effect.*]

1. This act shall take effect........................................

2. This act shall not apply to mortgages made prior to the time when it takes effect.

SEC. 71. [*Short Title.*]

This act may be cited as Uniform Chattel Mortgage Act.

SEC. 72. [*Inconsistent Laws Repealed.*]

[Except so far as they are applicable to mortgages made prior to the time that this act takes effect, the following acts shall be and hereby are repealed . . . .; and] all acts or parts of acts inconsistent with this act are hereby repealed.

SEC. 73. [*Uniformity of Interpretation.*]

This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it; and so as to effectuate its purpose of protection against secret liens.

SEC. 74. [*Singular Includes Pural; Principal Includes Agent.*]

1. The singular of any noun or pronoun in this act shall in proper case be construed to include the plural.

2. Any designation of a person in this act, for any purpose, shall be construed to include his agent in that behalf.

SEC. 75. [*Cases Not Provided For.*]

In any case not provided for in this act the rules of law and equity, including the law merchant, and of statutes, shall continue to apply to mortgages.

SEC. 76. [*Rights May Be Enforced By Action.*]

Any right, duty, or power declared by this act may be enforced by appropriate action.

# EXHIBIT C.

## A UNIFORM ACT TO REGULATE THE SALE AND POSSESSION OF FIREARMS.

### AN ACT

REGULATING THE SALE, TRANSFER AND POSSESSION OF CERTAIN FIREARMS, PRESCRIBING PENALTIES, AND RULES OF EVIDENCE, AND TO MAKE UNIFORM THE LAW WITH REFERENCE THERETO.

SECTION 1. [*Definitions.*]

"Pistol" or "revolver," as used in this act, means any firearm with barrel less than 12 inches in length.

556   SUPPLEMENTAL REPORT OF STANDING COMMITTEE ON

"Crime of Violence," as used in this act, means any of the following crimes or an attempt to commit any of the same, namely, murder, manslaughter, rape, mayhem, assault to do great bodily harm, robbery [larceny], burglary, and housebreaking.

SEC. 2. [*Committing Crime When Armed.*]

If any person shall commit or attempt to commit a crime of violence when armed with a pistol or revolver, he may in addition to the punishment provided for the crime, be punished also as provided by this act.

SEC. 3. [*Being Armed Prima Facie Evidence of Intent.*]

In the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a pistol or revolver and had no license to carry the same shall be *prima facie* evidence of his intention to commit said crime of violence.

SEC. 4. [*Persons Forbidden to Possess Arms.*]

No person who has been convicted in this state or elsewhere of a crime of violence, shall own or have in his possession or under his control, a pistol or revolver.

SEC. 5. [*Carrying Pistol Concealed.*]

No person shall carry a pistol or revolver concealed in any vehicle or on or about his person, except in his dwelling house or place of business, or on other land possessed by him, without a license therefor as hereinafter provided.

SEC. 6. [*Exceptions.*]

The provisions of the preceding section shall not apply to marshals, sheriffs, prison or jail wardens or their deputies, policemen, or other duly appointed law enforcement officers, or to members of the Army, Navy, or Marine Corps of the United States, or of the National Guard, when on duty, or of organizations by law authorized to purchase or receive such weapons from the United States or this state, or to officers or employees of the United States authorized by law to carry a concealed pistol or revolver, or to duly authorized military organizations when on duty, or to the members thereof when at or going to or from their customary places of assembly, or to the regular and ordinary transportation of pistols or revolvers as merchandise, or to any person while carrying a pistol or revolver unloaded in a wrapper from the place of purchase to his home or place of business, or to a place of repair or back to his home or place of business, or in moving goods from one place of abode or business to another.

