XAVIER BECERRA, State Bar No. 118517
Attorney General of California
TAMAR PACHTER, State Bar No. 146083
Supervising Deputy Attorney General
NELSON R. RICHARDS, State Bar No. 246996
EMMANUELLE S. SOICHET, State Bar No. 290754
Deputy Attorneys General
2550 Mariposa Mall, Room 5090
Fresno, CA 93721
Telephone: (559) 477-1688
Fax: (559) 445-5106
E-mail: Nelson.Richards@doj.ca.gov
*Attorneys for Defendants*[1]

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TRACY RIFLE AND PISTOL LLC et al.,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**XAVIER BECERRA, in his official capacity as Attorney General of California, et al.,**<br><br>Defendants. | 2:14-cv-02626-TLN-DB<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date: 02/23/2017<br>Time: 2:00 p.m.<br>Judge: Hon. Troy L. Nunley<br>Trial Date: 09/05/2017<br>Action Filed: 11/10/2014 |

[1] Pursuant to Federal Rule of Civil Procedure 25(d), California Attorney General Xavier Becerra is automatically substituted as a defendant for his predecessor, Kamala D. Harris, and Martha Supernor, Acting Chief of the Bureau of Firearms, is automatically substituted as a defendant for her predecessor, Stephen J. Lindley.

# TABLE OF CONTENTS


**Page**

Introduction ........ 1

Argument ........ 1

I. The State has satisfied the third and forth *Central Hudson* prongs. ........ 1

A. Tracy Rifle relies on the wrong legal standard to argue the third *Central Hudson* prong. ........ 1

1. Tracy Rifle's "Heavy Burden" argument is incompatible with intermediate scrutiny. ........ 1

2. The "Peculiar Hypothetical" Tracy Rifle posits is a straw man that does not accurately reflect the State's position or account for the evidence in this case. ........ 4

3. Section 26820 is not underinclusive. ........ 5

B. Tracy Rifle's arguments that section 26820 fails the fourth *Central Hudson* prong do not address the complexities of the violence and suicide associated with handguns. ........ 6

II. *Sorrell* does not govern this case. ........ 7

Conclusion ........ 9

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bd. of Tr. of State Univ. of N.Y. v. Fox*
492 U.S. 469 (1989) .......... 2, 8

*Central Hudson Gas v. Public Service Commission of New York*
447 U.S. 557 (1980) .......... *passim*

*City of Renton v. Playtime Theatres, Inc.*
475 U.S. 41 (1986) .......... 2

*Contest Promotions, LLC v. City & County of San Francisco*
No. 16-cv-06539-SI, 2017 WL 76896 (N.D. Cal. Jan. 1, 2017) .......... 8

*Coyote Publ'g Inc. v. Miller*
598 F.3d 592 (9th Cir. 2010) .......... 3, 9

*Ctr. for Fair Pub. Policy v. Maricopa County*
336 F.3d 1153 (9th Cir. 2003) .......... 2, 3

*Dex Media W., Inc. v. Seattle*
696 F.3d 952 (9th Cir. 2012) .......... 2

*Fla. Bar v. Went For It, Inc.*
515 U.S. 618 (1995) .......... 2, 3

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*
827 F.3d 1192 (9th Cir. 2016) .......... 8

*Milavetz, Gallop & Milavetz, P.A. v. United States*
559 U.S. 229 (2010) .......... 1

*Pitt News v. Pappert*
379 F.3d 96 (3d Cir. 2004) .......... 6

*Retail Digital Network, LLC v. Appelsmith*
810 F.3d 638 (9th Cir 2016) .......... 7

*Retail Digital Network, LLC v. Gorsuch*
842 F.3d 1092 (9th Cir. 2016) .......... 7

*Retail Digital Network, LLC v. Prieto*
(9th Cir. Case No. 13-56069) .......... 8

*Silvester v. Harris*
843 F.3d 816 (9th Cir. 2016) .......... 3, 5

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Sorrell v. IMS Health, Inc.*
564 U.S. 552 (2011) ........ 7, 8, 9

