BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
400 Capitol Mall, Suite 1610
Sacramento, CA 95814
Telephone: (916) 447-4900
Facsimile: (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

EUGENE VOLOKH (SBN 194464)
UCLA School of Law
405 Hilgard Ave.
Los Angeles, CA 90095
Telephone: (310) 206-3926
Facsimile: (310) 206-7010
eugene.volokh@gmail.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY RIFLE AND PISTOL LLC; MICHAEL BARYLA; TEN PERCENT FIREARMS; WESLEY MORRIS; SACRAMENTO BLACK RIFLE, INC.; ROBERT ADAMS; PRK ARMS, INC.; JEFFREY MULLEN; IMBERT & SMITHERS, INC.; and ALEX ROLSKY,<br><br>Plaintiffs,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of California; and MARTHA SUPERNOR, in her official capacity as Acting Chief of the California Department of Justice Bureau of Firearms,<br><br>Defendants. | Case No.: 2:14-cv-02626-TLN-DB<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: Feb. 23, 2017<br>Time: 2:00 p.m.<br>Courtroom: 2<br>Judge: Troy L. Nunley<br><br>Action filed Nov. 10, 2014 |

# REPLY MEMORANDUM

1. ***Sorrell* Forecloses Any Theory That The Government Could Suppress Truthful, Nonmisleading Speech Based On A Fear That A Subset Of The Public Will React Irrationally To That Speech.**

The State says Section 26820 is justified because handgun advertising may persuade some people with "impulsive personality traits" to purchase handguns. State Opp. at 4:10–13. The government is thus picking a particular group of law-abiding adults whose supposed psychological makeup it distrusts, and trying to inhibit messages those people receive. As noted in plaintiffs' opposition to the State's motion, this new articulation—focusing on an amorphous set of "impulsive" personalities—shifts away from the State's original theory, namely that the law targeted anyone who might make an "emotion-driven impulse purchase." Pls' Opp., ECF NO. 55, at 5:3–18.

But the State's modified theory is still doomed under *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011). Whatever else *Sorrell* may do, it holds that "the fear that speech might persuade provides no lawful basis for quieting it." 564 U.S. at 576. And while the State is concerned that some of these impulsive people may later use a handgun to commit suicide or an act of violence, *Sorrell* reaffirms that the "'fear that people would make bad decisions if given truthful information' cannot justify content-based burdens on speech." *Id.* at 577 (citation omitted). A state "may not seek to remove a popular but disfavored product from the marketplace by prohibiting truthful, nonmisleading advertisements . . . . That the State finds expression too persuasive does not permit it to quiet the speech or to burden its messengers." *Id.* at 577–78.

*Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 374 (2002), holds the same: The State may not pursue its policy goals "by keeping the public in ignorance" of the terms of a lawful commercial transaction, *id.* at 375 (quoting *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 770 (1976)). The *44 Liquormart* plurality takes the same view. Because "[b]ans against truthful, nonmisleading commercial speech . . . usually rest solely on the offensive assumption that the public will respond 'irrationally' to the truth," "the First Amendment directs us to be especially skeptical of regulations that seek to keep people in the dark for what the government perceives to be their own good." *44 Liquormart, Inc. v. Rhode Island*,

517 U.S. 484, 503 (1996) (plurality op.). (This passage was later endorsed by majorities in the Supreme Court and by the Ninth Circuit, *Sorrell*, 564 U.S. at 577; *Thompson*, 535 U.S. at 375; *W. States Med. Ctr. v. Shalala*, 238 F.3d 1090, 1096 (9th Cir. 2001), *aff'd sub nom. Thompson*.) And yet the State here is doing precisely what *44 Liquormart* condemned: Worried that some people "will respond 'irrationally' to the truth" it is trying "to keep [them] in the dark for what the government perceives to be their own good."

These precedents are fully applicable even when a lawful product may be dangerous if misused. Indeed, *44 Liquormart* itself upheld the right to advertise alcohol, a dangerous substance that is abused by many people. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001), upheld storefront, outdoor, and point-of-sale advertising for tobacco products, which are likewise harmful. "The choice 'between the dangers of suppressing information, and the dangers of its misuse if it is freely available' is one that 'the First Amendment makes for us.'" *Sorrell*, 564 U.S. at 578 (quoting *Virginia Bd.*, 425 U.S. at 770); *see 44 Liquormart*, 517 U.S. at 510 (plurality op.) (same); *Thompson*, 535 U.S. at 375 (same).

