1 | XAVIER BECERRA, State Bar No. 118517
Attorney General of California
2 | TAMAR PACHTER, State Bar No. 146083
Supervising Deputy Attorney General
3 | NELSON R. RICHARDS, State Bar No. 246996
Deputy Attorney General
4 |  2550 Mariposa Mall, Room 5090
 Fresno, CA  93721
5 |  Telephone:  (559) 477-1688
 Fax:  (559) 445-5106
6 |  E-mail:  Nelson.Richards@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TRACY RIFLE AND PISTOL LLC et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**XAVIER BECERRA, in his official capacity as Attorney General of California, et al.,**<br><br>Defendants. | 2:14-cv-02626-TLN-DB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  02/23/2017<br>Time:  2:00 p.m.<br>Judge:  Hon. Troy L. Nunley<br>Trial Date:  09/05/2017<br>Action Filed:  11/10/2014 |

**TABLE OF CONTENTS**

**Page**

Introduction ................................................................................................................................ 1
Argument .................................................................................................................................... 1
    I.    Commercial speech restrictions are subject to intermediate scrutiny, which can be satisfied by substantial evidence. ................................................................ 1
    II.   Section 26820 directly advances California's interests in decreasing handgun violence and suicide. ........................................................................... 4
        A.    Tracy Rifle's criticism of Professor Gundlach's report do not undermine the evidentiary value of his testimony. .................................... 6
        B.    Tracy Rifle's criticism of Professor Mann's report do not undermine the evidentiary value of his testimony. .................................... 7
        C.    Section 26820 directly advances the State's interest in decreasing handgun violence. ........................................................................................ 8
    III.  Section 26820 is no more restrictive than necessary to advance the State's interests. ................................................................................................................ 9
Conclusion ................................................................................................................................. 9

i

Reply in support of Defs.' Mot. for Summ. J. (2:14-cv-02626-TLN-DB)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*44 Liquormart, Inc. v. Rhode Island*
   517 U.S. 484 (1996) ...................................................................................................3, 4, 9

*Bd. of Tr. of State Univ. of N.Y. v. Fox*
   492 U.S. 469 (1989) ...............................................................................................................2

*Bench Billboard Co. v. City of Covington*
   465 F. App'x 395 (6th Cir. 2012) ...........................................................................................1

*Central Hudson Gas v. Public Service Commission of New York*
   447 U.S. 557 (1980) ....................................................................................................1, 2, 9

*City of Renton v. Playtime Theatres, Inc.*
   475 U.S. 41 (1986) .............................................................................................................1, 2

*Coyote Publishing Inc. v. Miller*
   598 F.3d 592 (9th Cir. 2010) ........................................................................................3, 4, 5

*Ctr. for Fair Pub. Policy v. Maricopa County*
   336 F.3d 1153 (9th Cir. 2003) ................................................................................................2

*Fla. Bar v. Went For It, Inc.*
   515 U.S. 618 (1995) ...............................................................................................................5

*Greater New Orleans Broad. Ass'n, Inc. v. United States*
   527 U.S. 173 (1999) ..........................................................................................................3, 4

*Heller v. District of Columbia*
   670 F.3d 1244 (D.C. Cir. 2011) .............................................................................................2

*Heller v. District of Columbia*
   801 F.3d 264 (D.C. Cir. 2015) ...............................................................................................3

*Lorillard Tobacco Co. v. Reilly*
   533 U.S. 525 (2001) ...................................................................................................... *passim*

*Minority Television Project, Inc. v. FCC*
   736 F.3d 1192 (9th Cir. 2013) (en banc) ...............................................................................2

*Rubin v. Coors Brewing Co.*
   514 U.S. 476 (1995) ..........................................................................................................3, 4

*Silvester v. Harris*
   843 F.3d 816 (9th Cir. 2016) .......................................................................................4, 5, 8, 9

ii

Reply in support of Defs.' Mot. for Summ. J. (2:14-cv-02626-TLN-DB)

*Sorrell v. IMS Health, Inc.*
   564 U.S. 552 (2011) .................................................................................................. 2, 3, 9

*Thompson v. W. States Med. Ctr.*
   535 U.S. 357 (2002) .................................................................................................. 3, 4, 9

*Tracy Rifle & Pistol LLC v. Harris*
   118 F. Supp. 3d 1182 (E.D. Cal. 2015) ........................................................................ 5, 9