SEC. 7. [*Issue of Licenses to Carry.*]

[The justice of a court of record, the chief of police of a city or town, and the sheriff of a county, or persons authorized by any of them], shall, upon the application of any person having a *bona fide* residence or place of business within the jurisdiction of said licensing authority, or of any person having a *bona fide* residence or place of business within the United States and a license to carry a pistol or revolver concealed upon his person issued by the authorities of any state or subdivision of the United States, issue a license to such person to carry concealed upon his person a pistol or revolver within this state for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property or has any other proper reason for carrying a pistol or revolver, and that he is a suitable person to be so licensed. The license shall be in triplicate, in form to be prescribed by the [Secretary of State], and shall bear the name, address, description and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee, the duplicate shall within [seven] days be sent by registered mail to the [Secretary of State] and the triplicate shall be preserved for six years by the authority issuing said license.

SEC. 8. [*Selling to Minors.*]

No person shall sell, barter, hire, lend, or give any pistol or revolver to any person under the age of 18 years.

SEC. 9. [*Transfers Regulated.*]

No person shall transfer by way of sale, gift, loan or otherwise a pistol or revolver to a person who he has reasonable cause to believe has been convicted of a crime of violence. No seller shall in any event deliver a pistol or revolver on the day of the application for the purchase thereof, and when delivered, said pistol or revolver shall be securely wrapped and shall be unloaded. Before a delivery be made the purchaser shall sign in triplicate and deliver to the seller a statement containing his full name, address, occupation, color, and place of birth, the date of sale, the caliber, make, model, and manufacturer's number of the weapon, and stating that he has never been convicted of a crime of violence. The seller shall, within seven days, sign and forward by registered mail one copy thereof to the [Secretary of State], and one copy thereof to the chief of police of the city or town or the sheriff of the county of which the seller is a resident, and shall retain the other copy for six years. This section shall not apply to sales at wholesale.

SEC. 10. [*Dealers to be Licensed.*]

No retail dealer shall sell or otherwise transfer, or expose for sale or transfer or have in his possession with intent to sell, or otherwise transfer, any pistol or revolver without being licensed as hereinafter provided.

SEC. 11. [*Dealers' Licenses: By Whom Granted, and Conditions Thereof.*]

The duly constituted licensing authorities of any city, town or political subdivision of this state, may grant licenses in form prescribed by the [Secretary of State] effective for not more than one year from date of issue, permitting the licensee to sell at retail within the said city or town or political subdivision, pistols and revolvers, subject to the following conditions, for breach of any of which the license shall be subject to forfeiture:

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can be easily read.

3. No pistol or revolver shall be delivered—
   (a) If the seller has reasonable cause to believe that the purchaser has been convicted of a crime of violence; nor
   (b) Unless the purchaser either is personally known to the seller or shall present clear evidence of his identity; nor
   (c) On the day of the application for the purchase; nor
   (d) Unless the same shall be unloaded and securely wrapped.

4. A true record, in triplicate, shall be made of every pistol or revolver sold, said record to be made in a book kept for the purpose, the form of which shall be prescribed by the [Secretary of State], and shall be personally signed by the purchaser and by the person effecting the sale, each in the presence of the other, and shall contain the date of sale, the caliber, make, model and manufacturer's number of the weapon, the name, address, occupation, color, and place of birth of the purchaser, and a statement signed by the purchaser that he has never been convicted of a crime of violence. One copy of said record shall within seven days be forwarded by registered mail to the [Secretary of State] and one copy thereof to the chief of police of the city or town or the sheriff of the county of which the seller is a resident, and the other copy retained for six years.

558   SUPPLEMENTAL REPORT OF STANDING COMMITTEE ON

5. No pistol or revolver, or imitation thereof, or placard advertising the sale or other transfer thereof, shall be displayed in any part of said premises where it can readily be seen from the outside.

No license to sell at retail shall be granted to anyone except as provided in this section.

SEC. 12. [*False Information Forbidden.*]

No person shall in purchasing or otherwise securing delivery of a pistol or revolver or in applying for a license to carry the same, give false information or offer false evidence of his identity.

SEC. 13. [*Alteration of Identifying Marks Prohibited.*]

No person shall change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark of identification on any pistol or revolver. Possession of any pistol or revolver upon which any such mark shall have been changed, altered, removed, or obliterated, shall be *prima facie* evidence that the possessor has changed, altered, removed or obliterated the same.