*Turner Broad. Sys., Inc. v. FCC*
512 U.S. 622 (1994) ........ 2

*Turner Broad. Sys., Inc. v. FCC*
520 U.S. 180 (1997) ........ 2

*Valle Del Sol Inc. v. Whiting*
709 F.3d 808 (9th Cir. 2013) ........ 5, 6, 7

*Williams-Yulee v. Fla. Bar*
135 S. Ct. 1656 (2015) ........ 5

**STATUTES**

Penal Code
§ 26820 ........ *passim*

**CONSTITUTIONAL PROVISIONS**

United States Constitution
First Amendment ........ 1, 2, 5
Second Amendment ........ 1, 3

## INTRODUCTION

Plaintiffs' motion for summary judgment fails to undermine the State's showing that it has satisfied the third and fourth prongs of the *Central Hudson* test that remain at issue in this case.[2] The State's evidence shows that it was reasonable for the Legislature to conclude that restricting point of sale handgun advertising — just one of myriad forms of handgun advertising available to firearms dealers — it could, by inhibiting impulse purchases of handguns, reduce handgun suicide and violence. Plaintiffs do not grapple with much of the State's evidence, do not identify the proper standard for evaluating that evidence, and misperceive the danger to public health that Penal Code section 26820 addresses. Therefore, the State's showing that section 26820 directly advances its interest in decreasing handgun violence and suicide, and restricts no more commercial speech than necessary to advance that interest, remains uncontroverted. This Court should thus deny Tracy Rifle's motion for summary judgment, and enter judgment in favor of the State on its cross-motion.

## ARGUMENT

### I. THE STATE HAS SATISFIED THE THIRD AND FORTH *CENTRAL HUDSON* PRONGS.

#### A. Tracy Rifle Relies on the Wrong Legal Standard to Argue the Third *Central Hudson* Prong.

Tracy Rifle incorrectly contends that intermediate scrutiny is somehow more exacting when applied to commercial speech than in other First Amendment and Second Amendment contexts. Tracy Rifle then asks the Court to apply that standard in a manner that discounts and ignores the evidence, rather than addressing it.

##### 1. Tracy Rifle's "Heavy Burden" Argument Is Incompatible with Intermediate Scrutiny.

Tracy Rifle argues that the State has a "heavy burden" to justify commercial speech regulations. ECF No. 51-1 at 11. But the *Central Hudson* test is an intermediate scrutiny test.

---

[2] *Central Hudson Gas v. Public Service Commission of New York*, 447 U.S. 557 (1980). The parties agree that the first two *Central Hudson* prongs are satisfied. *See* ECF No. 51-1

*See, e.g.*, *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 250 (2010) (describing "the intermediate scrutiny of *Central Hudson*"); *Dex Media W., Inc. v. Seattle*, 696 F.3d 952, 962 (9th Cir. 2012) (same). While more demanding than rational-basis review, intermediate scrutiny remains deferential to the policy judgments of lawmakers, particularly with respect to restrictions on commercial speech, which occupies a "subordinate position in the scale of First Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression." *See Bd. of Tr. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477 (1989). The Supreme Court has explained that, even in the First Amendment context, "deference must be accorded to [lawmakers'] findings as to the harm to be avoided and to the remedial measures adopted for that end, lest [the courts] infringe on traditional legislative authority to make predictive judgments when enacting nationwide regulatory policy." *See Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195-96 (1997) (*Turner II*); *see also Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 666, (1994) (*Turner I*) (plurality) ("[T]he obligation to exercise independent judgment when First Amendment rights are implicated is not a license to reweigh the evidence *de novo*, or to replace Congress' factual predictions with our own."). Lawmakers must be afforded "a reasonable opportunity to experiment with solutions to admittedly serious problems." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 52 (1986). They may adopt policies based on common sense; empirical data is not required to sustain their judgments. *See Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995); *see also Ctr. for Fair Pub. Policy v. Maricopa County*, 336 F.3d 1153, 1168 (9th Cir. 2003) (rejecting argument that local government needed empirical data to support its ordinance restricting the hours of sexually oriented businesses).