**2. Content- and Speaker-Based Speech Restrictions Are Presumptively Unconstitutional Under *Sorrell*.**

*Sorrell* also shows that Section 26820 is doubly constitutionally suspect because it is both a speaker-based restriction and a content-based restriction. In *Sorrell*, a Vermont law disfavored "speech with a particular content" (marketing) and "disfavor[ed] specific speakers" (pharmaceutical manufacturers). 564 U.S. at 564. This is precisely what Section 26820 does: The law seeks to depress sales of a disfavored product (handguns) by suppressing truthful speech by specific disfavored speakers (the merchants who sell them). California, just as Vermont in *Sorrell*, cannot "achieve its policy objectives through the indirect means of restraining certain speech by certain speakers—that is, by diminishing [firearms dealers'] ability to influence [purchasing] decisions." *Id.* at 577. So long as responsible, law-abiding adults may purchase handguns in California, the First Amendment constrains the State's ability to restrict advertising of handguns. "[T]he State may not seek to remove a popular but disfavored product from the marketplace by prohibiting truthful, nonmisleading advertisements" about it. *Id.* at 577–78.

The State also appears to take the view that it may target a disfavored subset of listeners (those with supposedly "impulsive personality traits") as well as of speakers (handgun sellers). But several Supreme Court cases—including *Lorillard*—confirm the government cannot restrict commercial speech (which adults have a constitutionally protected interest in receiving) in order to shield a segment of the population. That is true even when the government wants to shield child viewers. *See, e.g.*, *Lorillard*, 533 U.S. at 564 ("[T]he governmental interest in protecting children from harmful materials . . . does not justify an unnecessarily broad suppression of speech addressed to adults."); *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 74 (1983) ("The level of discourse reaching a mailbox simply cannot be limited to that which would be suitable for a sandbox."). It is doubly true when the government is concerned about adult (but supposedly "impulsive") viewers.

Indulging the State's "personality-trait" theory would mean state and local governments could circumvent *Lorillard* and *44 Liquormart* simply by getting experts to follow the two-step template offered by the State in this case: (1) a certain portion of the population has personality traits (impulsiveness, gullibility, susceptibility to social pressure, attention deficit disorder, or the like) that cause them to make poor decisions and be more susceptible to advertising, and (2) these same personality traits make them more likely to start drinking or smoking, which will cause them harm. Overruling Supreme Court cases is not that easy.

**3.     *Central Hudson* Requires That The State Demonstrate, With Evidence, That Section 26820 Directly And Materially Advances Its Asserted Interest.**

As it did in its summary judgment brief, the State argues here in favor of a relaxed evidentiary burden built on legislative deference. (State Opp. 1:16–3:23.) This is incorrect: The heightened scrutiny standard that applies in *Central Hudson* challenges to direct, content-based restrictions on commercial speech imposes a more demanding evidentiary burden on the State than in the case of non-content-based regulations that incidentally burden speech, as in *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180 (1997) (must carry rules imposed on cable companies), and *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1986) (zoning restriction). *See* Pls. Opp., ECF No. 55, at 7:23–10:5 (discussing this in more detail). "A regulation cannot be sustained if it 'provides

REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
-3-

only ineffective or remote support for the government's purpose,' or if there is 'little chance' that the restriction will advance the State's goal." *Lorillard*, 533 U.S. at 566 (quoting *Edenfield v. Fane*, 507 U.S. 761, 770 (1993), and *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 193 (1999)).

The cases the State relies on (for the most part, First Amendment challenges to content-neutral restrictions on sexually oriented businesses) do not apply here. The Supreme Court's decision in *Sorrell* leaves no doubt that a deferential approach is not suitable for content-based commercial speech restrictions: "The First Amendment requires heightened scrutiny whenever the government creates a regulation of speech because of disagreement with the message it conveys," and "[c]ommercial speech is no exception." *Sorrell*, 564 U.S. at 566 (internal quotation marks and citation omitted). Indeed, *44 Liquormart* explicitly rejected the sort of broad legislative deference argument the State now advances. 517 U.S. at 508–10 (relying on the Court's "longstanding hostility" to paternalistic commercial speech regulations to reject the government's argument that the Court should defer to a supposedly "reasonable choice by the legislature," and disapproving *Posadas de P.R. Associates v. Tourism Co. of P.R.*, 478 U.S. 328 (1986), on this point).

The state also relies on *Coyote Publishing, Inc. v. Miller*, 598 F.3d 592 (9th Cir. 2010), but ignores the limitations that the Ninth Circuit deliberately included in that opinion. The Ninth Circuit's analysis in *Coyote Publishing* began by stressing "the degree of disfavor in which prostitution is held in our society, as reflected in law. In this respect, prostitution is sui generis. Forty-nine of the fifty states today prohibit all sales of sexual services." *Id.* at 600. "The social condemnation of prostitution, therefore, is vastly more widespread—and vastly more consistent—than in the case of other categories of 'vice' that courts have considered, such as alcohol, tobacco products, and gambling." *Id.* at 601.