*Turner Broad. Sys., Inc. v. FCC*
   512 U.S. 622 (1994) (*Turner I*) ....................................................................................... 2

*Turner Broad. Sys., Inc. v. FCC*
   520 U.S. 180 (1997) (*Turner II*) ..................................................................................... 1

*United States v. Chester*
   628 F.3d 673 (4th Cir. 2010) ........................................................................................... 2

*United States v. Chovan*
   735 F.3d 1127 (9th Cir. 2013) ......................................................................................... 2

*United States v. Marzzarella*
   614 F.3d 85 (3d Cir. 2010) .............................................................................................. 2

*Valle Del Sol Inc. v. Whiting*
   709 F.3d 808 (9th Cir. 2013) ........................................................................................... 9

*Ward v. Rock Against Racism*
   491 U.S. 781 (1989) ........................................................................................................ 2

**STATUTES**

Penal Code
   § 26820 ................................................................................................................... *passim*

**CONSTITUTIONAL PROVISIONS**

United States Constitution
   First Amendment ......................................................................................................... 1, 2
   Second Amendment ..................................................................................................... 2, 3

iii

Reply in support of Defs.' Mot. for Summ. J. (2:14-cv-02626-TLN-DB)

# INTRODUCTION

Uncontradicted evidence shows that Penal Code section 26820 is a reasonable regulation of commercial speech: by inhibiting impulsive handgun purchases, especially by people with impulsive personality traits, it decreases handgun violence and suicide. Rather than squarely address this evidence, Tracy Rifle responds that the Court should disregard governing case law and instead apply a legal standard more strict than intermediate scrutiny, and require evidence no court has required for satisfying intermediate scrutiny. Because the State has met its evidentiary burden, and Tracy Rifle has failed to submit any evidence that might put in dispute any material fact, the State is entitled to judgment in its favor.

# ARGUMENT

## I. COMMERCIAL SPEECH RESTRICTIONS ARE SUBJECT TO INTERMEDIATE SCRUTINY, WHICH CAN BE SATISFIED BY SUBSTANTIAL EVIDENCE.

Tracy Rifle's contends, without reference to supporting authority, that "[n]ot all 'intermediate scrutiny' tests are the same," and that the "evidentiary burden varies based on the type of restriction at issue." Pls.' Opp'n to Defs.' MSJ at 8, ECF 55. This lack of authority is unsurprising, because courts have instead determined that the *Central Hudson* test for evaluating restrictions on commercial speech is "substantially similar" to the test used to assess content-neutral time, place and manner restrictions. *See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 554 (2001) (quoting *Bd. of Tr. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477 (1989)); *see also Bench Billboard Co. v. City of Covington*, 465 F. App'x 395, 404 (6th Cir. 2012) ("*Central Hudson*'s form of intermediate scrutiny . . . is no more demanding than . . . time, place, and manner intermediate scrutiny").

Tracy Rifle's attempt to distinguish the standard applied in commercial speech cases from that applied in other First Amendment intermediate scrutiny cases is unconvincing. It argues that commercial speech regulation is necessarily content based, while the regulation of sexually oriented businesses at issue in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 52 (1986), and broadcast restrictions at issue in *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997) (*Turner II*) are not. *See* Pls.' Opp'n to Defs.' MSJ at 8, ECF No. 55. The weakness of this

1

distinction is apparent because other regulations subject to intermediate scrutiny are content based, including zoning regulations of sexually oriented businesses and advertising restrictions on public broadcasts.[1] *Ctr. for Fair Pub. Policy v. Maricopa County*, 336 F.3d 1153 (9th Cir. 2003) (sexually oriented businesses); *Minority Television Project, Inc. v. FCC*, 736 F.3d 1192, 1199-1207 (9th Cir. 2013) (en banc) (public broadcast).[2]

The Second Amendment cases that Tracy Rifle dismisses in a footnote, *see* Pls.' Opp'n to Defs.' MSJ at 8 n.3, ECF No. 55, are particularly germane because they apply intermediate scrutiny to firearms laws like the ones section 26820 sits beside in the Penal Code. These cases show that the distinction on which Tracey Rifle relies does not in fact exist. For instance, without noting any material distinction among them, the Third Circuit relied on three commercial speech cases—*Central Hudson*, *Lorillard Tobacco*, and *Fox*—as well as *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 666 (1994) (*Turner I*), and the leading time, place, and manner case, *Ward v. Rock Against Racism*, 491 U.S. 781 (1989). *See United States v. Marzzarella*, 614 F.3d 85, 96-99 (3d Cir. 2010). The court explained that although the various formulations of intermediate scrutiny "differ in precise terminology, they essentially share the same substantive requirements." *Id.* at 98; *United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010) (same).[3] Under those