SEC. 14. [*Existing Licenses Revoked.*]

All licenses heretofore issued within this state permitting the carrying of pistols or revolvers concealed upon the person shall expire at midnight of......................, 192......

SEC. 15. [*Exceptions.*]

This act shall not apply to antique pistols or revolvers unsuitable for use as firearms.

SEC. 16. [*Act Supersedes Local Laws.*]

The provisions of this act shall be effective and controlling throughout this state, notwithstanding the provisions of any local law or ordinance.

SEC. 17. [*Penalties.*]

Any violation of any provision of this act shall constitute an offense punishable by a fine of not more than [$............] or imprisonment for not more than [..........], or both, or by imprisonment in the penitentiary for not less than [..........], nor more than [..........].

SEC. 18. [*Constitutionality.*]

If any part of this act is for any reason declared void, such invalidity shall not affect the validity of the remaining portions of this act.

SEC. 19. [*Short Title.*]

This act may be cited as "Uniform Firearms Act."

SEC. 20. [*Effective Date.*]

This act shall take effect on the.........day of..............19.....

SEC. 21. [*Certain Acts Repealed.*]

All laws or parts of laws inconsistent herewith are hereby repealed.

## EXPLANATORY STATEMENT REGARDING UNIFORM FIREARMS ACT.

### RELATION OF ACT TO RECENT FIREARMS LEGISLATION.

The National Conference of Commissioners on Uniform State Laws at its Thirty-Sixth Annual Meeting held at Denver, Colo., July 6-12, 1926, approved the Uniform Firearms Act and voted that it be recommended to the states for adoption. On July 15th The American Bar Association, meeting at the same place unanimously approved the act.

When the subject matter of the act was first brought to the attention of the National Conference at Minneapolis in August, 1923, much had already been accomplished in the direction of uniform firearms legislation by the United States Revolver Association. Its legislative committee had drafted a uniform law which had already been adopted with a few changes, by North Dakota and New Hampshire. California had also

adopted it with some qualifications and additions. The law was thereafter adopted in Indiana on March 12, 1925, and much of its subject matter has been enacted in the Oregon Act of February, 1925, the West Virginia Act of April 25, 1925, and the Michigan Act of May 26, 1925.

It was therefore because of the timeliness of firearms legislation and the current development of the subject that a uniform law seemed desirable. Practical reasons demanded it; e. g., the necessity of uniform regulations which will prevent a criminal from going from a state where regulations are strict and securing a weapon in a state where they are lax.

Because of the intrinsic merits of the Revolver Association Act as well as the favor already shown to it, the Conference, after a study of all state legislation upon the subject, adopted the Revolver Association Act as a working model. While changes have been made in language and arrangement, and while there have been some omissions of provisions contained in the model law, and the addition of new matter, the fundamental provisions of the Uniform Act, remain the same as those of the model act.

The principles of the Uniform Act have, therefore, already obtained recognition by state legislatures to the extent that the Revolver Association Act has already been adopted. These principles are believed to be consonant with legislative precedent and practical experience, and superior to minority views reflected in some past legislation and in a few recent enactments. For example, the Arkansas Act of March 16, 1923, required a state-wide registration of firearms, but the act proved such a failure that it was repealed in 1925. (A similar provision in the Michigan Act of 1925, the only other of the kind found, has not yet been put into effect.) Another example is that of the recent Massachusetts Act which requires a license to purchase a firearm: one of the few enactments following the theory of the New York law which for a long time has been practically the only statute attempting that form of regulation.

It is submitted that the provisions of the Act present no constitutional objections, constitute no drastic changes in the law of any jurisdiction and if adopted generally will not only secure uniformity, but will remove the evils of the present lack of uniformity.

## GENERAL PRINCIPLES OF ACT.

The general principles embodied in the act may be summarized as follows:

1. Without hampering the facility of a law-abiding citizen to secure arms for the protection of his home, the Act seeks by strict regulation of dealers, identification of purchasers, and strict licensing of those who carry concealed firearms to keep such weapons out of the hands of criminals.

2. The act provides a heavier penalty for a crime of violence by one who is armed whether legally or not, and makes the illegal possession of a pistol or revolver *prima facie* evidence of intent.