The "heavy burden" standard that Tracey Rifle invites this Court to adopt is incompatible with intermediate scrutiny. For instance, faulting the State's expert for not testifying as to the "*magnitude*" of section 26820's effect on decreasing impulsive handgun purchases, ECF No. 51-1 at 15 (emphasis in original), is an attempt to rob the Legislature of its authority to draw inferences, make predictive judgments, and extrapolate from academic findings about how the world works. *See, e.g.*, *Renton*, 475 U.S. at 51 (holding that, under intermediate scrutiny,

lawmakers may rely on evidence "reasonably believed to be relevant to the problem" that the law addresses). The Ninth Circuit did not require the State of Nevada to establish the magnitude by which its law restricting advertising for legal brothels would limit the commodification of sex. *See Coyote Publ'g Inc. v. Miller*, 598 F.3d 592, 608 (9th Cir. 2010). Nor did the Ninth Circuit require a local government to show the magnitude by which an ordinance restricting the hours of operation of sexually oriented businesses would ameliorate the noise, traffic, and crime believed to be associated with those businesses.[3] *See Center for Fair Public Policy*, 336 F.3d at 1166-67 (upholding restriction in the face of a "slim" record that was "hardly overwhelming").

In the Second Amendment context, the Ninth Circuit recently confirmed that the intermediate scrutiny test "is not a strict one." *Silvester v. Harris*, 843 F.3d 816, 827 (9th Cir. 2016) (noting that, under intermediate scrutiny, firearms regulations only need to be "substantially related to the important government interest of reducing firearm-related deaths and injuries" (quotation marks omitted)). Echoing precedent allowing lawmakers to rely on evidence reasonably believed to relevant to a problem, the court explained that laws subject to intermediate scrutiny need only "promote[] a substantial government interest that would be achieved less effectively absent the regulation." *See id.* at 829 (quotation marks omitted).

The court's discussion of the evidence in *Silvester* is instructive here. The court concluded that studies "showing that a cooling-off period *may* prevent or reduce impulsive acts of gun violence or self harm" confirmed the "common sense understanding" of how urges to commit violence or self harm work. *Id.* at 828 (emphasis added). Similarly, here the State's expert reports and studies demonstrate that a reasonable person could fairly conclude that the goal of reducing firearm violence and suicide would be achieved less effectively in the absence of section 26820. That is all that intermediate scrutiny requires.

[3] Tracy Rifle relies on *Edenfield v. Fane* to support its "heavy burden" argument. ECF No. 51-1 at 11-12 (citing 507 U.S. 761, 770 (1993)). But, as the Supreme Court recognized in *Florida Bar*, the state in *Edenfield* offered "no evidence or anecdotes in support of its [commercial speech] restriction . . . ." *Fla. Bar*, 515 U.S. at 628.

**2. The "Peculiar Hypothetical" Tracy Rifle Posits is a Straw Man That Does Not Accurately Reflect the State's Position or Account for the Evidence in This Case.**

Tracy Rifle bases its argument for invalidation on a misperception of the purpose and effect of section 26820, as if the evidence showed only that the law deters someone in the "grip of some 'emotion'" from buying a handgun and instantly committing a crime or attempting suicide. *See* ECF No. 51-1 at 12. It then argues that other laws, specifically the 10-day waiting period and the firearms safety test, make it section 26820 unnecessary because by the time the frenzied purchaser receives the firearm, the emotion that drove the purchase will have subsided, and with it, the risk of violence or self harm. *See* ECF No. 51-1 at 12-13.