Handguns are nearly the exact opposite of prostitution in this respect. Even before *District of Columbia v. Heller*, 554 U.S. 570 (2008), recognized a constitutional right to possess a handgun, fifty of the fifty states allowed sales of handguns (with only D.C. and the City of Chicago and some suburbs forbidding handguns). The California Attorney General may condemn handguns, but under *Coyote Publishing*, what matters is whether that condemnation is universally

shared throughout the nation—and it plainly is not.  Rather than reflecting social condemnation, state laws throughout the nation reflect social toleration of handgun ownership; indeed, many states' laws reflect hostility towards local efforts to restrict the ownership and carrying of handguns.  *See, e.g.*, Alan Berlow, *Concealed Carry*, Politico (Dec. 12, 2013), http://politi.co/2l5Q6wT (noting that all states now permit concealed carry of handguns, compared to only 31 states in 1981, and that 37 states now have so-called "shall issue" laws, compared to only 2 in 1981).  *Coyote Publishing*, and the "sui generis" activity involved in that case, is about as far from this case as one can get.

Likewise, in *Coyote Publishing*, the Ninth Circuit stressed that the statute was justified by an "interest in limiting the commodification of sex," 598 F.3d at 602, and a "genuine objection to buying and selling [sex]," *id.* at 604, which was seen as sufficient to justify forbidding advertisements for such buying and selling, even if the actual transactions had been legalized, *id.* at 605–06.  But this rationale does not apply to bans on handgun advertisements, either.  Handguns are indeed commodities sold on the market, even if, like alcohol or cigarettes, they are commodities that some may abuse in ways that harm others.

Finally, the State's argument rests on its claim claims that its suicide expert's opinion "evidence is uncontroverted," State Opp. at 5:10, which is peculiar, since it was not the plaintiffs' job to dispute this evidence in their motion.  "Under a commercial speech inquiry, it is the State's burden to justify its content-based law as consistent with the First Amendment." *Sorrell*, 564 U.S. at 571–72.  In any event, plaintiffs explained in detail, in their opposition to the state's motion, the many reasons why Dr. Mann's expert opinion falls far short of satisfying the State's burden under *Central Hudson*'s third and fourth prongs, Pls. Opp., ECF No. 55, at pp. 14–17, even if the Court considers the State's "impulsive personality trait" gambit.

4.    **Section 26820's Striking Underinclusiveness Helps Show That It Does Not Directly And Materially Advance The State's Interest.**

The State makes a passing argument that Section 26820 is appropriately tailored to limit handgun advertising, but it fails to address the core issue:  How does restricting a narrow subset of advertisements (for example, "Handguns For Sale") *materially* advance the State's interest in

preventing suicide, when the State still allows substantially similar advertisements ("Guns For Sale")? Shotguns, after all, are as effective for committing suicide as are handguns, and the State has offered no evidence or explanation to support the theory that on-site handgun advertisements are somehow special in promoting impulse purchases, in a way that other advertisements are not. And of course the hypothetical impulsive purchaser who is lured into a gun store by a sign promoting rifles or shotguns (or guns generally) could then impulsively buy a handgun instead.

The Supreme Court's holding in *Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995), is instructive here. In that case, the federal government argued that a ban on disclosing alcohol content only on beer labels furthered the interest in temperance (by preventing "strength wars" in which beer manufacturers would tout that their beer is stronger than others'). But the law did not "prohibit the disclosure of alcohol content in advertising," allowed such disclosure even on labels for distilled spirits, and "permit[ted] brewers to signal high alcohol content through use of the term 'malt liquor.'" *Id.* at 488–89. This failure to restrict commercial speech that likewise implicated the supposed government interest, the Court held, showed that the law did not "directly and materially advance" the interest. *Id.* at 488. The Court's decision in *Greater New Orleans Broad. Ass'n, Inc.*, 527 U.S. 173, likewise confirmed that restricting some advertising of an activity (there, casino advertising) while allowing other advertising that would have similar effects (there, advertising for tribal casinos) renders a law so underinclusive that it cannot pass the "directly and materially advance[]" requirement, *id.* at 189–90, 193.

The same is true here: Section 26820 permits advertising for rifles and shotguns (which are at least as lethal as handguns[1]), plus also permits advertising for handguns on billboards, in magazines, on radio stations, or over the Internet—and this similarly prevents a finding that the law "directly and materially advances" the government interest.

///

///

///

---

[1] *See, e.g.*, Clinton E. Rhyne, et. al, *Dimensions of Suicide: Perceptions of Lethality, Time, and Agony*, 25 Suicide & Life-Threatening Behavior 373, 375 & Table 1 (1995).