---

[1] Tracy Rifle mistakenly contends that the standard in *Renton* applies only to content-neutral laws. Pls.' Opp'n to Defs.' MSJ at 8, ECF No. 55 (citing *Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011)). Although the Court in *Renton* classified the zoning ordinance at issue in that case as content neutral, *see* 475 U.S. at 47, later cases have recognized that such regulations targeting sexually oriented businesses, are necessarily content based. For example, the Ninth Circuit has held that a "regulation restricting the hours of operation of a sexually-oriented business is quite obviously content based." *Ctr. for Fair Pub. Policy*, 336 F.3d at 1164. This updated view has not altered the "central holding" of *Renton*, which is that intermediate scrutiny applies to the regulation of businesses that trade in sex because lawmakers must be able to experiment with admittedly serious problems associated with those businesses. *See id.* (quoting *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 448 (2002) (Kennedy, J., concurring)).

[2] *Center for Fair Public Policy* and *Minority Television Project* undermine Tracy Rifle's expansive reading of *Sorrell*. Nothing in that case suggests that the Court intended its statements about content-based restrictions to silently overrule not just decades of commercial speech precedent, but also longstanding precedent applying intermediate scrutiny to content-based regulations of public broadcasts and adult oriented business.

[3] *See also United States v. Chovan*, 735 F.3d 1127, 1138-39 (9th Cir. 2013) (noting that First Amendment cases are a guide in analyzing Second Amendment cases and citing *Marzzarella* and *Chester*); *Heller v. District of Columbia*, 670 F.3d 1244, 1257 (D.C. Cir. 2011) (citing *Turner I*, *Fox*, *Ward*, *Turner II*, and *Alameda Books* in intermediate scrutiny discussion).
2

Reply in support of Defs.' Mot. for Summ. J. (2:14-cv-02626-TLN-DB)

substantive requirements, courts must defer to lawmakers' judgments about how best to address complex social problems so long as those judgments are supported by substantial evidence. *See, e.g.*, *Heller v. District of Columbia*, 801 F.3d 264, 273 (D.C. Cir. 2015) ("[I]t is our remit to determine only whether the [government] has drawn reasonable inferences based on substantial evidence." (quoting *Turner I*, 512 U.S. at 666)).

First and Second Amendment cases alike require courts to inquire into lawmakers' reasons for enacting regulations of less-protected forms of speech or aspects of firearm ownership, but that inquiry does not impose the "heavy" burden suggested by Tracy Rifle. Courts will uphold laws based on studies, anecdotes, history, consensus, or common sense. *Lorillard Tobacco*, 533 U.S. at 555 (quoting *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995)). Indeed, history and common sense formed the core of the Ninth Circuit's decision in *Coyote Publishing Inc. v. Miller*, 598 F.3d 592, 604-09 (9th Cir. 2010), upholding Nevada's ban on advertising of legal brothels, a case the opposition does not discuss. The court concluded that the law directly and materially advanced Nevada's interest in limiting the commodification of sex without imposing the burden Tracy Rifle urges this Court to apply here. *See id.* at 608-09.

Finally, Tracy Rifle relies on a group of Supreme Court cases in which commercial speech laws were invalidated: *Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995), *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996), *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173 (1999), *Lorillard*, 533 U.S. 525, *Thompson v. W. States Med. Ctr.*, 535 U.S. 357 (2002), *Sorrell*, 564 U.S. 552.[4] These cases are all distinguishable, however.

In *Rubin*, the Court invalidated a federal law prohibiting beer labels from displaying alcohol content. 514 U.S. at 478. The government argued that the law prevented "strength wars," but the Court found this justification irrational because the law permitted advertising to mention alcohol content, permitted other language on the labels that signaled strength, regulated only beer, leaving wine and spirit manufacturers free to print alcohol content on their labels, and allowed alcohol

---

[4] The State's opposition to Tracy Rifle's motion for summary judgment explains why *Sorrell* is inapposite here. Defs.' Opp'n to Pls.' MSJ at 7-9, ECF No. 56.