3. The act adopts the universal principle in all state statutes forbidding the carrying of concealed weapons with a complete enumeration of classes of excepted persons and with sufficient exceptions to suit special circumstances.

4. The act forbids the possession under any circumstances of pistols by persons who have committed crimes of violence as defined by the act, but does not extend the prohibition to aliens.

5. The act adopts the general principle of forbidding the transfer of pistols to minors.

Case 2:14-cv-02626-TLN-DB Document 52-12 Filed 12/05/16 Page 11 of 13

560 SUPPLEMENTAL REPORT OF STANDING COMMITTEE ON

6. The act contains a detailed method of identification in the case of sales by private persons and transfers by dealers, requiring licenses of dealers.

7. The act provides a complete system for granting licenses to carry concealed weapons in cases where the character of the applicants for licenses and the emergencies justify the same.

8. The provisions of the act are made effective by specific provisions against the giving of false information by purchasers and applicants for licenses, and the alteration of identification marks on weapons.

9. The act by specific provision is made state-wide, thus eliminating conflicting local ordinances.

10. A general penalty provision is contained in the act with terms of imprisonment and amounts of fines left blank, so as to suit the needs of the particular state enacting the law.

## COMMENTS ON INDIVIDUAL SECTIONS.

SECTION 1. A "pistol or revolver" is defined as a firearm with barrel less than twelve inches in length, in accordance with definitions already prevailing in state statutes. Other kinds of dangerous weapons are not included. "Crime of violence" which is used in numerous places in the act is defined to cover such crimes as are ordinarily committed with the aid of firearms.

SEC. 2. An additional penalty is provided for persons committing crimes of violence when armed. This provision is found, not only in recent enactments following the Revolver Association Act, but in other statutes of other states, some of long standing.

SEC. 3. The fact that a criminal is armed with a pistol or revolver without license is deemed *prima facie* evidence of his intention to commit the crime of violence with which he is charged. This provision is also found, not only in those states which have followed the Revolver Association Act, but in a number of other states.

SEC. 4. One convicted of a crime of violence is absolutely forbidden to own or possess a pistol or revolver. This provision also has considerable precedents in existing state legislation and is thought to be useful for keeping firearms out of the hands of criminals.

SEC. 5. This section forbids the carrying of concealed weapons and is similar to provisions prevailing in practically every jurisdiction in this country. It adopts the modern theory of making the probition extend, not only to weapons concealed on the person, but also in vehicles. It is intended thus to remove the easy method by which a criminal on being pursued may transfer a weapon from his pocket to a concealed place in a vehicle.

SEC. 6. This section enumerates all the classes of persons who it seems should be excepted from the provisions of Section 5, the list being adopted after a comparision of persons named in existing state statutes. The exception of a concealed weapon in a dwelling house or place of business is contained in the preceding section: this section extends the exceptions to cases where the weapon may be in process of being carried for mere purposes of legitimate transfer or for repair.

SEC. 7. This section defines the method for application and issuance of licenses to carry concealed weapons and for the preservation of the record of the same. It is in line with existing provisions. No bond provision has been added because it is believed that if a proper showing is made on the part of the applicant as to character and necessity, the bond provision should not be introduced to make the obtaining of the license difficult and burdensome.

SEC. 8. The provisions of this section forbidding the delivery of a weapon to a minor are similar to those generally now prevailing. The age of 18 years named in the section has been deemed more desirable than the younger age named in a number of statutes and the higher age named in some. It is believed that in ordinary instances youths will be of sufficient maturity at 18 and that the naming of a higher age might make it impossible to deliver weapons to mature youths who might need them.

SEC. 9. This section first forbids a transfer of any kind of firearm to one who the transferrer may have reasonable cause to believe has been convicted of a crime of violence. The provision forbidding a seller to transfer on the day of purchase is intended to avoid the sale of a firearm to a person in a fit of passion. The section further requires identification of purchaser and weapon and the preservation of this identification.

SEC. 10. This section requires a license of dealers and is in line with existing statutes.