This mistakes the State's evidence and arguments. *See* ECF No. 52 at 11-16. Section 26820 addresses a broader problem by inhibiting handgun purchases not just by the temporarily addled, but by people with impulsive personality traits, who, as a group, are at a higher risk for suicide than the population in general. Thus, while the law inhibits purchases by anyone in the throes of rage or despair, it also serves to inhibit impulsive people generally from purchasing a handgun, and introducing that gun into a home where it may be used later in a suicide attempt by the impulsive purchaser, or a parent or child.

Despite the 10-day waiting period and firearms safety tests, each year, on average, several hundred people in California use handguns to commit suicide. ECF No. 52-1 Fact No. 8 (citing ECF No. 52-16). A study from California, which accounts for the State's 10-day waiting period, found that suicide was the leading cause of death among handgun purchasers in the year after they purchased a handgun. ECF No. 52-1 Fact No. 15 (citing ECF No. 52-20 at 1583, 1587). That study found that the increase in risk started within a week of purchase and lasts up to six years. *Id.* Several studies have also found that the purchase of a handgun is associated with an increased risk in suicide for members of the purchaser's household, ECF No. 52-1 Fact No. 14 (citing ECF Nos. 52-19 to 52-21), a fact that is likely explained by the observation of the State's suicide expert, Dr. Mann, that the impulsiveness associated with suicide is heritable, *see* ECF No. 43-2. It is therefore not surprising that the 10-day waiting period does not stop all firearm suicides. While it may serve to stop immediately impulsive acts, it cannot address the persistence

of suicide by purchasers and their family members after 10 days. For similar reasons, the firearm safety test cannot adequately address the dangers associated with impulsive people bringing handguns into their homes.

Intermediate scrutiny does not demand complete effectiveness from section 26820; it requires only that the goal of suicide reduction would be achieved less effectively without it. *See Silvester*, 843 F.3d at 829. As the State's suicide expert explained, the factors involved in firearm suicide are complex, and no one strategy is sufficient to address the problem. ECF No. 43-2 ¶¶ 14, 30-32. In his view as a recognized expert on suicide, if the law prevents people with impulsive personality traits from purchasing a handgun, it will result in a decrease in suicides. ECF No. 43-2 ¶¶ 15, 33. This evidence is uncontroverted. Thus, although the 10-day waiting period, the testing requirements, and section 26820 may partially overlap in the way that they attempt to reduce firearm suicide, they are not redundant.[4]

**3. Section 26820 Is Not Underinclusive.**

Tracy Rifle also suggests that section 26820 is underinclusive and thus invalid because it does not ban signs that say things like "Guns for Sale." *See* ECF No. 51-1 at 13-14. But the particular problem that section 26820 targets is handgun violence and suicide. So restricting only handgun advertising that promotes impulsive purchases by people with impulsive personality traits, who are at a higher risk for suicide and other violent activity, reflects appropriate tailoring, not underinclusiveness.

In any event, "the First Amendment imposes no freestanding under-inclusiveness limitation." *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1668 (2015). Rather, inquiring into underinclusiveness is a way to analyze whether a particular speaker or viewpoint is being disfavored, which is not at issue here. *Id.* This relationship between underinclusiveness and disfavoring particular speakers is demonstrated in a case on which Tracy Rifle relies, *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808 (9th Cir. 2013). *See* ECF No. 51-1 at 14. There, the court

[4] Tracy Rifle's motion promises to "elaborate on the State's expert testimony in much greater detail" in its opposition to the State's motion for summary judgment. ECF No. 51-1 at 15. Accordingly, and to avoid repetition, the State will leave the discussion of its expert testimony for its reply brief.

affirmed a preliminary injunction halting the enforcement of an Arizona traffic law "designed to suppress the economic activity of undocumented immigrants." *Id.* at 814, 827-28. Section 26820 is not designed to suppress the economic activity of firearms dealers — they may promote their wares in countless other ways. Nor does section 26820 favor or target a subcategory of seller.