### 5. The State Has Not Met Its Burden Of Establishing That Section 26820 Is Not More Extensive Than Necessary.

Under the fourth prong of *Central Hudson*, the State must show that the "speech restriction is not more extensive than necessary to serve the interests that support it." *Lorillard Tobacco*, 533 U.S. at 556 (citation and quotation marks omitted). This rule reflects the view that, "[i]f the First Amendment means anything, it means that regulating speech must be a last—not first—resort." *Thompson*, 535 U.S. at 373. And "if the Government could achieve its interests in a manner that does not restrict speech, or that restricts less speech, the Government must do so." *Id.* at 371.

In *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808 (9th Cir. 2013), the Ninth Circuit made clear that this is a demanding requirement. A commercial speech restriction unconstitutionally "restrict[s] more speech than necessary" when the government "'has various other laws at its disposal that would allow it to achieve its stated interests while burdening little or no speech.'" *Id.* at 826 (quoting *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 949 (9th Cir. 2011) (en banc)). "[B]ecause restricting speech should be the government's tool of last resort, the availability of obvious less-restrictive alternatives renders a speech restriction overinclusive." *Id.* When "a number of preexisting . . . laws" "could be used to address legitimate traffic safety concerns"—or, here other legitimate public safety concerns—"without burdening speech," that makes the law unconstitutional. *Id.*

The State attempts to distinguish *Comite de Jornaleros* by claiming that Section 26820 "is not a law 'expressly intended' to target a disfavored group." (State Opp. at 7:2–3.) But of course that is precisely the nature and effect of Section 26820: It is a content-based speech restriction that expressly targets firearms dealers, and thus "disfavors specific speakers." *Sorrell*, 564 U.S. at 564. And it is a content-based restriction that is expressly aimed at restricting speech to a disfavored group of listeners—those with ill-defined and undiagnosed "impulsive personality traits."

Moreover, while the State pooh-poohs plaintiffs' suggestion that it pursue an educational campaign focused on handgun violence and suicide, the Supreme Court has on several occasions stressed that the State should generally pursue its interest through such counterspeech, rather than speech suppression. "[If the government's] concern is that tobacco advertising communicates a message with which it disagrees, it could seek to counteract that message with 'more speech, not

enforced silence.'" *Lorillard Tobacco*, 533 U.S. at 586 (citation omitted). "The State . . . cannot satisfy the requirement that its restriction on [alcohol price advertising] be no more extensive than necessary," in part because "[e]ven educational campaigns focused on the problems of excessive, or even moderate, drinking might prove to be more effective." *44 Liquormart*, 517 U.S. at 507 (plurality op.); *id.* at 530 (O'Connor, J., concurring in the judgment) (making the same argument). "In invalidating [a ban on 'For Sale' signs, aimed at preventing panic selling by whites that might lead to resegregation], we by no means leave Willingboro defenseless in its effort to promote integrated housing. The township obviously remains free to continue 'the process of education' it has already begun. [And i]t can give widespread publicity—through 'Not for Sale' signs or other methods—to the number of whites remaining in Willingboro." *Linmark Assocs., Inc. v. Township of Willingboro*, 431 U.S. 85, 97 (1977).

Finally, the State faults Plaintiffs for not offering evidence to establish that an educational campaign would serve the State's interest, but the State is the one that bears the burden of proof here. *See Sorrell*, 564 U.S. at 572 ("To sustain [a] targeted, content-based burden . . . on protected expression, the State must show at least that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest."); *Valle Del Sol*, 709 F.3d at 816 (the government bears the burden of establishing that a speech restriction satisfies the *Central Hudson* elements). The State has not offered any reason, explanation, or evidence to show that the existing regulations are insufficient to address its asserted interest. Nor has it explained why it could not pass additional non-speech-related laws that could directly address the purported problems associated with handgun purchases by people with "impulsive personality traits."

## CONCLUSION

Section 26820 restricts truthful speech to the public, based on the State's fear that some viewers will react irrationally and "impulsively" to that speech. But the Supreme Court has repeatedly made clear that this is not a permissible basis for restricting speech, including commercial speech.

Moreover, Section 26820 is a content-based and speaker-based restriction. The State has not carried its burden of showing that the restriction directly and materially advances its asserted

interest. The striking underinclusiveness of the law (which allows unlimited advertising of shotguns, for instance, while banning some advertising of handguns) further renders it unable to directly and materially advance the interest. And the State has not shown that Section 26820 is not more extensive than necessary. The Supreme Court's leading commercial speech precedents—*Sorrell*, *Thompson*, *Lorillard*, *44 Liquormart*, *Rubin*, and more—all show that Section 26820 violates the First Amendment. For all these reasons, and for the reasons given in Plaintiffs' opening brief, the Court should grant Plaintiffs' motion for summary judgment.

Dated: February 14, 2017   BENBROOK LAW GROUP, PC

By s/ Bradley A. Benbrook
BRADLEY A. BENBROOK

s/ Eugene Volokh
EUGENE VOLOKH
Attorneys for Plaintiffs