3

content to appear on the label where required by state law. *Id.* at 487-89. Section 26820 has no exceptions—it targets advertising that induces a particular transaction: impulsive handgun purchases, especially by people with impulsive personality traits, and addresses that specific societal ill. In *44 Liquormart*, the Court invalidated Rhode Island's "blanket prohibition against" advertising liquor prices. 517 U.S. at 504 (plurality). The breadth of the prohibition made it vulnerable in a way that section 26820, which leaves open limitless other means of advertising, does not. The federal law invalidated in *Greater New Orleans* prohibited broadcasters from advertising commercial casino gambling but allowed advertising for tribal casinos. 527 U.S. at 189-91. Section 26820 does not similarly undermine the Legislature's purpose by granting an exemption to a category of firearms dealer. In *Lorillard*, Massachusetts' restrictions on tobacco advertising were invalidated because the state's outdoor advertising restriction constituted a "nearly complete ban" on that form of advertising that did not account for reasonable concerns facing retailers, while the indoor restriction, which regulated the height of advertisements, did not advance the state's goal of decreasing minor's exposure to tobacco ads. 533 U.S. at 562-67. Section 26820 is not a blanket prohibition, nor does its effectiveness turn on a person's ability to look up. In *Thompson*, the Court invalidated a federal law prohibiting pharmacies from advertising certain services because the government had ample alternative means of advancing its interests in prescription drug policy without restricting speech. 535 U.S. at 372. The problem of handgun violence and suicide is not so easily addressed, both because of the complexity of the problem—as evidenced by its persistence—and because California's authority to regulate handguns is not nearly as complete as the federal government's ability to regulate prescription drugs.

### II. SECTION 26820 DIRECTLY ADVANCES CALIFORNIA'S INTERESTS IN DECREASING HANDGUN VIOLENCE AND SUICIDE.

Like the law in *Coyote Publishing* and the 10-day waiting period that the Ninth Circuit recently upheld in *Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016), section 26820 addresses a complex and challenging problem. The State's evidence shows that the handgun advertising restriction directly advances the California's interest in decreasing handgun violence and suicide

4

by inhibiting impulsive handgun purchases, especially by people with impulsive personality traits. Defs.' MSJ at 11-16, ECF No. 52.

Tracy Rifle dismisses several studies cited by the State simply because they were also cited in the State's preliminary injunction opposition. Pls.' Opp'n to Defs.' MSJ at 10, ECF No. 55. This is inadequate to overcome summary judgment. As this Court recognized in the context of the preliminary injunction motion, not having a chance to respond to Tracy Rifle's critique of the evidence was "probably more prejudicial to the Government" and that studies and other evidence cited by the State "could have received greater import if, for instance, the Court heard expert testimony." *See Tracy Rifle & Pistol LLC v. Harris*, 118 F. Supp. 3d 1182, 1194 n.5 (E.D. Cal. 2015). Now the State has submitted expert testimony. Together with Professor Gundlach's testimony that it is reasonable to conclude that the advertisements prohibited by section 26820 induce impulse purchases by people predisposed to act on impulse, *see* DSUF Nos. 17-18, 23, 27, ECF No. 52-1, and Professor Mann's testimony that impulsive personality traits increase the risk of suicide, *id.* Nos. 28-30, the history, data, and studies show that section 26820 directly and materially advances California's interest in decreasing handgun violence and suicide. This evidence is at least as strong as the evidence that satisfied intermediate scrutiny in *Coyote Publishing*, *Center for Fair Public Policy*, and *Silvester*. Tracy Rifle's failure to contradict this evidence warrants entry of summary judgment in the State's favor.

Tracy Rifle argues, without support, that to show section 26820 directly advances the State's interests the State must establish the magnitude by which the law decreases handgun violence and suicide. Pls.' Opp'n to Defs.' MSJ at 11, ECF No. 55. The State has found no case in which the government has been required to make such a showing. The Ninth Circuit did not require it in *Coyote Publishing*, *Center for Fair Public Policy*, or *Silvester*. Nor has the Supreme Court required that showing; to the contrary, it has said that history, common sense, and anecdote—none of which establishes the magnitude of a law's effect—are sufficient evidence. *See, e.g.*, *Fla. Bar*, 515 U.S. at 623. All that is necessary is that the Legislature had evidence from which it could draw a reasonable conclusion that section 26820 will result in a material reduction in handgun violence and suicide. The State has met that standard here.