SEC. 11. This section constitutes the conditions under which licenses will be granted to dealers and for the breach of which such licenses will be forfeited. These conditions are in line with all modern legislation on the subject and constitute the chief safeguard against firearms coming into the possession of undesirables.

SEC. 12. This section prohibits the giving of false information in purchasing a fire arm or in applying for a license to carry the same. The principles of the section have been adopted, not only by those states adopting the Revolver Act, but by a number of other states.

SEC. 13. This section, also designed to preserve the identification of weapons in connection with transfers, forbids the changing of identifying marks and provides that the possession of pistols from which such identifying marks have been obliterated shall be *prima facie* evidence that the possessor has changed the same. It has been adopted by all states which have enacted the Revolver Association Act.

SEC. 14. This section revokes all existing licenses on a date to be inserted by the enacting state.

SEC. 15. This section is designed to remove from the operation of the act, firearms that are kept merely as curiosities. It has been adopted already in those states which have passed the Revolver Association Act.

SEC. 16. This section was designed by the committee of the Conference and adopted by the Conference for the purpose of making the act apply throughout the state at large so that conflicts with local ordinances might be avoided. The necessity for this section arises from the fact that firearms regulation has been in many places a matter of city ordinance.

SEC. 17. This is the general section which provides penalties for violations of the various provisions of the Act. The amounts of fines and the lengths of imprisonment are left blank so that these may be fixed according to the needs and usages of the particular state. This section is so framed as to be applicable to different state definitions of misdemeanors and felonies. A general penalty section has been thought more scientific than the naming of penalties in connection with specific sections.

SEC. 18. This section is intended to avoid the invalidity of the entire act by a judicial holding that a particular part is unconstitutional. It has been added by the Conference as one of its model sections contained in most uniform acts.

SEC. 19. This section, in accordance with the practice of the Conference provides for a short designation of the act to avoid the longer definition at the beginning. In the selection of the words, " Uniform Fire-

562    SUPPLEMENTAL REPORT OF STANDING COMMITTEE ON

arms Act," the definite article "the" has been omitted in order to reduce the short title to its smallest terms.

SEC. 20. This section is the usual section found in uniform acts providing for an effective date.

SEC. 21. This section is the usual section in uniform acts and contained in the Revolver Association Act, repealing existing laws inconsistent with the Uniform Act.

## EXHIBIT D.

### AN ACT

RELATING TO THE EXTRADITION OF PERSONS CHARGED WITH CRIME, AND TO MAKE UNIFORM THE LAW WITH REFERENCE THERETO.

*Be it enacted* . . . .

SECTION 1. [*Definitions.*]

Where appearing in this act, the term "Governor" includes any person performing the functions of governor by authority of the law of this state. The term "Executive Authority" includes the governor and any person performing the functions of governor in a state other than this state. And the term "state" referring to a state other than this state refers to any other state or territory organized or unorganized of the United States of America.

SEC. 2. [*Criminals to be Delivered Upon Requisition.*]

Subject to the qualifications of this act, and the provisions of the Constitution of the United States controlling, and Acts of Congress in pursuance thereof, it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state.

> N. B. The Statutes on Interstate Rendition are practically identical in Alabama, Arizona, California, Idaho, Montana, Nevada, New Mexico, North Dakota, Oklahoma, South Dakota, and Utah and also in the territories of Alaska and Porto Rico.

SEC. 3. [*Form of Demand.*]

No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing and accompanied by a copy of an indictment found or by an information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereon. The indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy must be authenticated by the executive authority making the demand, which shall be *prima facie* evidence of its truth.

> (Drafted from Acts of Congress of 1793, and decisions in Davis case, 122 Mass. 324, and Pearce *vs.* Texas, 155 U. S. 387; cf. Scott on Interstate Rendition, paragraph 91.) The certification is provided by U. S. R. S. 5278. The effect of the certification is explained in Kentucky *vs.* Dennison, 24 How. 66. The recognition of informations in states which allow them is probably supported by Hogan *vs.* O'Neill, 255 U. S. 52; 65 L. ed. 497.