Tracy Rifle also attempts to analogize section 26820 to a Pennsylvania law prohibiting alcohol advertisements in college-affiliated media that the Third Circuit struck down in *Pitt News v. Pappert*, 379 F.3d 96 (3d Cir. 2004). ECF No. 51-1 at 14. The analogy is flawed. In *Pitt News*, the court held that the law did not directly advance the state's interests in decreasing underage drinking and promoting temperance because non-college-affiliated papers that did advertise alcohol sat on news racks right next to the college-affiliated paper. 379 F.3d at 101-02, 107. That is not the case here. Under California law, no store may advertise the sale of handguns on its exterior.

### B. Tracy Rifle's Arguments That Section 26820 Fails the Fourth *Central Hudson* Prong Do Not Address the Complexities of the Violence and Suicide Associated with Handguns.

Relying on *Valle Del Sol*, Tracy Rifle argues that section 26820 fails the fourth *Central Hudson* prong because there are non-speech ways to address the problem of handgun violence and suicide, and the law therefore restricts more speech than necessary to advance the State's goal. ECF No. 51-1 at 18-19. But *Valle Del Sol* is distinguishable. The defect with Arizona's law preventing roadside solicitation of day labor was that it was "expressly intended to deter day labor activity *by undocumented immigrants*," and did not restrict other roadside communications. *See Valle Del Sol*, 709 F.3d at 819 (emphasis added). In analyzing the fourth *Central Hudson* prong, the court found the Arizona law overinclusive because there were non-speech-based traffic laws that could address concerns about traffic *without targeting a certain type of speaker* and "[n]othing in the record show[ed] that Arizona could not effectively pursue its interest in traffic safety by enforcing or enacting similar kinds of speech-neutral traffic safety regulations." *Id.* at 827.

Tracy Rifle suggests that the existing 10-day waiting period and testing requirements are adequate methods for addressing the dangers associated with impulsive purchases of handguns,

and that the State could engage in an education campaign to counteract the effect of the speech. ECF No. 51-1 at 19. But unlike the Arizona law at issue in *Valle del Sol*, section 26820 is not a law "expressly intended" to targets a disfavored group.

More significantly, addressing the dangers to public safety associated with impulse purchases of handguns is a more complex endeavor than addressing traffic safety issues caused by roadside communications. Handgun suicide persists in California notwithstanding the laws that Tracy Rifle cites, and its offers no evidence to support its suggestion that an educational campaign could solve the problem of people with impulsive personality traits buying handguns and bringing them into their home. Simply proposing an educational campaign does not satisfy Tracy Rifle's burden on summary judgment.

As set forth in the State's motion for summary judgment, ECF No. 52 at 17-18, section 26820 satisfies the fourth *Central Hudson* prong because its scope is in proportion to the interest served.

## II. *SORRELL* DOES NOT GOVERN THIS CASE.

Tracy Rifle contends that the Supreme Court's decision in *Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011), has "cast doubt on whether *Central Hudson* should remain the controlling test for commercial speech." ECF No. 51-1 at 7. It argues that section 26820 is a content- and speaker-based regulation that is presumptively invalid. ECF No. 51-1 at 6-7. It is not clear from Tracy Rifle's brief whether it is asking this Court to rule that *Sorrell* overruled or otherwise modified the *Central Hudson* standard for commercial speech regulations, or whether it is making an observation about where it believes the law is going. *See* ECF No. 51-1 at 8 ("[I]n any event, Section 26820 fails even the scrutiny set forth in *Central Hudson*."). To the extent that Tracy Rifle seeks a ruling that *Sorrell* overruled or significantly modified *Central Hudson*, or that it otherwise governs this case, this Court should decline the invitation for a number of reasons.[5]

---

[5] As a preliminary matter, the question of the relationship between *Sorrell* and *Central Hudson* is currently before an en banc panel of the Ninth Circuit. *See Retail Digital Network, LLC v. Appelsmith*, 810 F.3d 638, *reh'g en banc granted sub nom. Retail Digital Network, LLC v. Gorsuch*, 842 F.3d 1092 (9th Cir. 2016). The court heard oral argument on January 19, 2017. *Retail Digital Network, LLC v. Prieto*, (9th Cir. Case No. 13-56069), ECF No. 117.