5

Tracy Rifle's efforts to otherwise undermine the State's expert testimony are similarly unconvincing, as set forth below.

### A. Tracy Rifle's criticism of Professor Gundlach's report do not undermine the evidentiary value of his testimony.

Professor Gundlach's expert witness report explains how point of sale advertising induces impulse handgun purchases by people who tend to have impulsive personality traits. DSUF Nos. 23-24, ECF No. 52-1. Tracy Rifle's criticism of Professor Gundlach's report fall into roughly three categories: (1) it does not offer an opinion on the magnitude by which section 26820 inhibits impulse purchases of handguns, Pls.' Opp'n to Defs.' MSJ at 11, ECF No. 55 (which, as set forth above, is not required); (2) it offers no direct evidence that handguns, in particular, are purchased on impulse like other products, *id.* at 12; and (3) it does not account for other firearm regulations that might impede impulsive purchases, *id.* at 13-14 (which, as set forth above, is also not required). Because the first and third categories of criticisms are legally irrelevant, as set forth above, they cannot overcome summary judgment.

The second criticism is unfounded as well. Tracy Rifle suggests that Professor Gundlach's opinion is ineffective because it does not rely on studies directly relating to handgun marketing. But Tracy Rifle offers no evidence that general marketing principles do not apply to firearms marketing and sales, and absent such evidence, this argument does nothing to undermine the testimony.[5] Professor Gundlach has decades of experience in marketing, including studying the marketing practices of firearms dealers, relied on decades of marketing research that spanned industries and products, and concluded that it is reasonable to apply this research in the context of handguns because guns are more or less like other products. *See, e.g.*, Gundlach Rep. ¶ 13, ECF No. 43-1; *see id.* ¶ 4 & n.2. This conclusion is bolstered by the statement of the CEO of a major

---

[5] Tracy Rifle's related attempt to call into question the soundness of Professor Gundlach's conclusion because one of the studies he relies on "suggests that firearms . . . fall into a product category least likely to involve impulse purchases," is unfounded. Pls.' Opp'n to Defs.' MSJ at 12, ECF No. 55. According to the study Tracy Rifle cites, the range among product categories is "40% to 80%." *See* Pls.' Evid., Ex. C at 86, ECF No. 55-1. So, even if Tracy Rifle's inference is correct, that would put handguns in a category of products in which four out of every ten purchases is on impulse—a number that could rightly concern the Legislature.

6

Reply in support of Defs.' Mot. for Summ. J. (2:14-cv-02626-TLN-DB)

firearms company that "so much of firearms purchases is [sic] an impulse buy," strong evidence that the firearms industry relies on impulse purchases to make up a large amount of firearms sales. *See id.* ¶ 33 & nn.70-76. This, and the other evidence that firearms are purchased on impulse cited in the report, corroborate Professor Gundlach's informed conclusion about the nature of firearms sales.

Tracy Rifle also complains that Professor Gundlach's opinion is silent about the effect of other statutes—the 10-day waiting period, the background check, test on firearms laws, and safe handling instructions—that Tracy Rifle believes inhibit impulse purchases. Pls.' Opp'n to Defs.' MSJ at 13-14, ECF No. 55. But these laws are less likely to have an impact on the *decision* to purchase a handgun, which is made on impulse and inhibited by prohibiting signs like the floor-to-ceiling handgun advertisements Tracy Rifle put in its windows. *See* Richards Decl. Ex. 1 at 54:5-20 (explaining that for a constraint to have an impact on the "cognitive evaluation" of whether to purchase a product, it must be interposed before the decision occurs and that the rules cited by Tracy Rifle appear to occur after the buying decision had been made); *see also, e.g.*, Gundlach Report ¶ 51, ECF No. 43-1 ("Section 26820 constrains the marketing function and impedes the sales role of on-premise signs and graphics like those displayed by Tracy Rifle & Pistol LLC . . . that may otherwise trigger and augment the temptation of a consumer to engage in the impulse purchase of a handgun"). Tracy Rifle offers no contrary evidence. Professor Gundlach's report and testimony thus confirm that section 26820 plays a unique and important role in inhibiting handgun suicides.