First, *Sorrell* did not adopt a new standard for content- and speaker-based commercial speech regulations. Commercial speech restrictions are inherently content- or speaker- based, and the fit requirement of intermediate scrutiny ensures such regulations are reasonably tailored to "achieve [lawmakers'] desired objective." *See Fox*, 492 U.S. at 480. Intermediate scrutiny thus ensures that regulations of commercial speech are not used invidiously to attack disfavored ideas or speakers.

Second, Tracy Rifle cites no cases supporting its reading of *Sorrell*, which several courts have rejected. *See, e.g.*, *Mo. Broad. Ass'n v. Lacy*, – F.3d –, 2017 WL 218024, at *3 n.5 (8th Cir. Jan. 19, 2017) ("Though *Sorrell* does describe the required scrutiny as 'heightened,' the Supreme Court still went on to apply the four-prong standard of *Central Hudson*. . . . Thus, because the challenged provisions here are content- and speaker-based commercial speech restrictions, we evaluate them using the *Central Hudson* factors."); *Contest Promotions, LLC v. City & County of San Francisco*, No. 16-cv-06539-SI, 2017 WL 76896, at *6 (N.D. Cal. Jan. 1, 2017) ("Since *Central Hudson*, regulations suppressing or burdening commercial speech must withstand intermediate judicial scrutiny. This rule presently remains undisturbed." (citation omitted)); *see also Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1198 n.3 (9th Cir. 2016) (dicta) ("[A]lthough laws that restrict only commercial speech are content based, such restrictions need only withstand intermediate scrutiny." (citation omitted).)

Finally, Tracy Rifle does not and cannot draw any comparisons between the statute at issue in *Sorrell* and section 26820, which is distinguishable. *Sorrell* addressed a Vermont statute that barred pharmacies from selling or disclosing records of individual doctors' prescribing habits *to those who would use the records to market prescription drugs*. *Sorrell*, 564 U.S. at 557. The statute also barred pharmaceutical companies from using the records for such purposes. *Id.* Vermont's Legislature had enacted the law to correct what it viewed as a "'one-sided'" marketplace for "'ideas on medicine safety and effectiveness.'" *Id.* at 561. Vermont aimed to prevent pharmaceutical representatives from using information about individual doctors' prescription practices to "shape their messages" when promoting expensive drugs to the doctors, hoping as a result to lessen doctors' "excessive reliance on brand-name drugs." *Id.* The Supreme

Court held Vermont's statute unconstitutional, ruling that Vermont's privacy-based justifications for prohibiting the sale or disclosure individual physician's prescribing practices lacked coherence because the state "made prescriber-identifying information available to an almost limitless audience," yet sought to exclude pharmaceutical companies from receiving that information. *Id.* at 573.

Section 26820 does not suffer from any similar defect. Although it applies to a particular group of advertisers — firearms dealers — it does not specifically target them as speakers because it leaves open ample methods for them to advertise that they sell handguns, just not in ways that will promote the point of sale impulse purchases that increase suicide rates. Nor does section 26820 allow everyone but firearms dealers to advertise handguns for sale on the exterior of stores. At bottom, it is not a viewpoint that section 26820 targets, but rather the effect of a specific type of advertising. That makes it more akin to Nevada's restriction on brothel advertising at issue in *Coyote Publishing*, 598 F.3d 592, which attempted to diminish the commodification of sex, than to Vermont's law restricting pharmaceutical company's use of doctors prescribing information.

**CONCLUSION**

For the foregoing reasons, this Court should deny Tracy Rifle's motion for summary judgment and grant the State's motion for summary judgment.

Dated: February 2, 2017

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General

/s/ Nelson Richards
NELSON R. RICHARDS
EMMANUELLE S. SOICHET
Deputy Attorneys General
*Attorneys for Defendants*

SA2014119177
95212918.doc