### B. Tracy Rifle's criticism of Professor Mann's report do not undermine the evidentiary value of his testimony.

Professor Mann's report offered a series of interrelated opinions: impulsive people are at a greater risk for committing suicide; having a handgun in the home increases the risk of suicide for impulsive people; using a firearm in a suicide attempt is more often fatal than any other method; reducing suicide rates is a complex problem with no simple solution; and, if the invalidation of section 26820 resulted in more people with impulsive personality traits purchasing handguns, then there would be more suicides in "a vulnerable subgroup of the general population

7

1 | characterized by more pronounced impulsive personality traits." Mann Report ¶¶ 11-15, ECF
2 | No. 43-2.

3 |      Tracy Rifle distorts Professor Mann's opinions in its effort to discredit them, contending
4 | that he believes that "it is only [handgun] availability . . . that matters for purposes of reducing
5 | suicide . . . ." Pls.' Opp'n to Defs.' MSJ at 15, ECF No. 55. Instead, the report explains that the
6 | presence of an impulsive personality trait is one of the most important variables in firearm suicide.
7 | *See generally* Mann Report ¶¶ 16-28, 33, ECF No. 43-2. So while research showing the
8 | relationship between the availability of handguns in the home and suicide informs his analysis, so
9 | too does the research on the nature of people who commit suicide. Again, Tracy Rifle offers no
10 | evidence to the contrary.

11 |      Similarly, Tracy Rifle's assumption that the 10-day waiting period addresses all preventable
12 | impulsive handgun suicide is entirely unsubstantiated and thus does nothing to undermine the
13 | significance of Dr. Mann's opinion. It fails to account for the evidence showing that, despite the
14 | 10-day waiting period, hundreds of Californians use handguns to commit suicide each year—a
15 | problem underscored by studies finding that purchasing a handgun is associated with an increased
16 | risk in suicide, and that even though relatively few handguns are purchased for that purpose,
17 | suicide by handgun is the leading cause for those who purchase a handgun in the year following
18 | the purchase, and that the increased risk of suicide extends to members of the purchaser's
19 | household. *See* DSUF Nos. 14-16, ECF No. 52-1. Professor Mann's opinions, by contrast, offer
20 | a reasonable explanation for this data: having a handgun in the home places people generally, but
21 | especially impulsive people, at higher risk for suicide.

**C.  Section 26820 directly advances the State's interest in decreasing handgun violence.**

24 |      The State's motion for summary judgment explains that section 26820 directly advances
25 | California's interest in decreasing handgun crime and violence by inhibiting impulsive purchases
26 | of firearms. Defs.' MSJ at 16-17, ECF No. 52. Tracy Rifle argues that the evidence is
27 | insufficient to support a legislative judgment. Pls.' Opp'n to Defs.' MSJ at 17, ECF No. 55. The
28 | evidence on this point, however, is like the evidence that supported the State's 10-day waiting

8

period in *Silvester*, 843 F.3d at 828-29. There is a commonsense connection between impulsiveness and crime, just as there is a "common sense understanding that urges to commit violent acts or self harm may dissipate after there has been an opportunity to calm down." *See id.* at 828. This is sufficient to uphold the law.

### III. SECTION 26820 IS NO MORE RESTRICTIVE THAN NECESSARY TO ADVANCE THE STATE'S INTERESTS.

Notwithstanding Tracy Rifle's suggestion otherwise, Pls.' Opp'n to Defs.' MSJ at 17, ECF No. 55, the State has argued that section 26820 is reasonably tailored to advance the State's goal of reducing handgun violence and suicide, Defs.' MSJ at 17-18 (citing *Fox*, 492 U.S. at 480), ECF No. 52. Although Tracy Rifle declines to address it, the law only regulates advertising that can be seen from outside a store, leaving unrestricted a myriad of other ways to advertise the sale of handguns. It is difficult to imagine a law more closely tailored to the legislative goal.

### CONCLUSION

For the foregoing reasons, this Court should grant the State's motion for summary judgment and deny Tracy Rifle's motion for summary judgment.

Dated: February 14, 2017

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General

s/ Nelson Richards
NELSON R. RICHARDS
Deputy Attorney General
*Attorneys for Defendants*

SA2014119177
95214443.doc

9

Reply in support of Defs.' Mot. for Summ. J. (2:14-cv-02626-TLN-DB)